UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**DARK CIRCUIT LABS, INC.**,

                    Plaintiffs,

      vs.

**BLACK SAILS SECURITY LLC**, **JOHN CARPENTER**, **ERIC MISSIMER, MICHAEL FRANK,** and **KEITH HADDOCK**,

              Defendants.

Civil Action No.: 1:23-cv-00326-TSE-LRV

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

---

PECKAR & ABRAMSON, P.C.
*Attorneys for Plaintiff, Dark Circuit Labs, Inc.*
2055 L Street, NW, Suite 750
Washington, DC 20036
Telephone: 202.293.8815
Facsimile: 202.293.7992
SWeber@pecklaw.com
GBegg@pecklaw.com
LDavis@pecklaw.com

<u>On the Brief:</u>

Steven J. Weber, VSB No. 35573
Gregory R. Begg, *Pro Hac Vice*
Lauren Rayner Davis, *Pro Hac Vice*

# **TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 4

LEGAL ARGUMENT ......................................................................................................... 5

    <u>POINT I</u> – LEGAL STANDARD FOR GRANTING A TEMPORARY
    RESTRAINING ORDER AND PRELIMINARY INJUNCTION ........................................... 5

    <u>POINT II</u> –PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS
    CLAIMS ........................................................................................................................ 6

        A. Plaintiff's Breach of Contract Claim Is Likely to Succeed on the Merits ................... 7

        B. Plaintiff's Misappropriation Claims Have A Likelihood of Success
           on the Merits ..................................................................................................... 15

        C. Plaintiff's Remaining Claims Are Likely to Succeed on the Merits.......................... 21

    <u>POINT III</u> – PLAINTIFF IS LIKELY TO SUFFER IRREPARABLE HARM
    WITHOUT AN INJUNCTION .......................................................................................... 21

    <u>POINT IV</u> – THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF ........................ 23

    <u>POINT V</u> – AN INJUNCTION IS IN THE PUBLIC INTEREST ....................................... 24

    <u>POINT VI</u> – THE SCOPE OF PLAINTIFF'S REQUESTED INJUNCTIVE
    RELIEF IS PROPER ...................................................................................................... 26

        A. Defendants Should Be Enjoined from Use, Disclosure, or Deletion of
           DCL's Confidential and Proprietary Information and Solicitation of DCL's
           Clients and Employees ....................................................................................... 27

        B. Expedited Discovery Is Appropriate in this Case .................................................... 28

CONCLUSION ................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**F<small>EDERAL</small> C<small>ASES</small>**

*Alston Studios, Inc. v. Lloyd V. Gress and Assocs.*,
492 F.2d 279 (4th Cir. 1974)..................................................................10

*Amazon.com, Inc. v. WDC Holdings LLC*,
No. 1:20-cv-484, 2020 WL 435563 (E.D. Va. July 28, 2020).............................6

*API Tech. Servs., LLC v. Francis*,
No. 4:13cvl42, 2013 WL 12131381 (E.D. Va. Dec. 4, 2013) .....................16, 23

*Atlantic Diving Supply, Inc. v. Jay Basnight*,
No. 2:22cv298, 2022 WL 5568083 (E.D. Va. Sept. 21, 2022)..........................18

*Audio-Video Group, LLC v. Green*,
No. 1:14-cv-169, 2014 WL 793535 (E.D. Va. Feb. 26, 2014) ..............16, 23, 24

*Ayco Co., L.P. v. Frisch*,
795 F. Supp. 2d 193 (N.D.N.Y. 2011) ....................................................8

*Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*,
452 F. App'x 351 (4th Cir. 2011) ........................................................22

*Cap. One Fin. Corp. v. Sykes*,
No. 3:20cv763, 2021 WL 2903241 (E.D. Va. July 9, 2021) .......................23, 24

*Centro Tepeyac v. Montgomery Cty.*,
722 F.3d 184 (4th Cir. 2013)...............................................................5

*CIENA Corp. v. Jarrard*,
203 F.3d 312 (4th Cir. 2000)..............................................................29

*Crawford-El v. Britton*,
523 U.S. 574 (1998)........................................................................28

*Dan River, Inc. v. Unitex Ltd.*,
624 F.2d 1216 (4th Cir. 1980).............................................................29

*Davis Mem'l Goodwill Indus. v. Garada*,
No. 17-CV-347, 2017 WL 11613374 (E.D. Va. Apr. 17, 2017) .......................12

*Design & Prod., Inc. v. Am. Exhibitions, Inc.*,
820 F. Supp. 2d 727 (E.D. Va. 2011).......................................................9

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Dewhurst v. Century Aluminum Co.*,
    649 F.3d 287 (4th Cir. 2011)...............................................................................5

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017)...............................................................................5

*eBay, Inc. v. MercExchange*, LLC,
    547 U.S. 388 (2006)............................................................................................5

*Edward D. Jones & Co., L.P. v. Barnes*,
    No. 1:20-cv-03775, 2020 WL 6827864 (D.S.C. Nov. 20, 2020)........................8

*Edward D. Jones & Co., L.P. v. Clyburn*,
    No. 7:20-cv-00433, 2020 WL 4819547 (W.D. Va. Aug. 19, 2020) ....................8

*Fid. Glob. Brokerage Grp., Inc. v. Gray*,
    No. 1:10-cv-1255, 2010 WL 4646039 (E.D. Va. Nov. 9, 2010) ........................8, 9, 10, 15

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016)...............................................................................7

*Great Am. Ins. Co. v. Gross*,
    No. 3:05-cv-159, 2007 WL 1577503 (E.D. Va. May 30, 2007) ........................28

*Hinkle v. City of Clarksburg*,
    81 F.3d 416 (4th Cir. 1996).................................................................................28

*Hoechst Diafoil Vo. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999)...............................................................................5, 25

*Home Funding Grp., LLC v. Myers*,
    No. 06-cv-1400, 2006 WL 6847953 (E.D. Va. Dec. 14, 2006) ........................21

*Hughes Network Systems, Inc. v. InterDigital Comm. Corp.*,
    17 F.3d 691 (4th Cir. 1994).................................................................................5

*In re Microsoft Corp. Antitrust Litig.*,
    333 F.3d 517 (4th Cir. 2016)...............................................................................5

*JTH Tax, Inc. v. Lee*,
    514 F. Supp. 2d 818 (E.D. Va. 2007)..................................................................22

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*KBG Holding Corp. v. Union Bank*,
   56 F. App'x 111 (4th Cir. 2003) ........................................................29

*Manning v. Hunt*,
   119 F. 3d 254 (4th Cir. 1994)...........................................................5

*Marsteller v. ECS Fed., Inc.*,
   No. 1:13-cv-593, 2013 WL 4781786 (E.D. Va. Sept. 5, 2013) ........................21

*Merrill Lynch, Piece, Fenner & Smith v. Rahn*,
   73 F. Supp. 2d 425 (S.D.N.Y. 1999).....................................................8

*MicroStrategy Inc. v. Business Objects, S.A.*,
   331 F. Supp. 2d 396 (E.D. Va. 2004)...................................................16

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
   22 F.3d 546 (4th Cir. 1994)...........................................................22

*OROS, Inc. v. Dajani*,
   No. 1:19cv351, 2019 WL 2361047 (E.D. Va. June 4, 2019)...........................16

*Pashby v. Ddeli*a,
   709 F.3d 307 (4th Cir. 2013)..........................................................7

*Physicians Interactive v. Lathian Sys.*,
   No. CA 03-1193-A, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003) ....................29

*Pro-Concepts, LLC v. Resh*,
   No. 2:12-cv-573, 2013 WL 5741542 (E.D. Va. Oct 22, 2013)..........................7

*RLM Communications, Inc. v. Tuschen*,
   831 F.3d 190 (4th Cir. 2016)..........................................................20

*Roe v. Dep't of Def.*,
   947 F.3d 207 (4th Cir. 2020).......................................................5, 27

*Safeway Inc. v. CESC Plaza Ltd. Partnership*,
   261 F. Supp. 2d 439 (E.D. Va. 2003)...................................................9

*Sarsour v. Trump*,
   245 F. Supp. 3d 719 (E.D. Va. 2017)...................................................4

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Spece Sys./Loral, LLC v. Orbitual ATK, Inc.*,
　306 F. Supp. 3d 845 (E.D. Va. 2018)................................................................15

