# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                         :

DARK CIRCUIT LABS, INC.,          :

                         :

               Plaintiff,  :   Case No. 1:23-cv-00326

                         :

        v.                  :

                         :

BLACK SAILS SECURITY LLC, JOHN  :
CARPENTER, ERIC MISSIMER, MICHAEL  :
FRANK, and KEITH HADDOCK,  :

                         :

             Defendants.  :

                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### KEITH HADDOCK'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

    A.    The Parties' Relationship and the Program. ...................................... 2

    B.    DCL Employees Express Concerns about DCL and Their Continued Ability to Work on the Program. ...................................................... 3

    C.    DCL Terminates Carpenter's and Missimer's Employment, Leading to Partial Mission Failure. ........................................................... 4

    D.    An Injunction Would Further Threaten the Program and National Security Interests. ........................................................................ 4

ARGUMENT ON MOTION FOR TEMPORARY RESTRAINING ORDER ........................... 5

    A.    DCL Is Unlikely to Prevail on the Merits of Its Claims against Haddock. ............ 6

        1.    DCL Is Unlikely to Prevail on Its Trade Secrets Claims against Haddock. ...................................................................... 6

            a.    DCL has not identified any trade secrets at issue. ........................ 7

                i.    Proposed settlement terms. ................................. 9

                ii.    DCL "company property." ................................. 12

                iii.    DCL's "Business Plan." ................................... 13

                iv.    DCL's "customer list." .................................... 14

            b.    Haddock has not misappropriated any trade secrets. .................... 15

        2.    DCL Has Not Asserted a Claim for Breach of Contract against Haddock. ..................................................................... 17

        3.    DCL Is Unlikely to Succeed on Its Other Claims against Haddock. ........ 18

    B.    DCL Will Not Suffer Irreparable Injury Absent Injunctive Relief. ...................... 21

    C.    The Balance of Harms and Public Interest Favor Haddock. ................................ 22

ARGUMENT ON REQUEST FOR EXPEDITED DISCOVERY ........................................... 24

    A.    DCL Fails to Present a Need for Expedited Discovery. ...................................... 26

i

B.    DCL's Proposed Discovery Is Unreasonable. ...................................................... 26

C.    DCL's Request for Forensic Analysis and Other Detailed Information
       Should Be Denied. ............................................................................................ 27

CONCLUSION ...................................................................................................................... 28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All Bus. Sols., Inc. v. NationsLine, Inc.*,
  629 F. Supp. 2d 553 (W.D. Va. 2009) ...............................................................8, 27

*Am-Cor.Com, Inc. v. Stevens*,
  56 Va. Cir. 245 (2001) ...............................................................................14

*Amoco Prod. Co. v. Campbell*,
  480 U.S. 531 (1987)...................................................................................22

*Apex Advanced Tech. LLC v. RMSI Private Ltd.*,
  No. 1:21-cv-1400, 2022 WL 4826335 (E.D. Va. Sept. 30, 2022) ...........................6

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020) .......................................................................12

*Brockman v. Keystone Newport News, LLC*,
  No. 4:15-CV-74, 2018 WL 4956514 (E.D. Va. Oct. 12, 2018)...............................9

*Byers v. Smith*,
  No. 99095, 1991 WL 834756 (Va. Cir. Ct. Jan. 31, 1991).........................18, 19, 20

*CIENA Corp. v. Jarrad*,
  203 F.3d 312 (4th Cir. 2000) .........................................................................5

*Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.*,
  249 F.3d 204 (4th Cir. 2001) .......................................................................20

*Deltek, Inc. v. Iuvo Sys., Inc.*,
  No. 1:09cv330 (AJT/JFA), 2009 WL 1073196 (E.D. Va. April 20, 2009) ...........................22

*Dimension Data N. Am. v. NetStar-1, Inc.*,
  226 F.R.D. 528 (E.D.N.C. 2005) ...................................................................26

*Elite Cleaning Co. v. Capel*,
  No. Civ.A. 690–N, 2006 WL 1565161 (Del. Ch. June 2, 2006) ...........................20

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*,
  189 F. Supp. 2d 385 (E.D. Va. 2002) ..........................................................20, 21

*FERC v. Powhatan Energy Fund, LLC*,
  No. 3:15CV452, 2021 WL 8820549 (E.D. Va. Sept. 10, 2021) .......................18, 19

*Forsythe Global, LLC v. QStride, Inc.*,
    No. 1:16cv98(JCC/IDD), 2016 WL 3279499 (E.D. Va. June 14, 2016) .............................. 18

*Greenstar, LLC v. Heller*,
    814 F. Supp. 2d 444 (D. Del. 2011) ........................................................................... 17

*In re Guantanamo Bay Detainee Litig.*,
    570 F. Supp. 2d 13 (D.D.C. 2008) ............................................................................ 23

*Hamilton v. Transportation Sec. Admin.*,
    240 F. Supp. 3d 203 (D.D.C. 2016) .......................................................................... 23

*Independence Blue Cross v. Health Systems Integration, Inc.*,
    CIV. A. 96–8216, 1997 WL 36961 (E.D. Pa. Jan. 29, 1997) ................................... 26

*JTH Tax, Inc. v. Williams*,
    310 F. Supp. 3d 648 (E.D. Va. 2018) ........................................................................ 13

*Kancor Americas, Inc. v. ATC Ingredients, Inc.*,
    No. 15-CV00589-GBL-IDD, 2016 WL 740061 (E.D. Va. Feb. 25, 2016) ................. 8

*Keil v. Seth Corp.*,
    3:21cv153 (DJN), 2021 WL 5088242 (E.D. Va. Nov. 2, 2021) ......................... 19, 20

*Kia Motors America, Inc. v. Greenbrier GMC, Inc.*,
    2:20CV428, 2020 WL 8970813 (E.D. Va. Dec. 11, 2020) ...................................... 25

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................. 25

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
    282 Va. 141, 710 S.E.2d 716 (2011) ........................................................................ 20

*Lismont v. Alexander Binzel Corp.*,
    No. 2:12CV592, 2014 WL 12527482 (E.D. Va. Jan. 14, 2014) .............................. 25

*Magnesium Mach., LLC v. Terves LLC*,
    No. 1:19 CV 2818, 2020 WL 3977689 (N.D. Ohio July 14, 2020), *aff'd*, No.
    20-3779, 2021 WL 5772533 (6th Cir. Dec. 6, 2021) .............................................. 10

*Manning v. Hunt*,
    119 F.3d 254 (4th Cir. 1997) .................................................................................... 22

*McAfee, LLC v. Kinney*,
    No. 4:19-CV-463, 2019 WL 4101199 (E.D. Tex. Aug. 29, 2019) ............................. 5

*In re Microsoft Corporation Antitrust Litigation*,
    333 F.3d 517 (4th Cir. 2003) .................................................................................... 21

*MicroStrategy Inc. v. Motorola Inc.*,
   245 F.3d 335 (4th Cir. 2001) ................................................................5

*MicroStrategy, Inc. v. Business Objects, S.A.*,
   331 F. Supp. 2d 396 (E.D. Va. 2004) ................................................7, 8, 14, 16

*Milliken & Co. v. Evans*,
   No. 7:14-cv-00778, 2014 WL 8240512 (D.S.C. Oct. 10, 2014)............................16

*Monogram Snacks Martinsville, LLC v. Wilde Brands, Inc.*,
   No. 4:20-cv-00030, 2022 WL 188188 (W.D. Va. Jan. 20, 2022)....................15, 16

*Moog Inc. v. Skyryse, Inc.*,
   No. 1:22-CV-187-LJV-JJM, 2022 WL 16852364 (W.D.N.Y. July 22, 2022) ......................13

*Motion Control Sys. v. East*,
   262 Va. 33, 546 S.E.2d 424 (2001)................................................................16

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
   555 F. Supp. 3d 189 (M.D.N.C. 2021) ................................................................25

*Navar, Inc. v. Fed. Bus. Council*,
   784 S.E.2d 296 (Va. 2016)................................................................17

*Olaplex, Inc. v. L'Oreal USA, Inc.*,
   855 F. App'x 701 (Fed. Cir. 2021) ................................................................12

*OpenRisk, LLC v. Microstrategy Servs. Corp.*,
   876 F.3d 518 (4th Cir. 2017) ................................................................18

