UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIGINIA
Alexandria Division

**DARK CIRCUIT LABS, INC.,**

    Plaintiff,

v.                                              Case No.:      1:23-cv-00326

**BLACK SAILS SECURITY LLC,**
**JOHN CARPENTER,**
**ERIC MISSIMER,**
**MICHAEL FRANK,**
and **KEITH HADDOCK,**

    Defendants.

## DEFENDANTS JOHN CARPENTER AND BLACK SAILS SECURITY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

In its opposition (ECF No. 60) to defendants John Carpenter and Black Sails Security, LLC's ("BSS") Motion to Dismiss (ECF Nos. 35-36) ("Motion"), plaintiff Dark Circuit Labs, Inc. ("DCL") fails to overcome the central defects of its First Amended Complaint ("FAC"). DCL cannot avoid the arbitration provision in its own Confidentiality Non-Competition and Protectable Rights Agreement ("Agreement"). FAC, Ex. B ¶ 12. It is barred from bringing monetary claims against Carpenter and BSS in this Court. Even if the Court were inclined to entertain any portion of the FAC against Carpenter and BSS, DCL has failed to state any claims against them on which such relief can be granted. The Court should compel arbitration and dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

**A. It Is Entirely Equitable for this Court To Compel DCL To Abide by its Own Arbitration Provision.**

DCL makes the surprising argument that it would be inequitable for this Court to enforce the arbitration provision, notwithstanding that it is part and parcel of the same Confidentiality Non-

Competition and Protectable Rights Agreement ("Agreement") that DCL drafted, required Carpenter to execute, and seeks to enforce in this case. FAC, Ex. B ¶ 12. DCL cannot have its cake and eat it, too. As DCL has not shown any grounds for this Court to disregard the Federal Arbitration Act's requirement that courts "rigorously enforce arbitration agreements according to their terms," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted), the Court should compel DCL to abide by its arbitration clause and dismiss this case for lack of subject matter jurisdiction.

DCL does not dispute that the arbitration clause is enforceable, that DCL's monetary claims are within its scope, or that it applies with equal force to DCL's claims against BSS. Rather, DCL argues that it would be inequitable for the Court to enforce the arbitration clause because (1) that would bifurcate its monetary and injunctive relief claims and (2) Carpenter and DCL somehow waived arbitration by engaging in settlement discussions with DCL. These arguments are baseless.

This Court has denied DCL temporary and preliminary injunctive relief. ECF No. 52. DCL's claims for permanent injunctive relief cannot be adjudicated unless and until DCL prevails on its other claims, and then only if it can prove that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (describing the standard for permanent injunctive relief). There is no risk of inconsistent results if the Court compels arbitration because the arbitrator would decide DCL's claims for monetary relief only; if DCL prevails before the arbitrator, it could then seek permanent injunctive relief in court. Any inefficiencies in such proceedings are entirely of DCL's own making. It drafted the Agreement expressly mandating that monetary claims be arbitrated. If DCL is unhappy with its choice to litigate monetary claims and injunctive claims in different fora, it can

opt to seek injunctive relief in arbitration.[1] *See* American Arbitration Association, Employment Arbitration Rule 39(d) ("The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court … .");[2] *see, e.g., Weaver v. Advance Am.*, No. 4:07-3607-TLW-TER, 2008 WL 4198629, at *12 (D.S.C. Sept. 5, 2008) ("the arbitrator can award injunctive relief and any applicable statutory damages"). DCL should not be allowed to circumvent the Agreement because it now finds the arrangement it made inconvenient.