*TechINT Solutions Group, LLC v. Sasnett*,
　No. 5:18-cv-00037, 2018 WL 4655752 (W.D. Va. Sept. 27, 2018)....................7

*Trident Prods.& Servs., LLC v. Canadian Soiless Wholesale, Ltd*,
　859 F. Supp. 2d 771 (E.D. Va. 2012)...........................................................15, 16

*Totino v. Alexander & Assocs.*,
　No. 01-97-01204-CV, 1998 WL 552818 (Tex. App. Aug. 20, 1998) ................8

*Update, Inc. v. Samilow*,
　311 F. Supp. 3d 784 (E.D. Va. 2018)................................................................21

*Variable Annuity Life Ins. Co. v. Coreth*,
　535 F. Supp. 3d 488 (E.D. Va. 2021)........................................................*passim*

*Virginia v. Supportkids, Inc.*,
　No. 3:08-CV-153, 2008 WL 1840736 (E.D. Va. 2008)......................................9

*Western Indus.-North, LLC v. Lessard*,
　No. 1:12cv177, 2012 WL 966028 (E.D. Va. Mar. 21, 2012) ............................7

*Western Indus.-North, LLC v. Lessard*,
　No. 1:12cv177, 2012 WL 859459 (E.D. Va. Mar. 13, 2012) ............................7

*Winter v. Natural Res. Def. Council, Inc.*,
　555 U.S. 7 (2008)...............................................................................................5

### <u>State Cases</u>

*Ainslie v. Cantor Fitzgerald, L.P.*,
　No. 9436-VCZ, 2023 WL 106924 (Del. Ch. Jan. 4, 2023)...............................11

*Certainteed Corp. v. Celotex Corp.*,
　No. Civ.A. 471, 2005 WL 217032 (Del. Ch. Jan. 24, 2005) ...........................12

*DeLucca v. KKAT Mgmt., L.L.C.*,
　No. Civ.A. 1384-N, 2006 WL 224058 (Del. Ch. Jan. 23, 2006) ......................12

*Feddeman & Co v. Langan Associates*,
　260 Va. 35, 530 S.E.2d 668 (Va. 2000) ..........................................................21

**TABLE OF AUTHORITIES**

Page(s)

*Filak v. George*,
    267 Va. 612, 594 S.E.2d 610 (Va. 2004) ...........................................................9

*Foti v. Cook*,
    220 Va. 800, 263 S.E.2d 430 (1980)..................................................................10

*FP UC Hldgs., LLC v. Hamilton*,
    No. 9436-VCZ, 2020 WL 1492783 (Del. Ch. Mar. 27, 2020) ...........................11

*Glaxo Group Ltd. v. DRIT LP*,
    248 A.3d 911 (Del. 2021) ...................................................................................12

*May v. R.A. Yancey Lumber Corp.*,
    297 Va. 1, 822 S.E.2d 358 (2019)........................................................................5

*Meagher v. Appalachian Elec. Power Co.*,
    195 Va. 138, 77 S.E.2d 461 (Va. 1953) .............................................................10

*MicroStrategy, Inc. v. Li*,
    268 Va. 249, 601 S.E.2d 580 (Va. 2004) ...........................................................15

*Modern Env'ts, Inc. v. Stinnett*,
    263 Va. 491, 561 S.E.2d 694 (Va. 2002) ...........................................................10

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) .................................................................................12

*Otto v. Gore*,
    45 A.3d 120 (Del. 2012) .....................................................................................12

*Sonoma Dev., Inc. v. Miller*,
    258 Va. 163, 515 S.E.2d 577 (Va. 1999) ...........................................................10

*VLIW Technology, LLC v. Hewlett–Packard, Co.*,
    840 A.2d 606 (Del. 2003) ...................................................................................11

*W.L. Gore & Assocs., Inc. v. Wu*,
    No. C. A. 263-N, 2006 WL 2692584 (Del. Ch. Sept. 15, 2006)...................18, 19

**FEDERAL STATUTES**

18 U.S.C. § 1836 (b)(1)...............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

18 U.S.C. § 1836(b)(3)(A) ............................................................................................15

18 U.S.C. § 1839(3) .....................................................................................................15

18 U.S.C. §§ 1831-39 ..................................................................................................15

**<u>STATE STATUTES</u>**

Va. Code § 59.1-336 ....................................................................................................15

**<u>FEDERAL RULES</u>**

Fed. R. Civ. P. 26(b) ...................................................................................................28

Fed. R. Civ. P. 26(b)(1) ..............................................................................................28

Fed. R. Civ. P. 26(b)(2) ..............................................................................................29

Fed. R. Civ. P. 26(d) ..............................................................................................28, 29

Fed. R. Civ. P. 30(a)(2) ...............................................................................................29

Fed. R. Civ. P. 34(b) ...................................................................................................28

Fed. R. Civ. P. 65 ..........................................................................................................1

Fed. R. Civ. P. 65(c).....................................................................................................25

**PRELIMINARY STATEMENT**[1]

Plaintiff Dark Circuit Labs, Inc. ("Plaintiff" or "DCL") respectfully submits this Memorandum of Law in support of its Motion for a Temporary Restraining Order ("TRO"), Preliminary Injunction, and Expedited Discovery pursuant to Federal Rule of Civil Procedure ("FRCP") 65, brought on by Order to Show Cause, against Defendants Black Sails Security LLC, ("BSS"), John Carpenter ("Carpenter"), Eric Missimer ("Missimer"), Michael Frank ("Frank"), and Keith Haddock ("Haddock") (collectively, "Defendants") pending a determination of the relief requested in its First Amended Verified Complaint ("FAVC").

DCL is comprised of highly skilled software engineers, reverse engineers, and vulnerability researchers who possess appropriate U.S. Government security clearances to serve as a subcontractor to large organizations, such as DCL's client Lockheed Martin Corporation ("LMCO"), to provide cyber security personnel, tools, and expertise in support of the United States' National security missions.[2] Haddock is a Project Manager for LMCO. Missimer was DCL's Chief Technology Officer and custodian of DCL's trade secrets on DCL's corporate network and is also a DCL shareholder.[3] Carpenter was a Senior Computer Network Operations ("CNO") Developer and Vice President ("VP") of DCL. Frank was a Senior CNO Developer for DCL.[4] Missimer, Carpenter, and Frank all have security clearances and are bound by restrictive covenants designed to protect DCL's trade secrets.[5]

---

[1] Unless otherwise noted, the factual statements referenced herein refer to the factual statements and the Exhibits annexed to the Declaration of Steven J. Weber, Esq. ("Weber Declaration" or "Weber Decl.") and Affidavit of Ronald Pelkey ("Pelkey Affidavit" or "Pelkey Aff."), both submitted in support of DCL's motion.

[2] (Ex. B, ¶ 6).

[3] (Ex. B, ¶¶ 42, 44, 48-49; Ex. C)

[4] (Ex. B, ¶¶ 57-59; Ex. D).

[5] (Ex. B, ¶¶ 60-61; Ex. E).

1

The evidence shows that since as early as November 2022, if not sooner, Carpenter, Missimer, and Frank conspired with Haddock, to utilize, without restraint, DCL's trade secrets to convert DCL's contracts to an entity owned and controlled by Defendants in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, in violation of restrictive covenants applicable to Missimer, Carpenter, and Frank as shareholders, officers, and/or employees of DCL, and in violation of state statutory and common law.[6] The elements of Defendants' plan known to DCL to date, without the benefit of discovery, consist of the following actions in violation of federal and state law:

(a) While employed, Carpenter, in concert with the other Defendants, formed a new corporation, BSS, to compete directly with DCL;

(b) Defendants admitted that they formed BSS and did so to compete with DCL;

(c) Defendants stole DCL's trade secrets with the objective of having DCL replaced by BSS on DCL's contract with LMCO, including but not limited to Carpenter downloading DCL's business plan and strategies, which constitutes trades secrets, and disclosing DCL's trade secrets to Haddock;

(d) For several weeks, Defendants deprived DCL of access to its corporate servers containing DCL's trades secrets which were in Missimer's possession and control;

(e) Defendants solicited and/or induced at least three employees, and likely all DCL employees working under DCL's contract with LMCO, to separate from DCL to join with Defendants, by, among other things, telling them they should quit DCL and join Defendants because DCL will be terminated from its contract with LMCO; and

---

[6] (Ex. B, ¶¶ 127-132, 137, 142-146, 158-176; Exs. F, G, H, I, J, N; Pelkey Aff., ¶¶ 6-42).