*OROS, Inc. v. Dajani*,
   No. 1:19-cv-351, 2019 WL 2361047 (E.D. Va. June 4, 2019)............................6, 8

*OSI Systems, Inc. v. KM-Logix, LLC*,
   No. 1-:20-cv-01577, 2021 WL 5987905 (E.D. Va. Dec. 17, 2021) ......................15

*Poulin v. Gen. Dynamics Shared Res., Inc.*,
   No. 3:09-CV-00058, 2010 WL 1257751 (W.D. Va. Mar. 26, 2010) ......................9

*Power Home Solar, LLC v. Sigora Solar, LLC*,
   No. 3:20-cv-00042, 2021 WL 3856459 (W.D. Va. Aug. 30, 2021)....................8, 9, 14, 19

*Preferred Systems Solutions, Inc. v. GP Consulting, LLC*,
   284 Va. 382, 732 S.E.2d 676 (2012)................................................................8

*Prudential Sec., Inc. v. Plunkett*,
   8 F. Supp. 2d 514 (E.D. Va. 1998) ................................................................14

*Quince Orchard Valley Citizens Ass'n v. Hodel*,
   872 F.2d 75 (4th Cir. 1989) ...................................................................22

*Real Truth About Obama, Inc. v. FEC*,
   575 F.3d 342 (4th Cir. 2009) ...................................................................5

*Ry. Lab. Executives' Ass'n v. Wheeling Acquisition Corp.*,
   736 F. Supp. 1397 (E.D. Va. 1990) .........................................................22

*Ryan v. Buckeye Partners, L.P.*,
   No. 2021-0432-JRS, 2022 WL 389827 (Del. Ch. Feb. 9, 2022) ...........................19

*Salient CRGT, Inc. v. Solutions by Design II, LLC*,
   No. 1:20-cv-236, 2020 WL 3550008 (E.D. Va. April 2, 2020)................................6

*Seneca Ins. Co. v. Shipping Boxes I, LLC*,
   30 F. Supp. 3d 506 (E.D. Va. 2014) .........................................................18

*Shahinian v. Kimberly–Clark Corporation*,
   No. CV 14–08390 DMG, 2014 WL 12614439 (C.D. Cal. Dec. 29, 2014) ...........................26

*Sobiech v. WhipperHill Consulting, LLC*,
   No. CIV.A. 15-667, 2015 WL 6736820 (W.D. Pa. Nov. 3, 2015) .........................10

*Square D Co. v. Breakers Unlimited, Inc.*,
   No. 1:07CV0806WTLJMS, 2008 WL 5111356 (S.D. Ind. Dec. 2, 2008) ...........................11

*St. Louis Grp., Inc. v. Metals & Additives Corp.*,
   275 F.R.D. 236 (S.D. Tex. 2011)...............................................................25

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
   No. 3:16–cv–545, 2018 WL 1796293 (E.D. Va. April 16, 2018) ...........................8

*Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*,
   No. CV 15-14188-MLW, 2016 WL 11004353 (D. Mass. June 15, 2016) ...........................25

*Strategic Direction Grp., Inc. v. Bristol-Myers Squibb Co.*,
   293 F.3d 1062 (8th Cir. 2002) .................................................................13

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
   No. 3:21-cv-252, 2022 WL 3005990 (E.D. Va. July 28, 2022)................................8

*Taylor v. CNA Corp.*,
   782 F. Supp. 2d 182 (E.D. Va. 2010) .........................................................21

*Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*,
   No. 13-cv-4255-NLH-JS, 2013 WL 4080648 (D.N.J. Aug. 13, 2013) ...........................24, 25

*Union Oil Co. v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ..................................................................11

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  No. 14-CV-04050-MEJ, 2017 WL 1881157 (N.D. Cal. May 9, 2017) .................................10

*Wenzel v. Knight*,
  No. 3:14–cv–432, 2015 WL 222182 (E.D. Va. Jan. 14, 2015)................................19

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).........................................................................5, 23

*X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*,
  155 F. Supp. 2d 577 (E.D. Va. 2001) ....................................................14

*X6D Ltd. v. Li-Tek Corps. Co.*,
  No. CV102327GHKPJWX, 2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ......................13

## Statutes

18 U.S.C. 1836(b)(3)(D) ........................................................................7

18 U.S.C. § 1832(a) ...........................................................................8

18 U.S.C. § 1832 *et seq.*......................................................................6

18 U.S.C. § 1839(3) ...........................................................................8

18 U.S.C. § 1839(5) ...........................................................................6

18 U.S.C. § 1839(6) ..........................................................................16

Defend Trade Secrets Act ................................................................ *passim*

Va. Code Ann. § 59.1-336 ..................................................................6, 16

Va. Code Ann. § 59.1-338 *et seq.*............................................................6

Va. Code Ann. § 59.1-338.1 ...................................................................7

Virginia Uniform Trade Secrets Act ...................................................... *passim*

## Other Authorities

FRCP 1 ......................................................................................25

FRCP 26 .....................................................................................25

Defendant Keith Haddock ("Haddock") submits the following memorandum in opposition to plaintiff Dark Circuit Labs, Inc.'s ("DCL") motion for a temporary restraining order, preliminary injunction, and expedited discovery (the "Motion") (ECF No. 21).

## **INTRODUCTION**

Nothing less than our nation's security is at issue in this litigation. DCL, a subcontractor for Lockheed Martin Corporation ("Lockheed Martin"), has sued not only three of its former employees, but also Haddock, a Lockheed Martin Program Manager, seeking to enjoin all Defendants based on flimsy evidence at best. It remains unclear why DCL is pursuing an injunction against Haddock. He has no contract with DCL, does not possess any of DCL's trade secrets, and presents no immediate threat to DCL. By contrast, the injunction sought by DCL would severely impact the mission the United States Government contracted with Lockheed Martin to accomplish and for which Lockheed Martin has subcontracted with DCL to provide several dozen competent developers with adequate security clearances. The importance of this mission (which is classified) cannot be overstated, and indeed it is critical to our nation's security.

DCL's conduct has already substantially and negatively impacted the mission, and even setting aside DCL's unlikelihood of success (which alone dooms the Motion), the harm the Defendants—and our nation—will suffer if this Court issues an injunction far outweighs any injury DCL will experience absent injunctive relief. Despite DCL's contrived claims of a conspiracy, Haddock's goal is simple: facilitating the success of the Government's mission by ensuring Lockheed Martin has devoted the appropriate resources to the contract and there is continuity in those working on the program.

In late 2022, Haddock learned from Defendants Eric Missimer ("Missimer") and John Carpenter ("Carpenter") they were unhappy at DCL and their continued ability to work on the

mission was in jeopardy due to DCL's threats to remove them from the contract. Haddock was not made aware of the reasons for these individuals' unhappiness with DCL, nor was it relevant to him; instead, Haddock was (and remains) solely focused on the success of the mission. Thus, when Missimer and Carpenter advised their employment with DCL might potentially be terminated, and when DCL's leadership reached out to Haddock in late January of this year and confirmed DCL was considering terminating Missimer and Carpenter,[1] Haddock merely sought to ensure they would be able to continue working with Lockheed Martin to fulfill the contract requirements. Indeed, as even DCL admits, Haddock first attempted to facilitate a resolution between DCL and its employees permitting those employees to continue working on the program through DCL. When it became clear—based on DCL's persistent threats against (and subsequent termination of) its employees—such a resolution would not be possible, Haddock sought to mitigate the damage already done to the mission.

One might question the wisdom of DCL's attempts to salvage its relationship with a client by suing the client's employee—regardless, DCL has failed to satisfy any of the requirements to entitle it to injunctive relief against Haddock (or any other Defendant). For the reasons set forth herein, this Court should deny the Motion.

## STATEMENT OF FACTS

### A.    The Parties' Relationship and the Program.

DCL is currently under a subcontract with Lockheed Martin (the "Subcontract") to provide staffing needs for a highly confidential, discrete program involving national security (the "Program"). Affidavit of Keith Haddock (the "Haddock Aff.," filed contemporaneously

---

[1] In fact, DCL did terminate Missimer's and Carpenter's employment, on or about March 6, 2023. *See* Affidavit of Ronald Pelkey ("Pelkey Aff.," Dkt. 20-1), ¶ 12; Amended Complaint ("Am. Cmp.," Dkt. 11), ¶ 156.

herewith), at ¶¶ 10-11. Carpenter, Messimer, and Frank were employed by DCL and each came to work on the Program as developers. *Id.* at ¶ 21. On behalf of Lockheed Martin, Haddock serves as the Program Manager on the Program, managing the subcontracted personnel and ensuring deliverables are met for the customer, here, the U.S. Government. Motion at 1.