Carpenter and BSS did not waive their right to enforce the arbitration provision by engaging in pre-suit settlement negotiations with DCL. There is no authority supporting DCL's argument to the contrary. The case that DCL cites in this regard, *Maglula, LTD. v. Amazon.com, Inc.*, No. 1:19-cv-1570, 2020 WL 9536937 (E.D. Va. 2020), says nothing of the sort. There, the plaintiff filed claims in court that were outside the scope of the parties' arbitration agreement. *See id*. at *6-7. The parties' arbitration agreement applied to one set of services, whereas the defendant "steered" the plaintiff to another set of services governed by a separate agreement. *Id*. Here, there is no dispute that the Agreement is central to DCL's claims or that those claims are within the arbitration provision's scope. There is no allegation or evidence that Carpenter and BSS "steered" DCL away from the Agreement by engaging in pre-suit settlement negotiations. Carpenter and BSS never waived the right to compel arbitration; to the contrary, they moved to compel arbitration in their first filing in this case: this instant Motion. *See, e.g., Armstrong v. Michaels Store, Inc.*, 59

---

[1] The Agreement in this case requires the "need for a temporary restraining order or a preliminary injunction" to be resolved in court, but it does not contain any language restricting an arbitrator from awarding a permanent injunction. FAC, Ex. B ¶ 12. Thus, while DCL cannot be compelled to submit its permanent injunction relief claims to arbitration, it also cannot be precluded from doing so. *Id*. On the other hand, the Agreement is unequivocal that monetary claims cannot be heard in court. *Id.*

[2] The AAA Employment Arbitration Rules are available at https://adr.org/sites/default/files/EmploymentRules-Web.pdf

F.4th 1011, 1015 (9th Cir. 2023) (holding that employer did not waive its right to compel arbitration despite having removed case to federal court, participated in a case management conference, and served written discovery); *Lovelady v. Five Star Quality Care-VA, LLC*, No.: 4:18cv18, 2018 WL 3580768, at *12 (E.D. Va. July 25, 2018) (holding that defendant did not waive the right to arbitration by filing a demurrer and motion to dismiss and removing the case to federal court); *see generally Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (explaining that the common law concept of waiver as "the intentional relinquishment or abandonment of a known right" applies in the arbitration context and holding that "a court must hold a party to its arbitration contract just as the court would to any other kind."). It would be contrary to public policy to hold that a party sacrifices its contractual rights simply by trying to settle a dispute. Courts generally encourage settlement and do not penalize a party for trying.

The Court should compel arbitration and dismiss all claims against Carpenter and BSS based on the Agreement's arbitration provision. In the alternative, the Court should dismiss the monetary claims against Carpenter and BSS and stay the claim for permanent injunctive relief pending arbitration.

**B. In The Alternative, The Court Should Dismiss DCL's Claims Because It Has Failed To State a Claim Upon Which Relief Can Be Granted.**

If the Court compels arbitration pursuant to the Agreement, and either dismisses the case for lack of subject matter jurisdiction or stays the claim for permanent injunctive relief pending arbitration, then there is no need for the Court to address Carpenter and BSS's Rule 12(b)(6) motion. Otherwise, the Court should dismiss DCL's claims against Carpenter and BSS for failure to state a claim upon which relief can be granted.

**1. DCL Cannot Proceed on its Trade Secret Claims (Counts 1, 2, and 4).**

DCL cannot argue its way around the fatal flaws in its trade secrets claims: (a) it has not identified the trade secrets at issue and (b) it has not alleged that Carpenter or BSS misappropriated any trade secret. DCL tries to sidestep these issues by focusing on the fact that it has trade secrets. Carpenter and BSS do not dispute that DCL has trade secrets—it is hard to imagine a business that does not. DCL has failed, however, to plead a plausible claim that Carpenter or BSS misappropriated any of them. Its allegations that Carpenter downloaded a document while employed by DCL and solicited defendant Keith Haddock are insufficient.[3]

Regarding the document download, DCL alleges only that Carpenter, while employed as DCL's vice president, downloaded a document.[4] FAC ¶¶ 180-85. It does not suggest that he was not authorized to download this document, that he downloaded it to an unauthorized place, or that he emailed, printed, or otherwise exported this document from the DCL laptop he was authorized to use. There is no allegation that he shared it with anyone. The most DCL can muster is an allegation "on information and belief" that Carpenter downloaded the document "to utilize DCL's trade secrets for Defendants' competitive venture, BSS." *Id.* ¶ 185. This is exactly the type of vague, conclusory allegation that the U.S. Supreme Court ruled is insufficient to state a plausible

---

[3] In its FAC and Motion for Temporary Restraining Order ("TRO Mot.") (ECF No. 20), DCL also argued that Carpenter misappropriated trade secrets by telling Haddock and Missimer about his settlement discussions with DCL. FAC ¶¶ 130, 132, 154; TRO Mot. 27. DCL appears to have dropped this argument now, as it does not mention it in its Memorandum in Opposition to Carpenter and BSS's Motion. Regardless, settlement discussions are not trade secrets.