(f) Haddock used his influence to cause LMCO to diminish and potentially terminate its relationship with DCL so that DCL could be replaced with Defendants.[7]

Although DCL engaged in diligent efforts to resolve this matter out of court and demanded that Defendants cease and desist from their unlawful conduct, they have failed and refused to do so.[8] As detailed in the Pelkey Affidavit, Defendants continue to cause harm to DCL to the present day, including but not limited to Defendants' efforts and specifically Haddock's statements to induce other highly skilled employees to depart from DCL.[9] DCL will continue to suffer extraordinary irreparable harm if Defendants are not immediately restrained.[10] In fact, communications by and between the conspiring Defendants show that they are planning to continue to wrongfully induce clients to divert work and employees to separate from DCL, whether to BSS or any other entity which they may control or become affiliated, if this Court does not restrain them.[11] Defendants' ongoing misconduct is further demonstrated by the fact that DCL was forced to file the instant lawsuit on March 10, 2023 which finally compelled Missimer to return DCL's company property containing DCL's trade secrets that he had held hostage since January 27, 2023 and disconnected DCL's access—an overt and blatant violation of the DTSA and Virginia statutory and common law principles.[12] This Court should enter a TRO and preliminary injunction to return the parties to the status quo whereby Defendants are ordered comply with their contractual, statutory, and common law obligations not to misappropriate DCL's trade secrets and not to solicit or in any way retain DCL's clients and employees.

---

[7]  (Ex. B, ¶ 36, 70-75, 172, 176, 181-187; Exs. F, G, H, I, J, N, Q; Pelkey Aff, ¶¶ 6-42).

[8]  (Ex. B, ¶¶ 127-132, 137, 142-146, 158-176; Exs. F, G, H, I, J, N; Pelkey Aff., ¶¶ 40-42).

[9]  (Pelkey Aff., ¶¶ 16-42).

[10]  (Pelkey Aff., ¶ 33; Ex. B).

[11]  (Ex. B, ¶¶ 127-132, 137, 142-146, 158-176; Exs. F, G, H, I, J, N; Pelkey Aff., ¶¶ 6-42).

[12]  (Ex. B, ¶¶ 172, 176; Ex. Q).

As discussed more fully below, it is highly likely that DCL will prevail on the merits of its claims. Specifically, Defendants have violated their contractual, statutory, and common law obligations to DCL by, *inter alia*, (i) wrongfully possessing, disseminating, misappropriating, utilizing or destroying DCL's trade secrets and/or confidential/proprietary business information, (ii) recruiting and soliciting DCL employees away from DCL to join BSS or other employers, (iii) soliciting, diverting and/or servicing DCL's actual or prospective customers, (iv) working for DCL's direct competitor, BSS and others, while still employed by DCL, and thereafter (v) using DCL's trade secrets for the benefit of a person or entity other than DCL, (vii) disclosing DCL's trade secrets to BSS, Haddock and others, (vii) failing to return to DCL all of its confidential and trade secret information, (viii) causing LMCO to threaten to terminate or actually terminate DCL, (ix) inducing DCL to continue to employ Carpenter, Missimer, and Frank until Defendants could complete their plan to misappropriate DCL's trade secrets, and (x) Defendants utilizing DCL's trade secrets to accomplish these aforementioned acts. To protect DCL's valuable trade secrets and goodwill, and to prevent DCL from suffering irreparable harm, the Court should enjoin Defendants from any further violation of their restrictive covenants and enjoin BSS and Haddock from further aiding and abetting Carpenter, Missimer, and Frank in breaching their contractual obligations and from inducing DCL's clients or employees to terminate their business relationships with DCL.

For the foregoing reasons and those set forth in detail below, it is respectfully requested that this Court grant DCL's Motion for a TRO, Preliminary Injunction, and Expedited Discovery.

## **STATEMENT OF FACTS**

The Court is respectfully referred to the allegations in the FAVC, Weber Declaration with the exhibits annexed thereto, and Pelkey Affidavit, which all set forth the facts relevant to DCL's Motion for a TRO, Preliminary Injunction, and Expedited Discovery.

## LEGAL ARGUMENT

## POINT I

## LEGAL STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"The standard for granting either a TRO or a preliminary injunction is the same." *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021) (quoting *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017)). "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), *vacated on other grounds*, 559 U.S. 1089 (2010)). This form of preliminary relief "allows a court to preserve the status quo between the parties while litigation is ongoing." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2016); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) (quoting *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 18, 822 S.E.2d 358 (2019)); *Hoechst Diafoil Vo. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) ("While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held.").

To prevail on a motion for a preliminary injunction, the movant must establish that each of four factors weighs in its favor: (1) the likelihood that the moving party will succeed on the merits; (2) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (3) the balance of the equities; and (4) the public interest. *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). The plaintiff bears the burden of establishing that the court should grant a preliminary injunction or temporary restraining order. *Manning v. Hunt*, 119 F. 3d 254 (4th Cir. 1994) (quoting *Hughes*

*Network Systems, Inc. v. InterDigital Comm. Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)); *see also Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484, 2020 WL 435563, at *4 (E.D. Va. July 28, 2020). Finally, "it is well-established . . . that a federal district court has a wide discretion to fashion appropriate injunctive relief in a particular case." *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020).

 As explained in greater detail below, DCL meets all four elements of the test entitling it to emergency and preliminary injunctive relief.[13]

**POINT II**

**PLAINTIFF IS LIKELY TO SUCCEED
ON THE MERITS OF ITS CLAIMS**

 Given the unmistakable misappropriation of trade secrets and breach of the restrictive covenants at issue, a TRO and preliminary injunction is warranted to prevent further irreparable harm to DCL by Defendants. DCL commenced this action against Defendants for: (counts 1 and 2) misappropriation of trade secrets under the DTSA and Virginia Uniform Trade Secrets Act ("VUTSA"); (count 3) violation of the Virginia Uniform Computer Information Transactions Act ("VUCITA"); (count 4) common law misappropriation of trade secrets; (count 5) breach of contract; (count 6) breach of fiduciary duty and duty of loyalty against Carpenter, Missimer, and Frank; (count 7) aiding and abetting a breach of contract and/or breach of duty of loyalty and breach of fiduciary duty; (count 8) common law unfair competition; (count 9) tortious interference with prospective economic advantage; (count 10) tortious interference with contractual relations; (count 11) civil conspiracy; (count 12) preliminary and permanent injunctive relief; and (count 13) accounting for all business obtained by Defendants through the wrongful acts alleged in the FAVC.

---

[13] DCL's full request for emergency and preliminary injunctive relief is outlined in its Order to Show Cause.

The preliminary evidence presented with this motion shows that DCL will prevail on the merits for all claims asserted. To prevail on its motion for interim injunctive relief, however, DCL need only demonstrate that it is likely to succeed on the merits of at least one of several alternative claims that entitle it to the relief requested. *See Western Indus.-North, LLC v. Lessard*, No. 1:12cv177, 2012 WL 966028, at *2 (E.D. Va. Mar. 21, 2012) ("In general, where multiple causes of action are alleged, a plaintiff need only show likelihood of success on one claim to justify injunctive relief."). While DCL is also likely to succeed on its other claims alleged in the FAVC, DCL is currently seeking temporary injunctive relief only on its claims for breach of the restrictive covenant agreements at issue and Defendants' misappropriation of trade secrets.

A.    **Plaintiff's Breach of Contract Claim Is Likely to Succeed on the Merits.**

While DCL has a likelihood of success on the merits for each of its claims, its breach of contract claims against Carpenter, Missimer, and Frank, and the aiding and abetting of such breaches by BSS and Haddock, alone are sufficient to warrant the requested relief. *See Pro-Concepts, LLC v. Resh*, No. 2:12-cv-573, 2013 WL 5741542, at *5 (E.D. Va. Oct 22, 2013) (quoting *Western Indus.-North, LLC v. Lessard*, No. 1:12cv177, 2012 WL 859459, at *2 (E.D. Va. Mar. 13, 2012)). Additionally, establishing that DCL is likely to succeed at trial on the merits does not require showing certainty of success, but instead requires merely a "clear showing" of a likelihood of success on the merits. *Pashby v. Ddeli*a, 709 F.3d 307, 321 (4th Cir. 2013).