###### B.    DCL Employees Express Concerns about DCL and Their Continued Ability to Work on the Program.

In or around December 2022, Carpenter and Missimer first informed Haddock they were experiencing issues with DCL and DCL was seeking to place them on another program. Haddock Aff. at ¶ 22. Haddock contacted Ronald Pelkey (DCL's President and COO) and Chase Bertke (DCL's Chief Executive Officer) encouraging them to work with Carpenter and Missimer on finding a solution for them to stay employed at DCL and staffed on the Program. *Id.* at ¶ 25. In late January 2023, Carpenter indicated he was still experiencing issues with DCL and told Haddock of his plans to start a new company called Black Sales Security LLC ("BSS"). *Id.* at ¶ 23. On January 23, 2023, Haddock spoke with Pelkey about Carpenter's new venture and pleaded with him to come to an agreement so Carpenter and Messimer could continue working on the Program. Haddock continued to reach out over email to help resolve the problem. Motion, Ex. L; Haddock Aff. at ¶ 26.

In February 2023, a distraught Carpenter and Missimer called Haddock to let him know DCL sent them a cease-and-desist letter and would not allow them to go to work. Haddock Aff. at ¶ 28. Haddock had to mediate the situation with calls between Carpenter and Missimer on the one hand and Pelkey and Bertke on the other, to get clarity and confirmation they could still work on the Program. *Id.* at ¶ 29-30. Separately, at the end of February, Haddock received an email from another DCL employee working on the Program, Defendant Michael Frank, who

expressed his intentions of leaving DCL but seeking to remain working on the Program. Motion, Ex. N. Haddock did not respond to the email. Haddock Aff. ¶ 35.

### C. DCL Terminates Carpenter's and Missimer's Employment, Leading to Partial Mission Failure.

On March 6, 2023, DCL terminated the employment of both Carpenter and Missimer without notice. Motion, Ex. H, I. Due to its time-sensitivity, the application Carpenter and Missimer had built over the course of months could not be deployed, resulting in a negative mission impact. Haddock Aff. at ¶ 57. As a result, the mission suffered and their work cannot be repurposed. *Id.* at ¶¶ 58-59.

Concerned about the ongoing viability of the mission, Haddock then went to the work site to speak to the remaining DCL developers staffed on the Program, to check their morale and gauge their intentions to ensure they were committed to the Program. *Id.* at ¶ 40. Following DCL's complaint about Haddock's conversations and demand to Lockheed Martin he cease further communications directly with the developers, Haddock has not spoken individually with the DCL developers since those March 2023 conversations except as it relates to their current work. *Id.* at ¶ 72. Shortly thereafter, on March 14, 2023, Frank resigned from DCL. Motion, Ex. J.

### D. An Injunction Would Further Threaten the Program and National Security Interests.

As noted above, the Program has already suffered from Carpenter's and Missimer's abrupt departures. Due to the time-sensitive nature and unique expertise required for their work, Lockheed Martin could not salvage the progress they had made on their respective products. Haddock Aff. at ¶ 58. If Carpenter, Missimer, Frank—or any of the remaining DCL developers staffed on the Program—were enjoined from working on it, the Program's mission would be severely impacted. *Id.* at ¶ 63. This group of developers maintains a unique skill set that is not

easily replicable. Motion, Ex. B, ¶ 11. Additionally, Carpenter, Missimer, and Frank each work on an individually important portion of the Program and have built up significant trust with the Government customer over the course of their tenure. Haddock Aff. at ¶ 56. Accordingly, Haddock, Lockheed Martin, and the Government would suffer irreparable harm if the injunctive relief sought by DCL is granted. *Id.* at ¶¶ 63-64.

## ARGUMENT ON MOTION FOR TEMPORARY RESTRAINING ORDER

An injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To obtain injunctive relief, a plaintiff must show: (1) it has substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless an injunction issues; (3) the threatened injury to the plaintiff outweighs possible injury an injunction may cause the opposing party; and (4) an injunction would not disserve the public interest. *See*, *e.g.*, *CIENA Corp. v. Jarrad*, 203 F.3d 312, 322 (4th Cir. 2000). The moving party must make a "clear showing" it will likely succeed on the merits at trial. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009). Similarly, the moving party must show irreparable harm is not just possible, but it is likely. *Winter*, 555 U.S. at 22. Given the extraordinary relief sought, a temporary restraining order or preliminary injunction should be granted "sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). Where a "Plaintiff contends that it has sufficiently shown all four elements for each cause of action asserted as a basis to enjoin" multiple defendants, the Court shall "address Defendants collectively where possible, but separately when necessary" to account for the individual allegations and positions of each defendant. *McAfee, LLC v. Kinney*, No. 4:19-CV-463, 2019 WL 4101199, at *3 (E.D. Tex. Aug. 29, 2019).

### A.  DCL Is Unlikely to Prevail on the Merits of Its Claims against Haddock.

#### 1.  DCL Is Unlikely to Prevail on Its Trade Secrets Claims against Haddock.

The main thrust of DCL's request for injunctive relief (at least as it relates to Haddock; *see infra* Section A.2) is its claims under the Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA") for misappropriation of trade secrets. 18 U.S.C. § 1832 *et seq.*; VA. CODE ANN. § 59.1-338 *et seq*. To prevail on a claim for misappropriation of trade secrets under either of these statutes, a plaintiff must show: (1) the trade secret was acquired by a person who knew or should have known the secret was acquired by improper means; and (2) the misappropriated secret was subsequently used or disclosed without express or implied consent by a person who: (a) obtained the trade secret by improper means; or (b) at the time of use, knew or had reason to know his knowledge of the trade secret was: (i) acquired improperly; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy; or (iii) acquired by a person who owed a duty to the plaintiff to maintain its secrecy. 18 U.S.C. § 1839(5); VA. CODE ANN. § 59.1-336; *see also Apex Advanced Tech. LLC v. RMSI Private Ltd.*, No. 1:21-cv-1400, 2022 WL 4826335 (E.D. Va. Sept. 30, 2022) ("The applicable standards under the DTSA and the VUTSA are nearly identical.") (internal citations and punctuation omitted; citing *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *2 (E.D. Va. June 4, 2019)). Whether something is a trade secret, and whether a trade secret has been misappropriated, "are both questions of fact." *Salient CRGT, Inc. v. Solutions by Design II, LLC*, No. 1:20-cv-236 (RDA/TCB), 2020 WL 3550008, *7 (E.D. Va. April 2, 2020) (denying plaintiff's request for a TRO where it had not established misappropriation). An injunction in a trade secrets case must be limited to "prohibiting action involving *the specific documents identified as trade secrets*;" an injunction enjoining future misappropriation of trade secrets in

inappropriate. *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 430-31 (E.D. Va. 2004) ("*Business Objects*") (emphasis added).

DCL has not established it has trade secrets at issue in this case, let alone that Haddock misappropriated any such trade secrets (or threatens to). Indeed, a close review of DCL's moving papers reveals DCL relies on nothing more than abject speculation in an effort to enjoin Haddock. Not only has DCL failed to demonstrate a likelihood of success on the merits of these claims, but it has asserted them against Haddock in bad faith.[2]

### a.    DCL has not identified any trade secrets at issue.

The first component of a trade secret misappropriation claim is, of course, establishing the material a plaintiff seeks to protect constitutes a trade secret. Under the DTSA, a trade secret is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
>        (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
>        (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

---

[2] Under both the DTSA and the VUTSA, a trade secret misappropriation claim brought in bad faith can subject the party asserting such claims to an order to pay the defending party's reasonable attorneys' fees. *See* 18 U.S.C. 1836(b)(3)(D); VA. CODE ANN. § 59.1-338.1. Haddock intends to seek recovery of his fees given DCL's bad faith in asserting these claims against him.