[4] In the FAC, DCL describes this document as "DCL's business development plans and strategies … which includes but is not limited to DCL's prospective and existing customer lists." FAC ¶ 180. The evidence submitted in the proceedings on DCL's TRO Motion reveal that this document was only a meeting agenda containing no such detail and that Carpenter downloaded it to a DCL-owned laptop, which he returned to DCL upon termination of his employment. Pl.'s TRO Mot., Ex. R; Carpenter and BSS's Opp'n to TRO Mot. (ECF No. 41), Carpenter's Decl. ¶¶ 37-73.

claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DCL argues that Carpenter and BSS misappropriated DCL's "client list" by soliciting Haddock, who is Lockheed Martin Corporation's ("LMCO") project manager on the task order on which DCL, and other contractors, work. Keith Haddock's identity and role with LMCO is not a trade secret, let alone DCL's trade secret. That information is publicly available to everyone, including DCL's direct competitors working on the same task order with LMCO. Carpenter's knowledge of Haddock does not come from any "client list," nor does DCL allege such.[5]

As DCL has failed to identify a trade secret at issue or to allege that Carpenter or BSS misappropriated a trade secret, it has not stated a claim for relief under either the Virginia Uniform Trade Secrets Act (Count 2) or the Defend Trade Secrets Act (Count 1). DCL attempts to salvage its common law trade secrets claim (Count 4)—which is not cognizable under Virginia law[6]—by making the circular argument that "[u]nless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss DCL's misappropriation under common law." Pl.'s Opp'n to Mot. to Dismiss 15. If the unidentified information at issue does not constitute a trade secret, however, there can be no misappropriation claim in relation to it under statutory or common law. As with the other trade secret claims, the FAC lacks sufficient facts to make a common law trade secrets claim, if such a claim were cognizable, plausible. Accordingly, all the trade secret claims (Counts 1, 2, and 4) should be dismissed.

---

[5] Carpenter knew Haddock and worked with him on this same government task order before joining DCL. Carpenter and BSS's Opp'n to TRO Mot. (ECF No. 41), Carpenter's Decl. ¶¶ 4-5.
[6] *See* Carpenter and BSS Mot. To Dismiss 15.

## 2. DCL Has Not Shown a Cognizable Claim under Virginia's Uniform Computer Information Transactions Act ("VUCITA") (Count 3).

DCL argues that because the Agreement contains a confidentiality provision it therefore constitutes an agreement "to create, modify, transfer, or license computer information." Pl.'s Opp'n to Mot. to Dismiss 12-13. This argument ignores the fact that the clear purpose of the VUCITA is to govern contracts for computer information transactions—there is no such contract at issue in this case. See Va. Code Title 59.1, Ch. 43, *passim*. DCL has not cited any cases suggesting that the VUCITA creates the cause of action that DCL attempts here. This claim is not actionable and should be dismissed.

## 3. DCL's Arguments in Support of Its Causes of Action for Breach of Contract (Count 5), Aiding and Abetting Breach of Contract (Count 7), and Tortious Interference with Contractual Relations (Count 10) are Unavailing.

In arguing that the Agreement's restrictive covenants are enforceable, DCL asks the Court to ignore those factors that cut against the reasonableness of the restrictions.[7] Restrictive covenants are restraints on trade and must be "narrowly drawn" and "strictly construed against the employer." *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 249 (2005); *Simmons v. Miller*, 261 Va. 561, 581 (2001) (*citing Grant v. Carotek, Inc.*, 737 F.2d 410, 412 (4th Cir.1984)). The overbreadth of the restrictive covenants at issue here cannot be overlooked. Carpenter and BSS, at page 20 of their opening brief, identified several ways in which these restrictive covenants are overly broad. DCL does not address *any* of them in its Opposition. Such overly broad restrictions are unenforceable as a matter of law.