"The Fourth Circuit has determined that a district court ruling on a preliminary injunction 'may look to, and indeed in appropriate circumstances rely on, hearsay or other admissible evidence when deciding whether a preliminary injunction is warranted." *TechINT Solutions Group, LLC v. Sasnett*, No. 5:18-cv-00037, 2018 WL 4655752, *5 (W.D. Va. Sept. 27, 2018) (quoting *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725-26 (4th Cir. 2016)),

*vacated and remanded on other grounds*, 137 S. Ct. 1239 (2017)). Numerous courts, including in this District, have granted temporary restraining orders to restrain individuals from violating the confidentiality and non-solicitation provisions of employment agreements substantially similar to those at issue in this case.[14] *See, e.g.*, *Fid. Glob. Brokerage Grp., Inc. v. Gray*, No. 1:10-cv-1255, 2010 WL 4646039, at *4 (E.D. Va. Nov. 9, 2010) (granting emergency motion for injunctive relief against former employee using proprietary client information to solicit customers to this new employer); *Edward D. Jones & Co., L.P. v. Clyburn*, No. 7:20-cv-00433, 2020 WL 4819547 at *4-7 (W.D. Va. Aug. 19, 2020) (granting TRO against former employee and prohibiting solicitation of the plaintiff's customers for a one-year period contained in employment agreement).

On November 3, 2021, Missimer entered into a DCL Shareholders Agreement ("Shareholders Agreement") for purposes of setting forth the shareholders' respective rights, duties, and obligations as owners of DCL, including but not limited to restrictive covenants and non-disclosure obligations by which Missimer agreed to abide. (Ex. B, ¶ 42; Ex. C). From November 3, 2021 to December 15, 2022, in addition to his position as a shareholder of DCL and member of the Board of Directors of DCL, Missimer served as the Chief Financial Officer and Treasurer of DCL, as well DCL's Chief Technology Officer ("CTO"). (Ex. B, ¶¶ 44, 48). In his capacity as CTO, Missimer served as the custodian of and had access to all electronic data for DCL including its business records, business plans and other confidential and proprietary data which constitute confidential and proprietary information protected by the employment agreements and

---

[14] *See also Edward D. Jones & Co., L.P. v. Barnes*, No. 1:20-cv-03775, 2020 WL 6827864, at *9 (D.S.C. Nov. 20, 2020) (granting temporary restraining order against former employee and prohibit solicitation of plaintiff's customers for one-year period contained in employment agreement); *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 210 (N.D.N.Y. 2011) (granting a temporary restraining order and preliminary injunction against two former employee registered representatives who resigned to work for a competitor); *Totino v. Alexander & Assocs.*, No. 01-97-01204-CV, 1998 WL 552818, at *10 (Tex. App. Aug. 20, 1998) (affirming temporary injunction against four former employee insurance brokers who resigned to work for competitor); *Merrill Lynch, Piece, Fenner & Smith v. Rahn*, 73 F. Supp. 2d 425, 428-29 (S.D.N.Y. 1999) (noting that injunctive relief to prevent a registered representative from taking documents and soliciting clients from his former employer is "consistently granted in this district").

shareholder agreement referenced herein as well as "trade secrets" within the meaning of the DTSA and other applicable laws cited herein. (Ex. B, ¶ 49).

On December 15, 2021, Carpenter was hired by DCL as a Senior CNO Developer and became a VP of DCL on or about March 4, 2022. (Ex. B, ¶ 57). Carpenter entered into a Confidentiality, Non-Competition and Protectable Interest Agreement ("Restrictive Covenants Agreement") on December 20, 2021 as it relates to his employment with DCL, including but not limited to covenants not to compete or solicit as well as an inventions assignment clause. (Ex. B, ¶ 59; Ex. D). On July 30, 2022, Frank was hired by DCL as a Senior CNO Developer. (Ex. B, ¶ 60). Frank executed an identical Restrictive Covenants Agreement to that of Carpenter on July 30, 2022. (Ex. B, ¶ 61; Ex. E).

While Carpenter and Frank's respective Restrictive Covenants Agreements are governed under Virginia law, the Shareholders Agreement by which Missimer is bound for purposes of restrictive covenants is governed by Delaware law with Virginia courts selected as the venue for disputes. (*Compare* Exs. C and D *with* Ex. E). *See Safeway Inc. v. CESC Plaza Ltd. Partnership*, 261 F. Supp. 2d 439, 467-68 & n.35 (E.D. Va. 2003); *Virginia v. Supportkids, Inc.*, No. 3:08-CV-153, 2008 WL 1840736, at *3 (E.D. Va. 2008) ("[A] request to enjoin an alleged violation of state law is also governed by state law.").

With regard to Carpenter and Frank's restrictive covenants, to succeed on a breach of contract claim under Virginia law, a plaintiff must show that the: (1) defendant owes a legally enforceable obligation to the plaintiff; (2) defendant has breached that obligation; and (3) plaintiff has suffered damages as a result of the breach. *Design & Prod., Inc. v. Am. Exhibitions, Inc.,* 820 F. Supp. 2d 727, 736 (E.D. Va. 2011) (citing *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (Va. 2004)). Moreover, in Virginia, restrictive covenants are examined with regard to the

legitimate interests of the employer, the employee, and the public at large. *Fid. Glob. Brokerage Group, Inc. v. Gray*, No. 1:10-CV-1255, 2010 WL 4646039, at *2 (E.D. Va. Nov. 9, 2010). "Such legitimate business interests might include trade secrets, other confidential information, or . . . the good will the employer has acquired through dealings with his customers." *Id.* (internal quotation marks and citation omitted). Specifically, in Virginia, restrictive covenants, such as non-compete clauses and non-solicitation clauses, are enforceable if they are reasonable. *Foti v. Cook*, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980). A plaintiff must establish that the restraint (1) is no greater than necessary to protect a legitimate business interest, (2) is not unduly harsh or oppressive, and (3) is reasonable in light of public policy. *See Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 561 S.E.2d 694, 695 (Va. 2002). The employer has the burden to prove that the restraint is reasonable. *Alston Studios, Inc. v. Lloyd V. Gress and Assocs.*, 492 F.2d 279, 283 (4th Cir. 1974).

Moreover, under Virginia law, "[t]he right to enjoin a breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction." *Meagher v. Appalachian Elec. Power Co.*, 195 Va. 138, 147, 77 S.E.2d 461, 466 (Va. 1953). Because Defendants knowingly violated valid enforceable restrictive covenants, any question concerning the harm caused by injunctive relief becomes irrelevant, for "[i]t is not . . . a question of convenience or inconvenience, or of the amount of damage or injury -- it is the specific performance, by the court, of that negative bargain which the parties have made, with their eyes open, between themselves." *See Sonoma Dev., Inc. v. Miller*, 258 Va. 163, 169, 515 S.E.2d 577, 581 (Va. 1999).

In *Variable Annuity Life Ins. Co. v. Coreth*, the plaintiff, a life insurance company, requested the court enter a temporary restraining order to enjoin the defendants, former financial advisors, based on alternative theories, including those at issue in this case such as

10

misappropriation of trade secrets and breach of contract under federal and state law. 535 F. Supp. 3d 488, 493-94 (E.D. Va. 2021). The *Coreth* defendants maintained that the plaintiff's claims were "based solely on hearsay, couched in conclusory terms, pure speculation, and erroneous assertions of fact." *Id*. at 506. Unpersuaded by the defendants' arguments, the *Coreth* court held that the defendants were bound to an enforceable agreement in which the plaintiff had agreed to grant the defendants access to its confidential and proprietary information and the use of company property in exchange for the defendants not to misappropriate, acquire, use, or disclose customer names, contact information, and account balances for any purposes other than in furtherance of their duties undertaken on behalf of the client. *Id*. at 505-08. The *Coreth* court ultimately concluded that the defendants violated their restrictive covenants when they "jotted down the names, addresses, telephone number and/or email addresses and, in some instances approximated account values, of clients" and again when the defendants contacted their former clients after leaving the company causing clients to end or alter their relations because of their contact with the defendants. *Id*. at 505-508.