18 U.S.C. § 1839(3). "The definition under the VUTSA is similar." *OROS*, 2019 WL 2361047 at *3.[3]

It is not enough for DCL to simply allege it has trade secrets at issue. "A plaintiff must identify, with particularity, each trade secret it claims was misappropriated. This must be done to allow the finder of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information." *Business Objects,* 331 F. Supp. 2d at 418 (E.D. Va. 2004) (internal citations and punctuation omitted); *see also Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21-cv-252, 2022 WL 3005990, *14 (E.D. Va. July 28, 2022) (trade secrets must be identified with particularity); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16–cv–545, 2018 WL 1796293 (E.D. Va. April 16, 2018) (same); *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, No. 15-CV00589-GBL-IDD, 2016 WL 740061, at *14 (E.D. Va. Feb. 25, 2016) (same); *Preferred Systems Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 407, 732 S.E.2d 676, 689 (2012) (upholding dismissal where the defendant "simply references a laundry list of items that PSS considers to be 'Confidential Information.'"). Indeed, a "common thread" in cases finding the existence of a trade secret is the "complaints described, with requisite specificity, the information constituting trade secrets," as distinct from complaints in which the plaintiff's allegations constituted "naked assertions." *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-00042, 2021 WL 3856459, *9-10 (W.D. Va. Aug. 30, 2021) (finding plaintiff had not sufficiently alleged trade secrets where it merely referred to "various materials" as being proprietary and/or confidential); *see also All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559 (W.D. Va. 2009) (granting the defendant's motion to dismiss where, even after two amended complaints, the plaintiff's claim

---

[3] The DTSA also requires the trade secret be "related to a product or service used in or intended for use in interstate or foreign commerce." 18 U.S.C. § 1832(a).

"under the VUTSA is premised on [a] single, conclusory assertion" that the defendant sought to "appropriate and disclose the names" of the plaintiff's customers, along with other trade secrets and confidential information). "[P]laintiffs seeking statutory protection must provide specific factual detail about the unique nature of these materials, including how they were developed and why the underlying . . . information is not otherwise readily ascertainable by their competitors in the relevant market." *Power Home Solar* , 2021 WL 3856459, at *10. .

DCL's Motion is long on rhetoric and short on specifics. Indeed, DCL relies on conclusory descriptions of material it alleges is proprietary or confidential. *See, e.g.*, Motion at p. 17 (referring obliquely to "the information concerning DCL's confidential and proprietary information" and "valuable trade secrets relating to [DCL's] product and service offerings"), 18 (alleging "Carpenter, Missimer, and Frank, in concert with BSS and Haddock," stole "confidential and proprietary corporate documents from DCL"). The few items it cursorily describes do not come close to meeting the definition of a trade secret under the DTSA or VUTSA.

### i.    Proposed settlement terms.

DCL claims Defendants disclosed its trade secrets "including disclosure of proposed settlement terms." Motion at p. 19; Am. Cmp. ¶¶ 154, 223. But, DCL has not explained how proposed settlement terms can constitute trade secrets under the DTSA or VUTSA, and Haddock is not aware of any authority holding as much. To the contrary, ample caselaw demonstrates settlement terms, even if meant to be confidential, do not typically rise to the level of trade secrets. *See, e.g., Brockman v. Keystone Newport News, LLC*, No. 4:15-CV-74, 2018 WL 4956514, at *6 (E.D. Va. Oct. 12, 2018*)* (finding a confidentiality clause was inappropriate in settlement agreements where no proprietary business information or trade secrets were mentioned); *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 WL

1257751, at *3 (W.D. Va. Mar. 26, 2010) ("The parties have not argued that the Settlement Agreement involves trade secrets, informants, scandalous or libelous information, or other circumstances where the interest in secrecy may be compelling."); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2017 WL 1881157, at *2 (N.D. Cal. May 9, 2017) (finding "a review of the Settlement Agreement shows that not all of the information contained therein consists of trade secret, proprietary, or otherwise protectable material" and therefore the parties failed to show compelling reasons why the entire document should be sealed); *Sobiech v. WhipperHill Consulting, LLC*, No. CIV.A. 15-667, 2015 WL 6736820, at *2 (W.D. Pa. Nov. 3, 2015) ("After reviewing it, the Court finds that contrary to Defendants' assertion, this settlement agreement does not identify, provide any details, or even remotely implicate any trade secrets.").

     *Magnesium Mach., LLC v. Terves LLC*, No. 1:19 CV 2818, 2020 WL 3977689 (N.D. Ohio July 14, 2020), *aff'd*, No. 20-3779, 2021 WL 5772533 (6th Cir. Dec. 6, 2021), is instructive. In that case, the plaintiff pursued a trade secrets misappropriation claim after the defendant came into possession of a settlement agreement via a subpoena request to a third-party, which the plaintiff alleged disclosed trade secret products and methods belonging to plaintiff. The court observed the allegedly protected content was not labeled as a "trade secret" nor marked "Attorney's Eyes Only." *Id.* at *2. After an evidentiary hearing, the court found there was no evidence indicating any impropriety in the access or sharing of the information. *Id.* at *4. The court further found because the purported trade secret boiled down to a three-word phrase in the settlement agreement, the plaintiff's claim of trade secret disclosures was "at best intentionally misleading, and at worst, intentionally deceptive" and therefore, found the case had been brought in bad faith. *Id.* at *2.

Similarly, the court in *Square D Co. v. Breakers Unlimited, Inc*., No. 1:07CV0806WTLJMS, 2008 WL 5111356, at *1 (S.D. Ind. Dec. 2, 2008), considered the defendant's request to file a settlement agreement under seal. The court rejected the defendant's contention the settlement agreement was a trade secret because it derived economic value from the secrecy thereof. The court noted: "Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination)." *Id.* at *1 (quoting *Union Oil Co. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)).

Even assuming proposed settlement terms could meet the definition of a trade secret in certain circumstances, DCL's allegations are woefully insufficient to support such a finding here. Indeed, DCL has not described these terms, depriving Haddock of the ability to defend himself against DCL's claims. The Pelkey Aff., for example, discusses conversations Pelkey had with DCL employee Delfino Liban. Pelkey claims he spoke with Liban about statements Haddock allegedly made to Liban about certain "disagreements" involving DCL and Haddock's purported claims DCL would be removed from Lockheed Martin's contract.[4] *See* Pelkey Aff. at ¶¶ 18, 23-25. Pelkey goes on to express his dismay that Liban learned about the parties' disagreement from Haddock, because "settlement negotiations were to remain confidential" and "third parties, including Haddock, [] were not party to negotiations" and should not have known "such negotiations were even occurring in the first place . . . ." *Id.* at ¶ 31. It thus appears DCL is alleging the mere *fact* the parties were engaged in settlement negotiations constitutes a trade secret. This is plainly absurd, and has no basis in law.

---

[4] Of course, whether DCL would be removed from Lockheed Martin's contract is not a DCL trade secret; Lockheed Martin is entitled to decline to exercise its option under the subcontract with DCL and that business decision is not confidential to DCL.

Additionally, even if DCL is referring to a specific proposed settlement term (as distinct from the simple fact the parties were discussing settlement), DCL has not even attempted to explain how any such unidentified term "derives independent economic value, actual or potential," by not being known. Moreover, for purposes of the DTSA, any connection between the amorphous proposed settlement term to "a product or service used in or intended for use in interstate or foreign commerce" is tenuous at best.

Finally, while Haddock need not guess as to the specific trade secret information he is alleged to have misappropriated (as it is DCL's burden to describe the alleged trade secret with particularity), Haddock believes he may know the proposed term to which DCL refers. Contrary to DCL's claim, Haddock did not learn any such information from the other individual defendants; instead, during a call between Pelkey and Haddock, *Pelkey* disclosed to Haddock DCL's settlement negotiations with the other individual defendants, including disclosing a specific term DCL has proposed. Haddock Aff. at ¶ 66. This was the first time Haddock had heard any specific proposed terms from any party. *Id.* As the *sine qua non* of a trade secret is *secrecy*, Pelkey's disclosure to Haddock of this proposed term defeats any possible argument the proposed settlement term is a trade secret. *Olaplex, Inc. v. L'Oreal USA, Inc.,* 855 F. App'x 701, 707 (Fed. Cir. 2021) ("[D]isclosure of a trade secret . . . extinguishes the information's trade secret status") (quoting *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020)).