---

[7] Plaintiff cites *Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488 (E.D. Va. 2021), which applies Texas law, as well Delaware cases. The Agreement, however, is governed by Virginia law. FAC, Ex. B ¶ 12.

DCL focuses instead on the apparent reasonableness of the time duration of the restrictive covenants; however, the temporal limitation is only one factor for the Court to consider in concert with "the geographic scope of the restraint, and the functional scope and extent of the activity being restricted." *Lasership Inc. v. Watson*, 79 Va. Cir. 205, 2009 WL 7388870, at *4 (Fairfax 2009). Those other factors all cut against the restrictive covenants here.

DCL argues that its restrictive covenants do not need a geographic scope because its operations "are applicable to the entirety of the United States and beyond." (Opp. at p. 21). DCL does not, however, identify any location outside of the Washington, D.C. metropolitan region where it operates. DCL attempts to rely on *Preferred Systems Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 394 (2012), for the proposition that a geographic scope is not required, but that case only highlights the fatal flaws of the restrictive covenants at issue here. In *Preferred Systems*, the Virginia Supreme Court found that "[t]he lack of a specific geographic limitation is not fatal to the covenant **because the noncompete clause is so narrowly drawn to this particular project and the handful of companies in direct competition with PSS**." *Preferred Sys. Sols., Inc.*, 284 Va. at 394 (emphasis added). By contrast, DCL's restrictive covenant is not restricted to a particular project or a small set of direct competitors; rather it is broad enough to bar Carpenter from any work even tangentially related to cybersecurity or other DCL business lines, and lines of business that DCL has only taken steps to enter, as well as business that is "of the same type or related to" such businesses, regardless of whether Carpenter ever worked in such business lines for DCL. *See* Carpenter and BSS Mot. To Dismiss 20. This restriction purports to apply worldwide and is not limited to a handful of direct competitors. For example, Carpenter would be prohibited from taking a software development job with video game developer in Nepal. Even if DCL could claim a global footprint, this Court has found that employers that operate on a worldwide scale

8

must tether their geographic restrictions to their covered areas. *Strategic Res., Inc. v. Nevin*, No. 1:05cv992, 2005 U.S. Dist. LEXIS 30985, at *8–11 (E.D. Va. Nov. 23, 2005) (striking down non-compete because it was not restricted to the employer's covered areas and therefore unreasonable even though employer operated globally).

As to the functional scope of the Agreement, DCL makes no effort to rebut Carpenter and BSS's arguments that the restrictive covenants bar Carpenter from a broad swath of work, without regard to whether he ever worked in a similar role or even in the same line of business for DCL. It appears DCL concedes this point.

DCL's attempt to base claims against Carpenter and BSS on DCL's agreements with Missimer and Frank, DCL's Opp'n 16-17, fails in two respects. First, "there is no cognizable action for aiding and abetting a breach of contract under Virginia law." *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-CV-00042, 2021 WL 3856459, at *8 (W.D. Va. Aug. 30, 2021). Moreover, aside from the conclusory allegations contained in paragraph 294 of the FAC, DCL does not allege any facts suggesting that Carpenter and BSS knew of the terms of Missimer's and Frank's agreements with DCL.

The Court should dismiss DCL's contract-related claims (Counts 5, 7, and 10).

### 4. DCL Has Failed to State a Claim that Carpenter or BSS Breached or Aided and Abetted Breaches of Fiduciary Duty and Duty of Loyalty (Counts 6 and 7).

DCL's claim for breach of fiduciary duty is inexorably linked with its defective claims of misappropriation of trade secrets. For the reasons discussed *supra*, DCL has not alleged sufficient facts to suggest that Carpenter or BSS misappropriated trade secrets. Thus, DCL's claim for breach of fiduciary duty, based upon this alleged misappropriation, also must fail.

Further, Virginia does not have a cause of action for aiding and abetting a fiduciary duty of loyalty. *See, e.g., Keil v. Seth Corp.*, No. 3:21cv153 (DJN), 2021 WL 5088242, *14 (E.D. Va.