As it relates to Missimer's restrictive covenants, the elements of a breach of contract claim are substantially similar under Delaware law to that of Virginia law. To prevail on a claim for breach of contract in Delaware, the plaintiff must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) the defendant breached his obligation imposed by the contract, and (3) the plaintiff suffered damages as a result of the defendant's breach. *VLIW Technology, LLC v. Hewlett–Packard, Co.*, 840 A.2d 606, 612 (Del. 2003). Additionally, Delaware courts "carefully review" noncompete and nonsolicit agreements to ensure that they "(1) [are] reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities." *Ainslie*

*v. Cantor Fitzgerald, L.P.*, No. 9436-VCZ, 2023 WL 106924, at *8 (Del. Ch. Jan. 4, 2023) (quoting *FP UC Hldgs., LLC v. Hamilton*, No. 9436-VCZ, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020)).

Under Delaware law, "[a] claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties." *Certainteed Corp. v. Celotex Corp.*, No. Civ.A. 471, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005). "To establish a right to specific performance, the party seeking the remedy must prove, *inter alia*, a valid and enforceable contract between the parties." *Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012). Under Delaware law, "sophisticated parties are bound by the terms of their agreement. Even if the bargain they strike ends up a bad deal for one or both parties, the court's role is to enforce the agreement as written." *Glaxo Group Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021); *see also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into good and bad contracts, the law enforces both."); *DeLucca v. KKAT Mgmt., L.L.C.*, No. Civ.A. 1384-N, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006) ("[I]t is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not. Rather, it is the court's job to enforce the clear terms of contracts.").

In this case, DCL is likely to succeed on the merits of its breach of contract claims. Under the first element, there is no dispute that contracts exist between DCL and Carpenter, Missimer, and Frank. (Ex. B, ¶¶ 42, 59, 61; Exs. C, D, E). Similar to the actions of the defendants in *Coreth*, Carpenter, Missimer, and Frank were provided with access to proprietary data, nonpublic information, trade secret, and confidential and proprietary information and in exchange Carpenter, Missimer, and Frank agreed to maintain confidentiality and not misappropriate DCL's trade secrets and proprietary information and not solicit DCL's existing or prospective clients or employees.

*See also Davis Mem'l Goodwill Indus. v. Garada,* No. 17-CV-347, 2017 WL 11613374, at *3 (E.D. Va. Apr. 17, 2017) (finding that the defendant's execution of the contract was sufficient to meet the first element of a breach of contract claim).

Furthermore, the restrictive covenants against competition and solicitation in Carpenter, Missimer, and Frank's respective agreements are reasonable because they are not greater than necessary to protect DCL's legitimate business interest in both time and geographic area. Carpenter, Missimer, and Frank are prohibited for one year from their termination dates from competing with DCL with Carpenter and Frank being restrained for one year and Missimer for two years from solicitation of DCL's clients, candidates, and employees. (Ex. B, ¶¶ 53-54, 63-64; Exs. C, D, E). As DCL has alleged facts sufficient to show that Defendants have acted singularly and in concert with one another, DCL is requesting that this Court enforce two years of non-solicitation on Carpenter and Frank per Missimer's agreement. (Ex. B, ¶¶ 13, 22-23, 27-28, 31-32, 34-35, 40, 187; Ex. C). DCL specifically makes this request because of an email that it discovered subsequent to Frank's abrupt resignation on March 14, 2023. (Ex. B, ¶¶ 141, 157; Exs. J, N). While Frank was still an employee of DCL, he utilized his company email account (mike.frank@darkcircuitlabs.com), with the subject line "Frank Status" to communicate with Haddock via Haddock's LMCO email address via an email sent on February 24, 2023 as follows:

> I talk to John & Eric pretty much daily about what's going on with DCL. I figured out something was up sometime last year, and give that Eric and are I [*sic*] close, I was fortunate enough to be in a position to help them work through this. Anyways, it seems at this point that the writing is on the wall that we (current employees)(and possibly all) of us need to make a transition in the near future, and that BSS will not be setting sail anytime this year.

> Alternatively, I've known Stan Nolen from PLEX for a few years, and I think that his model of tool development aligns nicely with the work we do offsite, and it could be a good setup for me and possibly others. I know that may be more difficult to negotiate for obvious reasons. I would love to talk for you to talk to him, or just

to hear what you think I should do in the next coming months (if anything at the moment). (Ex. N; Ex. B, ¶ 141).

Frank's February 24, 2023 email demonstrates Defendants were actively working behind the scenes during settlement discussions to unlawfully divert DCL's interests under the IDIQ Contract as well as shift DCL employees to "PLEX," who on information and belief is a direct competitor of DCL, now that Defendants' plans to launch BSS had been revealed. (Ex. N; Ex. B, ¶ 142). Frank's email further shows that Defendants have not halted their plans to launch BSS, but instead have simply delayed them and intend to cause further damage to DCL by as early as next year. This conduct demonstrates that Carpenter and Frank, in their conspiracy with the other Defendants, should be bound by Missimer's two-year non-solicitation provision, which is the greater period imposed by the restrictive covenants at issue.

While the restrictions are not limited to a certain geographic area, DCL's operations are applicable to the entirety of the United States and beyond pursuant to its work under U.S. government contracts and subcontracts and thus there is no geographic restriction that could have been reasonably imposed to protect DCL's interests as it relates to Carpenter, Missimer, and Frank's employment. (Ex. B, ¶¶ 1, 83, 215). Moreover, the restrictions are not unduly oppressive or offensive to public policy because Carpenter, Missimer, and Frank can still ply their trades as developers and engineers as long as they are not working with existing or prospective clients of DCL or working for competitors who contract with DCL's existing or prospective clients. As such, the restrictive covenants at issue are reasonable and are enforceable under Virginia and Delaware law.

Under the second element, based on their own disclosures to DCL's senior management and numerous emails, text messages, and voicemails evidencing their intent and actions, Defendants will be wholly unable to dispute that they have misappropriated DCL's trade secrets

and proprietary information in their efforts to solicit DCL's customers for purposes of a direct competitor, BSS, in direct breach of their contractual obligations to DCL. (Ex. B, ¶¶ 73-74, 79-81, 102-112, 133, 141, 169-171, 180-187; Exs. C, D, E, K, L, M, N, O, P, Q, R). As it relates to the third element of the breach of contract analysis, Defendants have damaged DCL in the approximate amount of $7 million dollars as it relates to their misconduct's impact on DCL's contractual relations with DCL's largest client, LMCO. (Ex. B, ¶ 2). As such, it is highly likely DCL will prevail on its breach of contract claims, thus warranting the issue of a TRO and preliminary injunction against Defendants.

**B.    Plaintiff's Misappropriation Claims Have A Likelihood of Success on the Merits.**

Notwithstanding solely needing to clearly show the likelihood of success on a single claim to warrant preliminary injunctive relief, DCL is likely to succeed on the merits of its claim that Defendants misappropriated DCL's trade secrets in violation of the DTSA, 18 U.S.C. §§ 1831-39, and the VUTSA, Va. Code § 59.1-336, *et seq*. Among other remedies, the DTSA provides injunctive and monetary relief for the misappropriation of trade secrets in civil actions. 18 U.S.C. § 1836 (b)(1). Under the DTSA, a "trade secret" is defined as:

> All forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing. 18 U.S.C. § 1839(3).

The DTSA authorizes the court to grant an injunction to prevent "actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A).

The VUSTA's misappropriation elements are similar to that of the DTSA and require a plaintiff to prove: (1) the existence of a "trade secret"; and (2) the "misappropriation" of that trade secret by the defendant. *Trident Prods.& Servs., LLC v. Canadian Soiless Wholesale, Ltd*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012) *aff'd per curiam*, 505 F. App'x 242 (4th Cir. 2013) (citing

*MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580 (Va. 2004)). First, an alleged trade secret must "meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Id.*; *see also* Va. Code § 59.1-336; *Spece Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018). Such information has been deemed by courts to include "customer lists" and "customer information." *Fid. Glob. Brokerage Grp., Inc. v. Gray*, No. 1:10-cv-1255, 2010 WL 4646039, at *1 (E.D. Va. Nov. 9, 2010); *see also Audio-Video Group, LLC v. Green*, No. 1:14-cv-169, 2014 WL 793535, at *4-5 (E.D. Va. Feb. 26, 2014) (explaining that the alleged misappropriation of customer information was likely to violate the VUSTA so as to warrant a TRO and preliminary injunctive relief). Second, to prove misappropriation, the plaintiff must establish two elements: (1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff. *Trident*, 859 F. Supp. 2d at 780.