## ii.    DCL "company property."

DCL also refers vaguely to its "company property containing DCL's trade secrets." Motion at p. 3; *see also id.* at pp. 19, 24. Again, this description is woefully vague, and without describing with specificity the trade secrets allegedly stored on this "company property," DCL's claims fail. While DCL offers no additional details in the Motion itself, the Amended Complaint refers to alleged trade secrets on certain electronic repositories, including server blades and

12

towers, a router, and a cell phone. *See, e.g.,* Am. Cmp. at ¶ 159. But describing *where* the alleged

trade secrets reside is insufficient. *See Moog Inc. v. Skyryse, Inc.*, No. 1:22-CV-187-LJV-JJM,

2022 WL 16852364, at *2 (W.D.N.Y. July 22, 2022) ("Courts should not allow trade secret

plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a

detailed identification."). DCL's claim the servers stored its "intellectual property, including

several software products," *id.* at ¶ 160, is similarly inadequate. *See Strategic Direction Grp.,

Inc. v. Bristol-Myers Squibb Co.*, 293 F.3d 1062, 1065 (8th Cir. 2002) (although a novel or

unique combination of known elements may in some cases constitute a trade secret, the simple

assertion that a trade secret resides in some combination of otherwise known data is insufficient);

*see also X6D Ltd. v. Li-Tek Corps. Co.*, No. CV102327GHKPJWX, 2012 WL 12952726, at *6

(C.D. Cal. Aug. 27, 2012) ("Plaintiffs fail to specifically identify what in these documents is a

trade secret and where within these documents that information is located. This disclosure is

insufficient to satisfy Plaintiffs' burden of identifying for the court exactly what it claims as trade

secrets.") (quotations omitted).[5]

### iii.    DCL's "Business Plan."

DCL also claims its "business development plans and strategies ('Business Plan')" is a

trade secret at issue in this litigation. Motion at p. 27. Other than alleging the Business Plan

"includes but is not limited to DCL's list of prospective and existing customers," *id.*, DCL does

not further describe it.[6] This, too, fails to satisfy the requirement that DCL describe its alleged

trade secrets with sufficient factual detail to permit Defendants to defend against DCL's claims.

Moreover, not all customer lists constitute trade secrets. *See JTH Tax, Inc. v. Williams*, 310 F.

---

[5] Moreover, as set forth below, Haddock is not alleged to have had any part in Missimer's alleged retention of these devices.

[6] Tellingly, the Pelkey Aff. does not even mention the Business Plan.

Supp. 3d 648, 655 (E.D. Va. 2018) ("Courts have found that customer lists . . . *may* constitute trade secrets, under the right set of circumstances.") (emphasis added); *see, e.g., Business Objects*, 331 F. Supp. 2d at 416 ("a customer list . . . *could* be a trade secret) (emphasis in original); *Power Home Solar*, 2021 WL 3856459 at *10 ("Although marketing and sales materials, including customer lists, *can* constitute trade secrets," plaintiffs must "provide specific factual detail about the unique nature of these materials" and while compilation of customer lists "may be an arduous task," that "is not alone sufficient to confer protection" under the DTSA; ultimately dismissing trade secret claims based on plaintiff's failure to provide specific facts supporting a finding the customer information constituted a trade secret) (emphasis added); *X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc*., 155 F. Supp. 2d 577, 641–42 (E.D. Va. 2001) ("Based on the evidence in the record, the Court concludes that X–IT's customer account list does not constitute a trade secret."); *Prudential Sec., Inc. v. Plunkett*, 8 F. Supp. 2d 514, 518 (E.D. Va. 1998) ("an employee who merely recalls customer information from memory has not violated his confidentiality agreement."); *see also Am-Cor.Com, Inc. v. Stevens*, 56 Va. Cir. 245 (2001) (finding customer list may have been plaintiff's property, but "it was not proven that the customer list was a trade secret"). DCL has not provided sufficient evidence the list supposedly at issue in this case rises to the level of a trade secret, nor has it established it either took adequate measures to protect the secrecy of the Business Plan or described how it "derives independent economic value, actual or potential," by not being known.

### iv.    DCL's "customer list."

Finally, to the extent not encompassed in the "Business Plan," DCL also alleges Defendants "have misappropriated DCL's customer list by way of soliciting Haddock of [Lockheed Martin] . . . ." Motion at p. 20. As noted above, a customer list, without more, does not necessarily constitute a trade secret. *Business Objects*, 331 F. Supp. 2d at 416; *Power Home*

*Solar*, 2021 WL 3856459 at *10. In any event, there are no factual allegations supporting DCL's claim that any Defendant—let alone Haddock—misappropriated DCL's customer list. Of course, even DCL's own allegations reveal to the extent its customer list *was* a trade secret, or *had* been misappropriated, Haddock was not party to such misappropriation. *See* Motion at p. 20 (claiming Defendants "misappropriated DCL's customer list by way of soliciting *Haddock* . . . .") (emphasis added). Nor does it follow because the other individual defendants allegedly "solicited" Haddock, they must have used a customer list; indeed, Missimer, Carpenter, and Frank have worked on the Lockheed Martin contract since 2021 and interacted with Haddock on a regular basis. Haddock Aff. at ¶ 21. Defendants had no need to consult a trade secret "customer list" to allegedly "solicit" Haddock, and even assuming solicitation occurred, mere solicitation does not necessarily implicate trade secrets. Finally, even accepting for the sake of argument DCL's unsupported and nonsensical logical leap that Missimer and Carpenter used a customer list to solicit Haddock, Haddock cannot have misappropriated the same as the alleged target of the solicitation. Again, because Haddock is the customer, he has no interest or use for DCL's customer list so no conceivable basis to misappropriate it.

### b. Haddock has not misappropriated any trade secrets.

Even assuming any of the foregoing items constitute trade secrets under the DTSA or VUTSA, DCL must still establish Haddock has misappropriated or threatens to misappropriate such items. "A trade secrets theft case fails when a plaintiff cannot demonstrate a chronological, plausible explanation for its allegations . . . . Mere speculation . . . is not enough to sustain [a party's] misappropriation claim." *OSI Systems, Inc. v. KM-Logix, LLC*, No. 1-:20-cv-01577, 2021 WL 5987905, *3 (E.D. Va. Dec. 17, 2021) (internal citations omitted). *See also Monogram Snacks Martinsville, LLC v. Wilde Brands, Inc.*, No. 4:20-cv-00030, 2022 WL 188188, *10 (W.D. Va. Jan. 20, 2022) (same; misappropriation claims failed where plaintiff asked the court

"to make a number of inferential leaps that are unsupported by the record"). As the Supreme Court of Virginia has made clear, "[m]ere knowledge of trade secrets is insufficient to support an injunction under the [VUTSA]." *Motion Control Sys. v. East*, 262 Va. 33, 38, 546 S.E.2d 424, 426 (2001) (affirming denial of injunction where defendant "had not disclosed any trade secret or any other like fact."). *See also Milliken & Co. v. Evans*, No. 7:14-cv-00778, 2014 WL 8240512, *4 n.3 (D.S.C. Oct. 10, 2014) ("Plaintiff has produced no evidence that Defendant is using any information he obtained from Plaintiff."). Likewise, a defendant's possession of a trade secret without having used "improper means" to acquire it will not, by itself, constitute misappropriation; "[s]omething more is required: disclosure or use." *See, e.g., Business Objects*, 331 F. Supp. 2d at 417.[7]

Assuming DCL could plausibly demonstrate it has trade secrets at issue in this litigation (which as set forth above in Section A.1.a, Haddock denies), it has nevertheless failed to ascribe any conduct to Haddock supporting a finding he has or threatens to misappropriate its trade secrets. First, as noted above, Haddock did not receive any confidential settlement terms from the other Defendants; instead, it was *Pelkey* who disclosed to Haddock a settlement term DCL had apparently proposed. Moreover, DCL has not even alleged Haddock has used such information or disclosed it to any third party, as required to demonstrate misappropriation. *Business Objects*, 331 F. Supp. 2d at 417.