9

Nov. 2, 2021) ("neither the common law nor any Virginia statute establishes a separate tort for aiding and abetting a breach of fiduciary duty. And, the Supreme Court of Virginia has expressly declined to recognize the tort despite having the opportunity to do so. Accordingly, this Court will not assess Plaintiff's claims as if the cause of action exists.").

The Court should dismiss Counts 6 and 7.

### 5. DCL Has Failed to State a Claim of Unfair Competition (Count 8).

DCL's arguments as to the viability of its claim for unfair competition miss the mark. DCL cites *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 404 (2012), and the Virginia Supreme Court's analysis of what constitutes the "improper methods or means" necessary to establish a claim for tortious interference with a business or contract expectancy. *Id*. DCL appears to argue that because the Court found that "unfair competition" could constitute an improper method or means by which to tortiously interfere with a business or contract expectancy, that somehow demonstrates that DCL has pled a cognizable claim for unfair competition against Carpenter and BSS. This reasoning does not follow. DCL does not address any of Carpenter's and BSS's arguments or cited authorities in their moving brief. Accordingly, DCL's unfair competition claim (Count 8) should be dismissed.

### 6. DCL Has Failed To State a Claim for Tortious Interference with a Prospective Economic Advantage and Contractual Relationship (Counts 9 and 10).

DCL does little to rebut Carpenter and BSS's arguments on these tortious interference claims and instead merely repeats the FAC's allegations in this regard. DCL cannot point to allegations in the FAC that would establish a plausible claim that Carpenter and BSS engaged in any alleged interference that was intended to harm DCL. *See Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 394 (E.D. Va. 2002) ("[T]ortious interference requires pleading and proof of a purpose to harm prospective economic opportunities . . . ."). In addition, a

claim for tortious interference with a contract requires a valid contractual relationship which, as explained *supra*, is lacking here. *Chaves v. Johnson*, 230 Va. 112, 120 (1985). These claims therefore should be dismissed.

### 7. DCL Has Failed To State a Claim for Civil Conspiracy (Count 11).

DCL's response to the Motion's argument on the conspiracy count is to label the FAC's allegations as "particular facts." DCL's Opp'n 29. The FAC, however, has no facts suggesting an agreement between any of the Defendants to accomplish a criminal or unlawful purpose or a lawful purpose by criminal and unlawful means. *Com. Bus. Sys., Inc. v. Bell South Servs.*, 249 Va. 39, 48 (1995). DCL can point to nothing aside from conclusory allegations and allegations pertaining to anodyne email and voicemail correspondence. DCL's Opp'n 29-30. There are no allegations meeting the essential elements of a conspiracy claim. Rather, DCL's claim is vague and conclusory, based on "information and belief." FAC ¶ 92. Even granting the most charitable interpretation of the FAC's allegations, they fall woefully short of the pleading standards applicable to claims for civil conspiracy. *Govt. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004).

The Court should dismiss the conspiracy claim (Count 11).

### C. Conclusion

The Court should compel arbitration and dismiss this case in its entirety with prejudice or, in the alternative, dismiss the monetary claims and stay the claim for permanent injunctive relief pending arbitration.

Filed: May 11, 2023

        Respectfully submitted,

        BLACK SAILS SECURITY, LLC and
        JOHN CARPENTER

        */s/Anne G. Bibeau*
        Anne G. Bibeau (VSB 41488)
        WOODS ROGERS VANDEVENTER BLACK PLC
        101 W. Main Street, Suite 500
        Norfolk, VA 23510
        Telephone: 757-446-8600
        Facsimile: 757-446-8670
        Anne.Bibeau@WRVBlaw.com

        Pietro Sanitate (VSB 89538)
        WOODS ROGERS VANDEVENTER BLACK PLC
        Riverfront Plaza, West Tower
        901 East Byrd Street, Suite 1550
        Richmond, VA 23219
        Telephone: 804-343-2059
        Facsimile: 804-343-5021
        Pietro.Sanitate@WRVBlaw.com