Particularly relevant to this matter, in *Coreth*, the court held that the plaintiff demonstrated that its client information had independent economic value by virtue of its secrecy because a competitor armed with the plaintiff's confidential information, such as maturity dates, account balances, and the like, had the ability to target the plaintiff's most valuable clients, and that the reasonable efforts deployed to maintain the secrecy of the client information through several layers of servers and passwords, limited its availability to a need-to-know basis, and further restricted its access by requiring advisors to execute confidentiality agreements. 535 F. Supp. 3d at 514. Moreover, "'[w]here [a] defendant did not utilize 'improper means to acquire a trade secret,'

16

misappropriation can still exist if the defendant disclosed or used that secret." *API Tech. Servs., LLC v. Francis*, No. 4:13cvl42, 2013 WL 12131381, at \*2 (E.D. Va. Dec. 4, 2013) (quoting *MicroStrategy Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 417 (E.D. Va. 2004)). Misappropriation does not require outright theft; it can occur when an employee formerly entrusted with trade secret information uses or discloses that information. *OROS, Inc. v. Dajani*, No. 1:19cv351, 2019 WL 2361047, at \*3 (E.D. Va. June 4, 2019).

Here, under the first element of a misappropriation claim, similar to *Coreth*, the information concerning DCL's confidential and proprietary information is not generally known outside of DCL's business. DCL had and has valuable trade secrets relating to their product and service offerings in interstate and/or foreign commerce, namely its provision of cyber security products and services marketed to the U.S. Government, including but not limited to hypervisor development, reserve engineering, and CNO tool development. (Ex. B, ¶¶ 215, 234, 249, 257).

Furthermore, as alleged in the FAVC, DCL has taken reasonable measures to keep such information secret by, among other things:

> (i) securing DCL's physical servers in a secure location and providing custody and control to DCL's co-founder and CTO Missimer, which is not generally accessible to the public; (ii) having employees sign non-disclosure and mutual confidentiality agreements; (iii) requiring that DCL leadership mark outgoing information as "confidential", "company confidential", and/or "proprietary" before sending it externally; (iv) password-protecting all employees' laptops; (v) requiring full disk encryption of all employee's laptops; (vi) utilizing a corporate VPN with per employee certificates to access the network; (vii) requiring the use of a sophisticated local password management application, Keepass, to encrypt all employees' corporate passwords; (viii) requiring Keepass randomly generated confidential passwords to access DCL's work-related network applications, which also must be accessed through the DCL network; (ix) requiring non-disclosure and mutual confidentiality agreements with all vendors, insurance carriers, subcontractors, co-brokers and other third-parties; (x) assuring compliance with all applicable cybersecurity regulations; and (xi) utilizing role-based access control to enforce least privilege required and only granting developers access to source code repositories for which they were authorized by DCL. (Ex. B, ¶¶ 219, 238, 260).

Shareholders, like Missimer, and employees, like Carpenter and Frank, with access to DCL's information are required to comply with the aforementioned security measures and execute restrictive covenant agreements which include provisions that require such shareholders and employees to maintain the confidentiality of DCL's proprietary information, including client lists and DCL's business plan and strategies. (Ex. B, ¶¶ 42, 59, 61).

DCL has further taken reasonable measures to secure its software products, which constitute trade secret information, by requiring all developers working on software products to utilize company laptops for development and to utilize the DCL GitLab which does not have connection to the internet. (Ex. B, ¶ 220). In order to view the repositories, an administrator must affirmatively grant access. (*Id.*). The only administrators are the owners of DCL, which includes Missimer. (*Id.*). DCL additionally requires all employees with access to DCL's network to take reasonable countermeasures to ensure access to the company network and subsequent source code repositories are protected. (*Id.*). To do so, DCL employees were required to have a VPN certificate generated by Missimer, who was DCL's CTO, to gain access to the internal network. (*Id.*). Furthermore, once inside the DCL corporate network, employees were required to authenticate with their DCL accounts through the use of single-sign-on which validated the account permissions allowed. (*Id.*).

By way of the disclosures to DCL and the reasonable measures in place to protect DCL's trade secret information, it cannot reasonably be disputed Carpenter, Missimer, and Frank, in concert with BSS and Haddock, stole, or otherwise removed or used without authorization and through improper means, confidential and proprietary corporate documents from DCL. (Ex. B, ¶ 221). There exists a substantial likelihood of "inevitable disclosure" of DCL's trade secrets if Missimer, Carpenter, or Frank are allowed to work at a competitor company, in part because they

18

cannot unlearn what they learned while working at DCL and if they work with a competitor, their extensive knowledge would almost certainly filter into their work and result in disclosure of DCL's trade secrets. *See Atlantic Diving Supply, Inc. v. Jay Basnight*, No. 2:22cv298, 2022 WL 5568083, at *12-13 (E.D. Va. Sept. 21, 2022) (citing *W.L. Gore & Assocs., Inc. v. Wu*, No. C. A. 263-N, 2006 WL 2692584, at *14 (Del. Ch. Sept. 15, 2006), *aff'd*, 918 A.2d 1171 (Del. 2007)).

Based on Defendants' blatant conduct in disregard for their respective contractual, statutory, and common law obligations, Missimer's refusal to return DCL's company property, Defendants' disclosure of DCL's trade secret and confidential information including disclosure of proposed settlement terms, and the highly sensitive nature of DCL's business operations, this Court should not have "confidence that [Defendants] w[ould] refrain from using [DCL]'s Trade Secrets if [they were] allowed to work in areas where [they would] have to exercise the discretion and judgment to not use them." *Id.* at *12 (quoting *W.L. Gore*, 2006 WL 2692584, at *10, 14).

Substantial evidence exists in support of a claim of misappropriation of trade secrets based upon both Carpenter, Missimer, and Frank's use of DCL's trade secrets to solicit clients, such as LMCO, in an effort to induce them to move their business away from DCL. (Ex. B, ¶¶ 133, 136, 141). By signing their respective restrictive covenant agreements, Carpenter, Missimer, and Frank knew that DCL's customer information was confidential. (Ex. B, ¶¶ 52, 62). Each individual also knew that he was prohibited from taking with him particularized information that was disclosed during the course of his employment and that is not known to others in the industry. (*Id.*).

Defendants' disclosure and/or use of such information for BSS's benefit, or the benefit of any other entity which they may control, constitutes a prohibited misuse of DCL's trade secrets, in that Carpenter, Missimer, and Frank knew that the information was provided to them under circumstances that gave rise to the duty to maintain its secrecy and to limit its use. Just one such

example of Defendants' misappropriation occurred prior to Carpenter's termination. Based on DCL's internal investigation to date, which remains ongoing, on or about November 10, 2022, Carpenter accessed and downloaded DCL's business development plans and strategies ("Business Plan"), which includes but is not limited to DCL's list of prospective and existing customers. (Ex. B, ¶ 181; Ex. R). On or about November 15, 2022, after updates were made to the Business Plan by DCL's senior leadership, Carpenter downloaded this same document again. (Ex. B, ¶ 182; Ex. R). There was no business necessity for Carpenter to access and download the Business Plan on either November 10 or 15, 2023. (Ex. B, ¶ 183; Ex. R). There is no reason for any DCL employee to download the Business Plan as it is a working document with all edits being made live via a document hosting service. (Ex. B, ¶ 184; Ex. R).

In fact, DCL's file sharing program user logs reveal that while Carpenter frequently viewed or edited other documents on DCL's corporate networks, the Business Plan was the only document that he ever downloaded. (Ex. B, ¶ 185; Ex. R). Carpenter never uploaded the document with any changes, but instead simply downloaded it, on information and belief, to utilize DCL's trades secrets for Defendants' competitive venture, BSS, which was incorporated approximately two weeks after he downloaded the Business Plan for a second time. (Ex. B, ¶ 186; Ex. R). Defendants have already misappropriated DCL's customer list by way of soliciting Haddock of LMCO for a subcontract on the Task Order related to the IDIQ Contract. (Ex. B, ¶ 187). Missimer, Carpenter, Frank, and Haddock have been acting alone and/or in concert with each other and that knowledge and/or action by one is attributable to the other in all respects including the deprivation of DCL's access to its trade secret information and the use and dissemination thereof. *See RLM Communications, Inc. v. Tuschen*, 831 F.3d 190, 202 n.4 (4th Cir. 2016) (finding that misappropriation existed when "the employer put forth evidence that the employee "accessed [the

employer's] 'game plan' and other confidential documents from [the employer's] network with unusual frequency" just prior to a meeting with a competitor") (citation and internal quotation marks omitted) (alterations in original). As a result, it is highly likely DCL will prevail on its misappropriation claim.