---

[7] Under the VUTSA, "theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" constitute "improper means." Va. Code. Ann. § 59.1-336. Under the DTSA, improper means is defined similarly: "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but not "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

Nor has DCL alleged Haddock has received, let alone used or disclosed, any (as-yet-unidentified) trade secret information contained on DCL's "company property," in the "Business Plan," or in its customer lists. *Cf.* Am. Cmp. ¶¶ 20, 159, 180; Haddock Aff. at ¶ 67-71.[8] Of course, such an assertion would not make any logical sense. Haddock does not work for a competitor that might have some use for DCL's business strategies or customer lists; instead, Haddock works for Lockheed Martin, one of DCL's clients. Neither Haddock nor Lockheed Martin have any use for DCL's competitive information.

## 2.    DCL Has Not Asserted a Claim for Breach of Contract against Haddock.

While DCL's Motion is somewhat vague and suggests it will prevail against Haddock as to its breach of contract claim (*see* Motion at Section II.A, entitled "Plaintiff's Breach of Contract Claim Is Likely To Succeed on the Merits"), that cause of action is not asserted against Haddock (*see* Count IV, Am. Cmp. at pp. 49-52).[9] This is no surprise, as Haddock is not a party to any contract at issue in this litigation. Obviously, under both Virginia and Delaware law, a breach of contract claim can only lie against a party to the contract. *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016) (breach of contract requires, among other elements, a legally enforceable contract between the parties); *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (same). As DCL does not assert Haddock was a party to any of the contracts at issue in this action (or, indeed, *any* contracts with DCL), it has not shown and cannot show a

---

[8] Tellingly, the Motion offers no details of any forensic examination of the property DCL concedes has been returned by Missimer weeks ago; surely, had DCL uncovered evidence following a forensic examination of any misappropriation (whether by Haddock or any other Defendant), DCL would have mentioned it in its Motion.

[9] Instead, the only claims against Haddock that are arguably contract-based are Count VI (aiding and abetting a breach of contract and/or fiduciary duty and duty of loyalty, *see id.* at pp. 56-57) and Count X (tortious interference with contractual relations, *see id.* at pp. 61-62).

likelihood of success on the merits of Count IV against Haddock.[10]  In fact, the Motion devotes

nearly eight pages to DCL's supposed likelihood of success on its breach of contract claim and

only mentions Haddock twice in that section: first through its unsupported, conclusory statement

it will succeed on its *aiding and abetting* claim against Haddock (Motion at p. 7), and second, in

describing an email sent by Defendant Frank to Haddock (*id*. at p. 13). In other words, DCL

describes no conduct on Haddock's behalf supporting its contract-based claims, other than his

mere *receipt of an email*. This is plainly insufficient to establish wrongful conduct.[11]

### 3.   DCL Is Unlikely to Succeed on Its Other Claims against Haddock.

DCL is not entitled to an injunction against Haddock on the basis of its other claims,

given its admission it is "seeking temporary relief ***only*** on its claims for breach of the restrictive

covenant agreements at issue and Defendants' misappropriation of trade secrets." Motion, p. 7

(emphasis added). And DCL cannot introduce new argument on reply for the first time. *See*

*Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 512 (E.D. Va. 2014) (declining

consideration of arguments raised for the first time in reply because opposing party did not have

"a full opportunity to respond to its arguments and notice that it should address the issue");

*FERC v. Powhatan Energy Fund, LLC*, No. 3:15CV452, 2021 WL 8820549, at *2 (E.D. Va.

---

[10] Section II.A's text clarifies DCL's position it "has a likelihood of success on the merits" of its claim for "aiding and abetting [breach of contract] by BSS and Haddock." Motion at p. 7. This barebones conclusion is addressed below in Section A.3.

[11] As it relates to DCL's interference claims, some affirmative act is required. *See, e.g., OpenRisk, LLC v. Microstrategy Servs. Corp.*, 876 F.3d 518, 529 (4th Cir. 2017) (Virginia law "requires evidence that a defendant actually has induced or caused a breach of contract, taking affirmative action that is the proximate cause of the breach") (internal citations and punctuation omitted); *Forsythe Global, LLC v. QStride, Inc.*, No. 1:16cv98(JCC/IDD), 2016 WL 3279499, *5 (E.D. Va. June 14, 2016) ("If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference") (internal citations omitted); *Byers v. Smith*, No. 99095, 1991 WL 834756 (Va. Cir. Ct. Jan. 31, 1991) (upholding dismissal of tortious interference claim, as such claims require tortfeasor to "engage in affirmative, intentional acts").

Sept. 10, 2021) ("Generally, the Court would disregard those new arguments raised for the first time in a reply brief and deny the request for a surreply").

Even if this Court were inclined to permit DCL some leeway and consider the breach-of-contract-adjacent claims against Haddock, those too fail. To begin with, DCL briefly mentions its claim against Haddock for aiding and abetting a breach of contract—but this is not a cognizable claim under either Virginia or Delaware law. *See, e.g., Power Home Solar*, 2021 WL 3856459 at \*8; *Ryan v. Buckeye Partners, L.P.*, No. 2021-0432-JRS, 2022 WL 389827 (Del. Ch. Feb. 9, 2022).

Moreover, DCL barely addresses in the Motion its aiding and abetting breach of fiduciary duty and duty of loyalty claim against Haddock—it is clear the basis of this claim is DCL's allegations that Missimer, Carpenter, and Frank misappropriated trade secrets. *See* Motion at p. 21.[12] For the reasons set forth above, DCL cannot demonstrate any trade secrets are at issue here, and any derivative liability for "aiding and abetting" is thus non-existent. *Wenzel v. Knight*, No. 3:14–cv–432, 2015 WL 222182, \*1 (E.D. Va. Jan. 14, 2015). Additionally, even if DCL could demonstrate the other Defendants had misappropriated trade secrets, it has failed to ascribe any conduct to Haddock supporting an aiding and abetting claim. More fundamentally, it is highly unlikely a cause of action for aiding and abetting a breach of fiduciary duty even exists. *See, e.g., Keil v. Seth Corp.*, 3:21cv153 (DJN), 2021 WL 5088242, \*14 (E.D. Va. Nov. 2, 2021) ("neither the common law nor any Virginia statute establishes a separate tort for aiding and abetting a breach of fiduciary duty. And, the Supreme Court of Virginia has expressly declined to recognize

---

[12] DCL cites no cases addressing an aiding and abetting breach of fiduciary duty claim.

the tort despite having the opportunity to do so. Accordingly, this Court will not assess Plaintiff's claims as if the cause of action exists.").[13]

DCL asserts a tortious interference claim against Haddock for alleged interference with its contractual relationship with its employees (*see* Am. Cmp., p. 61). DCL does not address this claim in the Motion, except to proclaim, without any factual or legal support, it is likely to prevail. Motion at p. 21. As such, Haddock need not address this claim. In any event, it is likely to fail as a matter of law, because one cannot interfere with an invalid agreement, and as set forth in the other Defendants' oppositions, DCL is unlikely to demonstrate the restrictive covenants agreements are enforceable. *See, e.g., Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (applying Virginia law; requiring the existence of a valid contract for tortious interference claim); *Elite Cleaning Co. v. Capel*, No. Civ.A. 690–N, 2006 WL 1565161, *10 (Del. Ch. June 2, 2006) (same under Delaware law). Additionally, DCL has not alleged that Haddock engaged in any "intentional interference" or that he "employed improper methods" to terminate DCL's contractual relationship with its employees or with Lockheed Martin, Haddock's *own* employer. *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149, 710 S.E.2d 716, 720 (2011). Similarly, DCL has not established Haddock's alleged interference—whatever contrived act that may be—was intended to harm DCL. *See Eurotech,*

---

[13] The *Keil* court acknowledged "Virginia allows for joint tortfeasor liability when a party knows of a breach of trust and participates in it for his own benefit." *Id.* However, to prevail on such a theory, a plaintiff must show a defendant "(1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it." *Id.* For the reasons set forth above, where the other Defendants did not breach any fiduciary duty, Haddock cannot be deemed to have had "actual knowledge" of a breach. *Id.* Likewise, participation under this theory requires a defendant "affirmatively act to aid the breach," *id.* at *15, which DCL has not established. Finally, DCL has also failed to allege (let alone establish a likelihood of success) Haddock benefitted from any alleged breach. As stated herein, Haddock's sole goal was, and remains, to ensure Lockheed Martin can complete the critical mission it has been entrusted with by the United States Government. He did not personally benefit from any alleged breach.

*Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 394 (E.D. Va. 2002) ("[T]ortious interference requires pleading and proof of a purpose to harm prospective economic opportunities . . . .").

Finally, DCL claims Haddock "conspired" with the co-Defendants (*see, e.g.* Motion at 2, 3) but fails to set forth any facts to support a civil conspiracy claim and further justify the injunctive relief sought. *See Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204–05 (E.D. Va. 2010) ("In Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff."). DCL has not shown Haddock (or the other Defendants) engaged in any unlawful conduct, nor are there any facts to suggest the co-Defendants entered into some sort of agreement. To be clear, Haddock is not a party to, and has never been a party to, any arrangement to divert work away from DCL. Haddock Aff. at ¶¶ 73-77.

### B.    DCL Will Not Suffer Irreparable Injury Absent Injunctive Relief.

Given DCL's utter failure in establishing a likelihood of success on the merits, the Court need go no further. However, the Motion also fails to establish DCL will suffer irreparable harm absent an injunction. DCL's claim of harm is speculative and unsupported by specific facts, which is insufficient to support the extraordinary relief it seeks in this case. *See, e.g., In re Microsoft Corporation Antitrust Litigation*, 333 F.3d 517 (4th Cir. 2003). As set forth above, there is no evidence Haddock possesses or has disclosed any confidential DCL information or solicited DCL's customers (or that he plans to do so), and he is not subject to any contract DCL claims has been or will be breached.

In addition to the foregoing, DCL's claims of irreparable harm are belied by its delay in both filing suit and seeking injunctive relief. DCL claims Missimer "held hostage" its property

21

containing trade secrets since January 27, 2023, but it failed to terminate his employment (or Carpenter's employment) until March 6 and did not even file suit until March 10. Motion at p. 3; Pelkey Aff. at ¶ 12. DCL amended its complaint to assert claims against Haddock on March 23 (Dkt. 11). DCL did not seek injunctive relief until April 6 (Dkt. 20), nearly 14 weeks after Missimer first allegedly "held [DCL's property] hostage" and two weeks after adding Haddock as a defendant. Under these circumstances, this Court should determine DCL has failed to demonstrate the requisite urgency of the relief sought. *See Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (establishing a plaintiff's delay in bringing a lawsuit or Motion for TRO and preliminary injunction "may indicate an absence of the kind of irreparable harm required to support a preliminary injunction."); *Ry. Lab. Executives' Ass'n v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397, 1405, n. 15 (E.D. Va. 1990) (denying the plaintiffs' TRO because of, *inter alia*, "plaintiffs' delay in bringing this action," where the "[p]laintiffs did not file the action until nearly two months after [the defendant] declined to engage in bargaining with them").

### C.    The Balance of Harms and Public Interest Favor Haddock.

In deciding whether to grant a preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Campbell*, 480 U.S. 531, 542 (1987). *See also Deltek, Inc. v. Iuvo Sys., Inc.*, No. 1:09cv330 (AJT/JFA), 2009 WL 1073196, *5 (E.D. Va. April 20, 2009) (to determine whether a hardship is disproportionate, the court must balance "the likelihood of irreparable harm to the plaintiff if denied and of harm to the defendant if granted," *quoting Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997)).

While in some cases, these factors are given short shrift, the balance of harms and public interest in this litigation are so critical—even assuming DCL had made the requisite showing of

likelihood of success on the merits and irreparable harm, which Haddock denies—these factors alone would justify denying the Motion. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008), is instructive here. In *Winter*, the NRDC had obtained an injunction requiring, among other things, the Navy to cease certain training exercises in the event marine mammals were present nearby. The Supreme Court reversed, noting "neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people." *Id.* at 24. Where the defendant had described the training exercises as "mission-critical," the Court acknowledged the conduct sought to be enjoined "is of the utmost importance to the . . . Nation." *Id.* at 25. Thus, the Court concluded "the balance of equities and consideration of the overall public interest in this case tip strongly in favor of the Navy," and the requested injunction would "jeopardize[] the safety of the fleet." *Id.* at 26. Tellingly, the Court did not "address the underlying merits of plaintiffs' claims," finding it unnecessary to do so in light of the Navy's strong showing on the balance of harms and public interest factors. *Id.* at 31. Indeed, the Court stated plainly it was an abuse of discretion for the district court to issue the injunction, "*even if plaintiffs are correct on the underlying merits* . . . . We find that [the Navy's] interests, and the documented risks to national security, *clearly outweigh the harm* on the other side of the balance. *Id.* at 31, n.5 (emphasis added); *see also In re Guantanamo Bay Detainee Litig.*, 570 F. Supp. 2d 13, 15 (D.D.C. 2008) (denying the petitioners' motion for a TRO and preliminary injunction in part because courts are reluctant to take action "when doing so intrudes upon the military and national security affairs"); *Hamilton v. Transportation Sec. Admin.*, 240 F. Supp. 3d 203, 206 (D.D.C. 2016) (denying the plaintiff's request to "enjoin[] an agency's decision to revoke [his] security clearance and reinstat[e]" him because "he might put the public safety and national security in jeopardy").

The same is true here. As set forth in the Haddock Aff., DCL's threats to, and subsequent termination of, Carpenter and Missimer have already resulted in a partial mission failure with national security implications and their work cannot be repurposed. An injunction would further jeopardize the Program as well as other missions critical to national security. Indeed, DCL seeks an order prohibiting the Defendants from, *inter alia*, providing services to or even *communicating* with customers with whom Carpenter, Missimer, and Frank worked (apparently at *any* time during their tenure with DCL), for two years. Presumably, this would include Lockheed Martin.[14] The proposed injunction would also arguably prohibit Haddock from working with DCL engineers who choose, through no fault of Haddock's, to leave DCL, for two years. The impact on the mission of such an injunction simply cannot be overstated, especially given the limited pool of competent engineers with appropriate security clearances. Simply put, it would be disastrous for our national security interests.

*****

In sum, DCL has failed to meet its burden on *any* of the factors required to justify the extraordinary relief sought. For these reasons, and those set forth in the other Defendants' opposition papers, which Haddock adopts and incorporates herein by reference, this Court should deny the Motion.

## ARGUMENT ON REQUEST FOR EXPEDITED DISCOVERY

DCL's request for expedited discovery should also be denied. "[T]here is a presumption against expedited discovery that must be rebutted by the moving party," who carries the "burden . . . to show that expedited discovery is appropriate." *Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*, No. 13-cv-4255-NLH-JS, 2013 WL 4080648, at *2 (D.N.J. Aug. 13,

---

[14] Of course, it is completely nonsensical to prohibit Haddock from communicating with or providing services to his own employer.

2013) (explaining expedited discovery must be construed narrowly; "that plaintiff is convinced its complaint is meritorious is not a good reason to order expedited discovery"). "[E]xpedited discovery is not the norm." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 241 (S.D. Tex. 2011).

    Under this Court's relevant standard for expedited discovery, DCL must satisfy a modified preliminary injunction test, which "looks to whether the Plaintiff has made a strong showing of merits and irreparable harm to Plaintiff in the absence of expedited discovery . . . ." *Kia Motors America, Inc. v. Greenbrier GMC, Inc.*, 2:20CV428 (RCY), 2020 WL 8970813, *2 (E.D. Va. Dec. 11, 2020) (internal citations and punctuation omitted). As set forth above, DCL has failed to establish either a likelihood of success on the merits or irreparable harm. Even if the "reasonableness" or "good cause" test used by some other courts were to apply,[15] DCL has failed to meet that standard as well.[16]

---

[15] The factors for consideration under the "reasonableness" analysis include "(1) whether a motion for preliminary injunction is pending, (2) the discovery request's breadth, (3) the purpose for requesting expedited discovery, (4) the burden on the defendant to comply with the requested discovery, and (5) how far in advance of the typical discovery process the request is made," and courts should "look to whether the moving party would suffer irreparable harm in the absence of early discovery." *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021) (denying motion for lack of good cause shown).