**C.**  **Plaintiff's Remaining Claims Are Likely to Succeed on the Merits.**

For the same reasons as those articulated above with respect to its breach of contract and misappropriation claims, DCL is also likely to prevail on their claims that Defendants tortiously interfered with DCL's contracts and business expectancy, violated the VUCITA, engaged in common law unfair competition, and conspired to commit their wrongful actions. (Ex. B, ¶¶ 299-340). Carpenter, Missimer, and Frank, with the aiding and abetting of BSS and Haddock, also breached their fiduciary duty and duty of loyalty to DCL during their employment. (Ex. B, ¶¶ 280-298). *See Marsteller v. ECS Fed., Inc*., No. 1:13-cv-593, 2013 WL 4781786, at *9 (E.D. Va. Sept. 5, 2013) ("[T]he Supreme Court of Virginia noted, 'liability for breach of fiduciary duty has been imposed when the employees or directors misappropriated trade secrets, misused confidential information and solicited an employer's clients or other employees prior to termination.") (quoting *Feddeman & Co v. Langan Associates*, 260 Va. 35, 42, 530 S.E.2d 668 (Va. 2000)). Accordingly, DCL is likely to prevail on the merits of its claims. Defendants must be enjoined.

## POINT III

## PLAINTIFF IS LIKELY TO SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION

DCL is likely to suffer irreparable harm if emergency and preliminary injunctive relief is not granted. Irreparable harm is suffered when monetary damages are difficult to ascertain or inadequate to redress the injury suffered by the plaintiff. *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 795 (E.D. Va. 2018). That harm must be actual or imminent, rather than remote or speculative

because "a trade secret, once lost is, of course, lost forever." *See Home Funding Grp., LLC v. Myers*, No. 06-cv-1400, 2006 WL 6847953, at *2 (E.D. Va. Dec. 14, 2006). In *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, the Fourth Circuit noted that:

> Even if a loss can be compensated by money damages . . . , extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction. . . . We explained such circumstances may exist where, for example, the moving party's business cannot survive absent a preliminary injunction or where damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected. 452 F. App'x 351, 353-54 (4th Cir. 2011) (internal quotations omitted).

Finally, harms to a party's market share, reputation, and workforce constitute irreparable injury. *See JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 825 (E.D. Va. 2007).

The irreparable harm facing DCL in this case is straightforward: Defendants' continued misappropriation of DCL's confidential and trade secrets information, as well as the documented breaches of their contractual obligations intended to prevent such unauthorized use and disclosure, place DCL at risk of the imminent loss of its trade secrets and commercially competitive advantage. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."). Carpenter, Missimer, and Frank have flouted their contractual obligations to DCL by using DCL's trade secret information to solicit LMCO. (Ex. A ¶ 186-188, 209). Moreover, without authorization, Missimer, singularly and in concert with the other Defendants, locked DCL out of its own network and devices which shows Defendants' overt attempt to take control of DCL's trade secrets and proprietary information. (Ex. A ¶¶ 169-179; Ex. Q).

The uncontroverted evidence suggests that Defendants have used DCL's trade secrets to solicit DCL's customers, such as LMCO, and that they continue to do so. (Ex. A ¶¶ 33, 186-187,

67-69, 73; Pelkey Aff., ¶¶ 16-42). The full extent of the loss caused by these actions is incalculable, and therefore irreparable. *See id.* Therefore, DCL has established that it will suffer irreparable harm in the event that the TRO and preliminary injunction are not entered.

## POINT IV

## THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF

The balance of equities tilts in favor of granting DCL's requested injunctive relief. DCL stands to suffer imminent and irreparable harm in the absence of the requested relief. Defendants will suffer minor inconvenience—if any—should such interim relief be granted. In situations where a plaintiff seeks "an injunction to foreclose [a party] from benefitting from its misappropriation of [another's] trade secrets," the balance of equities "strongly favors" the movant. *See API Tech.*, 2013 WL 12131381, at *3 (citation omitted). It is not surprising as to why this is so; where the defendant may benefit from improper disclosure of the proprietary information of a movant, the movant stands to lose a great deal should its trade secret or confidential information be disclosed. *See Cap. One Fin. Corp. v. Sykes*, No. 3:20cv763, 2021 WL 2903241, at *14 (E.D. Va. July 9, 2021). DCL is in such a position now because absent its requested relief, it runs the risk of imminent disclosure of its trade secrets and proprietary information, which is an event no amount of money can undo.

Additionally, Defendants have no legitimate interest in the trade secrets and proprietary information in their possession under trade secret law, or the respective employment agreements that Carpenter, Missimer, and Frank executed, and therefore they can suffer no hardship if they are enjoined from using or disclosing it. *See id.* at *15; *Audio-Video Grp., LLC v. Green*, No. 14-cv-169, 2014 WL 793535, at *6 (E.D. Va. Feb. 26, 2014) ("If it is true that [defendant] is contractually barred from using confidential information [belonging to the plaintiff], then [the

defendant] loses nothing by an injunction prohibiting him from doing so."). Any hardship that Defendants may face during the pendency of a preliminary injunction is entitled to little weight in the Court's calculus of balancing the equities, as it is the result of their own wrongful acts.

Notwithstanding Haddock's egregious conduct encouraging them to discontinue their employment with DCL and start their own competitive venture, Carpenter, Missimer, and Frank could have abided by their contracts with DCL concerning the treatment of DCL's trade secret and proprietary information or refrained from holding DCL's company property hostage and sabotaging DCL's corporate network during the pendency of their purported settlement negotiations with DCL once their plans to start BSS were disclosed by Haddock and Missimer, respectively. (Ex. B, ¶¶ 67-75, 123; Pelkey Aff., ¶¶ 16-42). Where hardships that are borne by a non-movant are self-inflicted, they cannot tip the equities in the non-movant's favor. *See Cap. One Fin. Corp.*, 2021 WL 2903241, at *15. For these reasons, the balance of equities in this case clearly favors DCL and a TRO and preliminary injunction should be issued as a result.

## POINT V

## AN INJUNCTION IS IN THE PUBLIC INTEREST

The public interest will be served by granting DCL a TRO and preliminary injunction against Defendants. A cognizable public interest exists in upholding an agreement in which an employer seeks to protect itself from post-termination piracy of its most valuable information, as well as in discouraging employees from breaching their employer's trust and misappropriating trade secret and confidential information for their own gain. *Cap. One Fin. Corp., 2021 WL 2903241*, at *15; *Audio-Video*, 2014 WL 793535, at *6 (E.D. Va. Feb. 26, 2014). Furthermore, it is well established in Virginia and Delaware that the public has an interest in enforcing valid contracts, safeguarding an employer's confidential information, protecting legitimate business

interests, and preventing unlawful competition. *See Cap. One Fin. Corp.*, 2021 WL 2903241, at *15; *Audio-Video*, 2014 WL 793535, at *6.

Enjoining Defendants will enforce valid restrictive covenants and impose consequences for Defendants' unlawful conduct. DCL owns its confidential and proprietary information, and the secret status of that information was wrongfully being held by Defendants despite their contractual obligations to return it. To date, Defendants already solicited LMCO to transfer its subcontract with DCL to BSS. (Ex. B, ¶¶ 67-69). Defendants have also solicited DCL's current employees to discontinue their employment with DCL. (Ex. B, ¶¶ 84-87; Pelkey Aff., ¶¶ 16-42). DCL is expressly seeking to enjoin Defendants from continuing to use DCL's trade secret and confidential information for improper purposes and from further soliciting DCL's customers and employees to induce them to work with or for BSS or any other entity that Defendants may control. Moreover, public policy favors the protection of legitimate trade secrets like DCL's confidential and proprietary business information as evidenced by the enactments of DTSA and VUTSA, which is a clear expression of the public's intent. The public has an interest in safeguarding the investment that companies like DCL make in an effort to produce innovative and eminently useful technologies.