[16] Federal courts also have broad discretion to stay discovery pending resolution of a motion to dismiss. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Lismont v. Alexander Binzel Corp.*, No. 2:12CV592, 2014 WL 12527482, at *1 (E.D. Va. Jan. 14, 2014) (observing FRCP 26 "vests the court with discretion to stay discovery in advance of deciding a pending dispositive motion" so as to "ensure a "just, speedy, and inexpensive determination of every action" pursuant to FRCP 1); *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.,* No. CV 15-14188-MLW, 2016 WL 11004353, at *2 (D. Mass. June 15, 2016) (with a pending motion to dismiss, it made "little sense to force either side to go through expensive discovery where all, or part, of the case may be dismissed."). Carpenter and BSS have filed a motion to dismiss (ECF No. 36), and Haddock intends to do so as well.

## A.    DCL Fails to Present a Need for Expedited Discovery.

As described above, DCL's lawsuit and accompanying request for injunctive relief are meritless. As a result, DCL should not be permitted to use expedited discovery on the hope and prayer some evidence exists to support its baseless claims. *See, e.g.*, *Shahinian v. Kimberly–Clark Corporation*, No. CV 14–08390 DMG (SHx), 2014 WL 12614439, at *1 (C.D. Cal. Dec. 29, 2014) (denying motion for expedited discovery where plaintiff failed to make requisite showing that requested discovery was necessary to prevent irreparable harm and preserve the status quo); *Independence Blue Cross v. Health Systems Integration, Inc.,* CIV. A. 96–8216, 1997 WL 36961, at *2 (E.D. Pa. Jan. 29, 1997) (denying expedited discovery where topics into which plaintiff sought to explore were beyond what was needed in a motion for injunctive relief and appeared "to delve into the merits of the underlying dispute between the parties."); *Dimension Data N. Am. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (denying request for expedited discovery in part because "the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination" and because "plaintiff has not made an adequate showing it will be irreparably harmed" without expedited discovery).

## B.    DCL's Proposed Discovery Is Unreasonable.

Even assuming some expedited discovery is warranted—which Haddock disputes—the discovery proposed by DCL goes well beyond reason. To begin with, DCL proposes *each* party be permitted to conduct *eight* depositions (*i.e.* over 300 hours of expedited testimony), on three business days' notice. *See* Proposed TRO (Dkt. 21) at p. 3. In addition to the burden of this number of depositions, it is unreasonable to expect the Defendants to prepare their witnesses on such short notice, particularly given the importance of the work they do on a day-to-day basis on national security matters. DCL also proposes the Defendants be required to respond to document

26

requests, interrogatories, and requests for admission within five business days.[17] Again, this is simply unreasonable, even assuming DCL had demonstrated expedited discovery should proceed at all.

Compounding the foregoing, DCL does not provide its proposed discovery requests to permit the Court to evaluate the reasonableness thereof. Notably, DCL does not propose a limit on the number of document requests, nor does it describe (except in a cursory manner) the subject matter of such requests. As to interrogatories and requests for admission, while DCL proposes a limit of ten each for such discovery, it offers absolutely no limit to the subject thereof. As such, the Defendants are each faced with the prospect of responding to potentially hundreds of document requests, 10 interrogatories, and 10 requests to admit, on any manner of topic, in five business days, without a real opportunity to object. Even if this Court were inclined to permit some expedited discovery to proceed, DCL's request is patently unreasonable.

C.    **DCL's Request for Forensic Analysis and Other Detailed Information Should Be Denied.**

Finally, DCL's request for information regarding "the name and location of any electronic data host, and the location of computer equipment or electronic devices, related to Defendants' initiation, procurement, or transmission" of *all* emails or text messages, as well as detailed information regarding the make, model, operating system, capacity, and more, Dkt. 21 at p. 5, is absurd. So too is DCL's demand Defendants "turnover [sic] for forensic analysis" *all* such equipment, devices, or email accounts. *Id.*[18] Requiring the Defendants to turn over all of

---

[17] Remarkably, DCL suggests this discovery (both depositions and written discovery) "shall not be counted toward any limit on the number of depositions or written discovery requests" under the Federal Rules—indicating DCL intends to pursue full-blown discovery *on top of* the overbroad and unreasonably burdensome discovery sought in the Motion. *Id.* at p. 4. This is clearly an impermissible attempt to circumvent the limitations set forth in the Federal Rules.

[18] Haddock will, of course, preserve all relevant evidence, as he is already obligated to do.

their electronic devices and accounts, without any consideration of the highly confidential and, in some cases, top secret nature of the information contained thereon, is completely unwarranted. Such a request only highlights the haphazard manner in which DCL is pursuing this litigation.

## **CONCLUSION**

DCL's request for a temporary restraining order should be denied. DCL has no likelihood of success on the merits on its claims against Haddock, or indeed against any Defendant. Nor can DCL demonstrate it will suffer irreparable harm absent injunctive relief. To the contrary, Haddock, the other Defendants, and even the Government (and the nation) will suffer greatly if Defendants are enjoined. The public interest is paramount here, and this Court should not permit DCL to interfere with the Defendants' work on national security issues based on vague, spurious allegations and apparent grudges.

Nor should this Court permit DCL to embark on costly and time-consuming expedited discovery, especially given DCL's meritless claims. Certainly, the expedited discovery proposed by DCL is unreasonable in scope, volume, and proposed deadlines. So too is DCL's demand for forensic analysis of all of Defendants' electronic devices and accounts, especially given the classified information contained in those repositories.

For all the foregoing reasons, this Court should deny the Motion.

Dated: April 17, 2023                    Respectfully submitted,

   /s/Renée Appel
Renée Appel
Virginia State Bar No. 87721
Seyfarth Shaw LLP
975 F Street, NW
Washington, D.C. 20004
Phone: 202-828-5371
Fax: 202-641-9182
rappel@seyfarth.com

Dawn Mertineit (admitted *pro hac vice*)
Massachusetts Bar No. 669988
Seyfarth Shaw LLP
Two Seaport Lane, Ste. 1200
Boston, MA 02210
Phone: 617-946-4800
dmertineit@seyfarth.com

*Attorneys for Defendant Keith Haddock*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          :
DARK CIRCUIT LABS, INC.,                  :
                                          :    Case No. 1:23-cv-00326
                         Plaintiff,       :
                                          :
          v.                              :
                                          :
BLACK SAILS SECURITY LLC, JOHN            :
CARPENTER, ERIC MISSIMER, MICHAEL         :
FRANK, and KEITH HADDOCK,                 :
                                          :
                         Defendants.      :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 17, 2023, a true and correct copy of DEFENDANT

KEITH HADDOCK'S OPPOSITION TO PLAINTIFF'S MOTION FOR TRO, PRELIMINARY

INJUNCTION AND EXPEDITED DISCOVERY was filed with the Clerk of the Court using the

CM/ECF system, which will automatically send electronic notification of such filing to the

following attorneys of record:

> Steven J. Weber
> Gregory R. Begg
> Lauren Rayner Davis
> Lucas Taylor Daniels
> Peckar & Abramson, P.C.
> 2055 L Street, NW
> Suite 750
> Washington, DC 20036
>
> *Counsel for Plaintiff*

Broderick Coleman Dunn
Maria Estelle Stickrath
Cook Craig & Francuzenko PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, VA 22030

*Counsel for Defendant Eric Missimer*

Anne G. Bibeau
WOODS ROGERS VANDEVENTER BLACK PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510

Pietro Sanitate
WOODS ROGERS VANDEVENTER BLACK PLC
Riverfront Plaza, West Tower
901 East Byrd Street, Suite 1550
Richmond, VA 23219

*Counsel for Defendants Black Sails Security, LLC and John Carpenter*

Dated: April 17, 2023                    Respectfully submitted,

                                         _/s/ Renée Appel_____
                                         Renée Appel
                                         Virginia State Bar No. 87721
                                         Seyfarth Shaw LLP
                                         975 F Street, NW
                                         Washington, D.C.  20004
                                         Phone: 202-828-5380
                                         Fax: 202-641-9182
                                         rappel@seyfarth.com

                                         Dawn Mertineit (admitted *pro hac vice*)
                                         Massachusetts Bar No. 669988
                                         Seyfarth Shaw LLP
                                         Two Seaport Lane, Ste. 1200
                                         Boston, MA 02210
                                         Phone: 617-946-4800
                                         dmertineit@seyfarth.com

                                         *Attorneys for Defendant Keith Haddock*