Finally, to balance the equities in furtherance of the public interest, courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although the district court has discretion to set the bond amount in such sum as the court deems proper, it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (internal quotations omitted).

Regarding the bond requirement, Carpenter and Frank's Restrictive Covenant Agreements expressly state as follows:

> In the event of any actual or threatened breach of any of the covenants contained in this Agreement, the Company shall be entitled to seek an injunction (temporary, preliminary and/or permanent) to enforce this Agreement, without the requirement of posting a bond or other form of collateral, and may also pursue any other available remedies available to it in law and/or equity. (Ex. A. at ¶ 65; Exs. D, E).

Because DCL has plead sufficient facts to show, for purposes of preliminary relief, that Defendants acted in concert with one another to harm DCL, DCL seeks for this Court to enforce Carpenter and Frank's Restrictive Covenant Agreements and not require the "posting [of] a bond or other form of collateral." (Ex. A. at ¶ 65; Exs. D, E). However, DCL will post adequate security for injunctive relief as deemed appropriate by the Court. If the Court in its discretion does not extend the above bond provision to the other Defendants, DCL respectfully requests that this Court require only a cash bond of $2,500.00 or less, payable by cash or check. The process to obtain a surety bond takes longer, and DCL needs the TRO to issue immediately.

Under the circumstances, the entry of a TRO and preliminary injunction will promote the public interest by upholding the sanctity of contracts, protecting the confidentiality of trade secrets, and ensuring that competition in the government contracting and cyber security industry is both vigorous and fair.

## **POINT VI**

## **THE SCOPE OF PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF IS PROPER**

DCL's request for preliminary injunctive relief seeks the relief outlined in its request for a TRO, and for additional preliminary relief in the form of an order requiring Carpenter, Missimer, and Frank to cease working for or on behalf of BSS or any other competitor of DCL and to cease solicitation of DCL's existing and prospective clients and employees. Importantly, as it relates to

the scope of DCL's requested relief, "it is well-established . . . that a federal district court has a wide discretion to fashion appropriate injunctive relief in a particular case." *Roe*, 947 F.3d at 231.

A.    <u>**Defendants Should Be Enjoined from Use, Disclosure, or Deletion of DCL's Confidential and Proprietary Information and Solicitation of DCL's Clients and Employees.**</u>

Courts in this district widely recognize that injunction preventing the use or disclosure of trade secrets and proprietary information wrongfully in the hands of a defendant is appropriate relief until such time as the case is decided on the merits. *See, e.g.*, *Coreth*, 535 F. Supp. 3d at 521. That is exactly what DCL requests here—Defendants are in possession of DCL's trade secret and proprietary information which they are under obligation to keep in strictest confidence. (Ex. B, ¶¶ 42, 59, 61). Thus, injunctive relief restricting Defendants' use, disclosure, or alteration of trade secrets belonging to DCL, such as DCL's Business Plan, is appropriate here because it binds Carpenter, Missimer, and Frank to their confidentiality obligations and preserves the status quo. The pressing nature of the danger Defendants pose to the confidentiality of DCL's trade secrets and other proprietary information means that the Court should issue a TRO and preliminary injunction providing this relief.

Preventing Carpenter, Missimer, and Frank from continuing to work for BSS, or any other entity which Defendants may control or become affiliated, and enjoining Defendants from soliciting or inducing DCL's existing and prospective clients and employees to discontinue working with or for DCL, is necessary to preserve the status quo. By binding Carpenter, Missimer, and Frank to their contractual obligations to DCL and halting Haddock's campaign to destroy DCL by aiding and abetting Carpenter, Missimer, and Frank's respective breaches, the Court's order would eliminate or otherwise mitigate the risk that they will reveal DCL's trade secrets and proprietary information and cause additional clients and highly skilled employees to disassociate

with DCL during the pendency of the litigation. *See Coreth*, 535 F. Supp. 3d at 521 (finding injunctive relief to preserve status quo was reasonable and appropriate).

**B.**    **Expedited Discovery Is Appropriate in this Case.**

Expedited discovery is required in this instance for DCL to be able to provide a full evidentiary case at the preliminary injunction hearing. It is well settled that trial courts have inherent authority and broad discretion to control the scope and the timing of discovery. *Great Am. Ins. Co. v. Gross*, No. 3:05-cv-159, 2007 WL 1577503, at *14 (E.D. Va. May 30, 2007) ("District courts enjoy broad discretion in managing discovery matters." (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery . . . .")))); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) (observing that District Courts "enjoy nearly unfettered discretion to control the timing and scope of discovery").

Although specific standards for evaluating expedited discovery motions are not set out in the FRCP, the FRCP provides the court with authority to direct expedited discovery in limited circumstances. Specifically, FRCP 26(d) provides that "except . . . when authorized under these rules or by order . . . a party may not seek discovery from any source before the parties have conferred as required by [FRCP] 26(f)." Fed. R. Civ. P. 26(d). Rule 26(b) provides the court with broad discretion in structuring discovery, stating "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The rules pertaining to each category of discovery also allow for alterations in timing based upon court order. For instance, FRCP 34 states that "[w]ithout leave of court . . . a request may not be served before the time specified in Rule 26(d)." Fed. R. Civ. P. 34(b) (pertaining to production of documents). FRCP 33(a) and 36 provide identical authority with regard to interrogatories and

requests for admission. Finally, pertaining to depositions, FRCP 30(a)(2) states that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in [FRCP] 26(b)(2), if . . . a party seeks to take a deposition before the time specified in [FRCP] 26(d)." Fed. R. Civ. P. 30(a)(2) (emphasis added). Thus, FRCP "26(d), 30(a), 33(b), 34(b) and 36 give this Court the power to adjust the timing requirements imposed under [FRCP] 26(d) and if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive v. Lathian Sys.*, No. CA 03-1193-A, 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003).

Additionally, courts in this circuit have frequently permitted expedited discovery in advance of hearings on applications for TROs and preliminary injunctions to ensure timely determination of complex factual issues. *See, e.g.*, *KBG Holding Corp. v. Union Bank*, 56 F. App'x 111, 114 (4th Cir. 2003) ("The parties engaged in expedited discovery in preparation for the . . . hearings on the competing motions for preliminary injunction."); *CIENA Corp. v. Jarrard*, 203 F.3d 312, 315 (4th Cir. 2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of a preliminary injunction motion); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980) (noting that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing").

At this stage of the proceedings, DCL knows that Defendants, singularly and in concert with one another, have solicited DCL's largest client, LMCO, and downloaded trade secrets and proprietary information from DCL's databases to misappropriate such information for their own benefit as well as solicited or induced other employees to cease employment with DCL. (Ex. B, ¶¶ 180-186; Ex. R; Pelkey Aff., ¶¶ 16-42). The evidence shows that Defendants will continue to

solicit DCL's clients, employees, and candidates and to use DCL's trade secrets to unlawfully compete with DCL. There will be no prejudice to Defendants if expedited discovery is granted.

At present, DCL does not know the extent to which Defendants are using DCL's trade secret and proprietary information and causing clients and employees to disassociate with DCL. Most importantly, Defendants must be ordered to immediately preserve and not alter, and DCL must be permitted to inspect and image, all computers and other electronic devices, including, but not limited to, computers, hard disk drives, removable storage devices, cell phones, and/or all other similar electronic devices belonging to, under the control of, accessible to, or operated by Defendants on which DCL information of any kind resides or may have resided. Defendants' court-mandated compliance with such an order will enable DCL to understand the full extent of the misappropriation of DCL's trade secrets and proprietary information. As a result, the scope of DCL's requested preliminary relief is reasonable and expedited discovery is warranted.

## CONCLUSION

Because DCL will succeed on the merits of its claims and suffer irreparable harm in the absence of the requested injunction, and the balance of equities and public interest favor entry of that injunction, the Court should grant DCL's Motion for a TRO, Preliminary Injunction, and Expedited Discovery in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: April 6, 2023                          Respectfully submitted,

Steven J. Weber, VSB No. 35573
Gregory R. Begg, *Pro Hac Vice*
Lauren Rayner Davis, *Pro Hac Vice*