# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DARK CIRCUIT LABS, INC.,

                         Plaintiff,

          v.

BLACK SAILS SECURITY LLC, JOHN CARPENTER, ERIC MISSIMER, MICHAEL FRANK, and KEITH HADDOCK,

                     Defendants.

        Case No. 1:23-cv-00326

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT KEITH HADDOCK'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

95551853v.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  RELEVANT FACTUAL ALLEGATIONS ................................................. 1

    A.  The Parties' Relationship and the Program. ........................................ 1

    B.  DCL Employees Expressed Concerns about DCL and Their Continued Ability to Work on the Program. ........................................................ 2

    C.  DCL Terminated Carpenter's and Missimer's Employment. ............... 2

III.  LEGAL STANDARD ............................................................................... 2

IV.  ARGUMENT ........................................................................................... 3

    A.  DCL Fails to State a Claim under the DTSA and the VUTSA. ............. 3

        1.  DCL has not identified any trade secrets at issue. ..................... 5

        2.  DCL fails to allege Haddock misappropriated any trade secrets. .............. 9

    B.  DCL Fails to State a Claim for Common Law Misappropriation. ........ 10

    C.  DCL Fails  to State a Claim under the VUCITA. ............................... 12

    D.  DCL Fails  to State a Claim for Aiding and Abetting a Breach of Contract and/or Fiduciary Duty and Duty of Loyalty. ....................... 13

    E.  DCL Fails to State a Claim for Common Law Unfair Competition. ..... 14

    F.  DCL Fails to State a Claim for Tortious Interference with Prospective Economic Advantage. ........................................................ 16

        1.  DCL still does business with Lockheed Martin. ...................... 16

        2.  The Lockheed Martin relationship was never guaranteed to continue. ................................................................................ 18

        3.  Haddock cannot interfere with his employer's relationship. ..... 19

    G.  DCL Fails to State a Claim for Tortious Interference with Contractual Relations. ............................................................................ 19

    H.  DCL Fails to State a Claim for Civil Conspiracy. ............................. 22

I.      DCL's Claims for Injunctive Relief and Accounting Require Dismissal as
        Remedies, Not Causes of Action. ........................................................................ 23

V.      CONCLUSION.................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
  842 F. Supp. 2d 85 (D.D.C. 2012) ....................................................................16, 18

*All Bus. Sols., Inc. v. NationsLine, Inc.*,
  629 F. Supp. 2d 553 (W.D. Va. 2009) ........................................................................6

*Anderson v. Fluor Intercontinental, Inc.*,
  Case No. 1:19-cv-0289, 2021 WL 837335 (E.D. Va. Jan. 4, 2021) .........................11

*Apex Advanced Tech. LLC v. RMSI Private Ltd.*,
  No. 1:21-cv-1400, 2022 WL 4826335 (E.D. Va. Sept. 30, 2022) (internal
  citations and punctuation omitted; citing *OROS*, 2019 WL 2361047) .....................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................3

*AWP, Inc. v. Commonwealth Excavating, Inc.*,
  No. 5:13cv031, 2013 WL 3830500 (W.D. Va. July 24, 2013) ..............................11

*Babcock & Wilcox Co. v. Areva NP, Inc.*,
  292 Va. 165 (2016) ...................................................................................................10

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................3

*Bell v. WestRock CP, LLC*,
  Civil Action No. 3:17-cv-829, 2018 WL 3493077 (E.D. Va. July 20, 2018).........23

*Bowman v. State Bank of Keysville*,
  229 Va. 534 (1985) ...................................................................................................22

*Brockman v. Keystone Newport News, LLC*,
  No. 4:15-CV-74, 2018 WL 4956514 (E.D. Va. Oct. 12, 2018)................................6

*Chahmoune v. Clark*,
  No. 1:21-CV-42, 2022 WL 811297 (E.D. Va. Mar. 16, 2022)...............................22

*Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.*,
  249 F.3d 204 (4th Cir. 2001) ...................................................................................20

*Design & Prod., Inc. v. Am. Exhibitions, Inc.*,
  820 F. Supp. 2d 727 (E.D. Va. 2011) ......................................................................20

*Dionne v. Se. Foam Converting & Packaging, Inc.*,
    240 Va. 297 (Va. 2004)...................................................................................11

*Duggin v. Adams*,
    234 Va. 221 (1987) .......................................................................................15

*Dunlap v. Cottman Transmission Sys., LLC*,
    287 Va. 207 (2014) .......................................................................................22

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
    688 F. Supp. 2d 443 (E.D. Va. 2009) ..........................................................11

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) .........................................................................3

*Elite Cleaning Co. v. Capel*,
    No. Civ. A 690-N, 2006 WL 1565161 (Del. Ch. June 2, 2006) ...........19, 20

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*,
    189 F. Supp. 2d 385 (E.D. Va. 2002) ..........................................................22

*Granados v. Bank of America, N.A.*,
    No. 1-15-cv-752-GBL, 2015 WL 4994534 (E.D. Va. Aug. 19, 2015).........24

*Halifax Corp. v. Wachovia Bank*,
    268 Va. 641 (2004) ................................................................................13, 14

*Kancor Americas, Inc. v. ATC Ingredients, Inc.*,
    No. 15-CV00589-GBL-IDD, 2016 WL 740061 (E.D. Va. Feb. 25, 2016) ..............5

*Keil v. Seth Corp.*,
    3:21cv153, 2021 WL 5088242 (E.D. Va. Nov. 2, 2021)...........................13, 14

*Levine v. McLeskey*,
    881 F. Supp. 1030 (E.D. Va. 1995) ..............................................................18

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
    282 Va. 141, 710 S.E.2d 716 (2011)............................................................21

*Magnesium Mach., LLC v. Terves LLC*,
    No. 1:19 CV 2818, 2020 WL 3977689 (N.D. Ohio July 14, 2020), *aff'd*, No.
    20-3779, 2021 WL 5772533 (6th Cir. Dec. 6, 2021)................................7

*Magnesium Mach., LLC v. Terves LLC*,
    No. 1:19 CV 2818, 2020 WL 5407986 (N.D. Ohio Sept. 9, 2020) .............8

*ManTech Int'l Corp. v. Analex Corp.*,
    75 Va. Cir. 354 (2008) .................................................................................21

95551853v.1

*Masco Contractor Servs. East, Inc. v. Beals*,
  279 F. Supp. 2d 699 (E.D. Va. 2003) ...................................................16

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
  331 F. Supp. 2d 396 (E.D. Va. 2004) ..........................................5, 9, 10

*MicroStrategy Inc. v. Li*,
  268 Va. 249 (Va. 2004) ........................................................................11

*Milliken & Co. v. Evans*,
  No. 7:14-cv-00778, 2014 WL 8240512 (D.S.C. Oct. 10, 2014) ...............9

*Monogram Snacks Martinsville, LLC v. Wilde Brands, Inc.*,
  No. 4:20-cv-00030, 2022 WL 188188 (W.D. Va. Jan. 20, 2022).............9

*Motion Control Sys. v. East*,
  262 Va. 33, 546 S.E.2d 424 (2001) .......................................................9

*Nortec Comm'n, Inc. v. Lee-Lacer*,
  548 F. Supp. 2d 226 (E.D. Va. 2008) ..................................................20

*Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*,
  270 Va. 246 (2005) .........................................................................20, 21

*OROS, Inc. v. Dajani*,
  No. 1:19-cv-351, 2019 WL 2361047 (E.D. Va. June 4, 2019)................4

*OSI Systems, Inc. v. KM-Logix, LLC*,
  No. 1-:20-cv-01577, 2021 WL 5987905 (E.D. Va. Dec. 17, 2021) ........9

*Peace v. Conway*,
  246 Va. 278 (1993) ..............................................................................15

*Phoenix Renovation Corp. v. Rodriguez*,
  403 F. Supp. 2d 510 (E.D. Va. 2005) .............................................14, 15

*Poulin v. Gen. Dynamics Shared Res., Inc.*,
  No. 3:09-CV-00058, 2010 WL 1257751 (W.D. Va. Mar. 26, 2010) .......7

*Power Home Solar, LLC v. Sigora Solar, LLC*,
  No. 3:20-cv-00042, 2021 WL 3856459 (W.D. Va. Aug. 30, 2021)
  ...................................................................................6, 13, 15, 19

*Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*,
  284 Va. 382, 732 S.E.2d 676 (2012).................................................5, 15

*Rogers Elec. of Va., Ltd. v. Sims*,
  93 Va. Cir. 484 (2015) .........................................................................11

95551853v.1

*Ryan v. Buckeye Partners, L.P.*,
    No. 2021-0432-JRS, 2022 WL 389827 (Del. Ch. Feb. 9, 2022) ............................................13

*Salvin v. Am. Nat'l Prop. & Cas. Co.*,
    No. 2:06CV264, 2006 WL 8448734 (E.D. Va. July 25, 2006) ................................................19

*Sharma v. Washington Metro. Area Transit Auth.*,
    57 F. Supp. 3d 36 (D.D.C. 2014) ............................................................................................19

*Smith v. Interactive Fin. Mktg. Grp. LLC*,
    79 Va. Cir. 158 (2009) ............................................................................................................12

*Sobiech v. WhipperHill Consulting, LLC*,
    No. CIV.A. 15-667, 2015 WL 6736820 (W.D. Pa. Nov. 3, 2015) ...........................................7

*Square D Co. v. Breakers Unlimited, Inc.*,
    No. 1:07CV0806WTLJMS, 2008 WL 5111356 (S.D. Ind. Dec. 2, 2008) ..............................8

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    No. 3:16–cv–545, 2018 WL 1796293 (E.D. Va. April 16, 2018) ...........................................5

*Storey v. Patient First Corp.*,
    207 F. Supp. 2d 431 (E.D. Va. 2002) .....................................................................................19

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    No. 3:21-cv-252, 2022 WL 3005990 (E.D. Va. July 28, 2022).................................................5

*Taylor v. CNA Corp.*,
    782 F. Supp. 2d 182 (E.D. Va. 2010) .....................................................................................22

*TK Elevator Corp. v. Shropshire*,
    Civil Action No. 7:21-cv-00579, 2022 WL 564648 (W.D. Va. Feb. 23, 2022) .....................15

*Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*,
    859 F. Supp. 2d 771 (E.D. Va. 2012) .....................................................................................11

*Union Oil Co. v. Leavell*,
    220 F.3d 562 (7th Cir. 2000) ...................................................................................................8

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    No. 14-CV-04050-MEJ, 2017 WL 1881157 (N.D. Cal. May 9, 2017) ....................................7

*Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*,
    No. 170871, 2018 WL 3062247 (Va. June 21, 2018)..............................................................14

*UtiliSave, LLC v. Miele*,
    C.A. No. 10729-VCP, 2015 WL 5458960 (Del. Ch. Sept. 17, 2015).....................................20

95551853v.1

*Variable Annuity Life Ins. Co. v. Coreth*,
    535 F. Supp. 3d 488 (E.D. Va. 2021) ...................................................................10

*Wenzel v. Knight*,
    No. 3:14–cv–432, 2015 WL 222182 (E.D. Va. Jan. 14, 2015)..................................14

*White Hall Pharmacy LLC v. Doctor's Orders RX Inc.*,
    No. 4:19-CV-00366-KGB, 2019 WL 7838299 (E.D. Ark. June 10, 2019)......................17, 18

*Williams v. Reynolds*,
    No. 4:06cv00020, 2006 WL 3007347 (W.D. Va. Oct. 20, 2006)...........................24

**Statutes**

18 U.S.C. § 1832(a) .............................................................................................4

18 U.S.C. § 1832 *et seq.*.......................................................................................3

18 U.S.C. § 1836(b)(3)(D) ....................................................................................5

18 U.S.C. § 1839(3) .............................................................................................4

18 U.S.C. § 1839(5) .............................................................................................4

18 U.S.C. § 1839(6) ...........................................................................................10

Defend Trade Secrets Act ..............................................................................*passim*

VA. CODE ANN. § 59.1-336 ..............................................................................4, 9

VA. CODE ANN. § 59.1-338 *et seq.*.......................................................................3

VA. CODE ANN. § 59.1-338.1 ..............................................................................5

VA. CODE ANN. § 59.1-341(A) ..........................................................................10

VA. CODE ANN. § 59.1-501.3(a) ........................................................................12

VA. CODE ANN. § 59.1-501.3(d)(5) ...................................................................12

Virginia Code § 8.01–31 .....................................................................................24

Virginia Uniform Computer Information Transactions Act ........................................12, 13

Virginia Uniform Trade Secrets Act.................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)........................................................................................2, 3

95551853v.1

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 2, 3

Local Civ. R. 7.......................................................................................................................1

95551853v.1

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Keith Haddock ("Haddock") respectfully requests the Court dismiss the Amended Complaint (ECF No. 11) for failure to state a claim, and in accordance with Local Civ. R. 7, submits this memorandum in support thereof.

## I.    PRELIMINARY STATEMENT

Plaintiff Dark Circuit Labs, Inc. ("DCL") presents no viable basis to maintain a cause of action against Haddock, an individual and employee of DCL's client, Lockheed Martin Corporation ("Lockheed Martin"). The allegations against Haddock amount to pure speculation and conjecture, none of which is sufficient to state a claim for relief. Even accepting DCL's allegations as true, the core facts alleged demonstrate Haddock has not engaged in any wrongdoing to support claims for misappropriation of trade secrets, aiding and abetting co-Defendants' alleged breaches of contract and fiduciary duties, unfair competition, tortious interference, conspiracy, or accounting. And as for DCL's count for preliminary and permanent injunctive relief, most telling, the Court already denied Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. Because DCL has failed to allege any facts to substantiate its claims against Haddock, the Amended Complaint should be dismissed with prejudice as to him.

## II.    RELEVANT FACTUAL ALLEGATIONS[1]

### A.    The Parties' Relationship and the Program.

DCL is currently under a subcontract with Lockheed Martin to provide staffing needs for a highly confidential, discrete program related to national security (the "Program"), pursuant to the IDIQ Contract between Lockheed Martin and a government customer. Am. Cmp. ¶¶ 6, 33. The subcontract is under an extension period that does not expire until August 3, 2023. Am.

---

[1] For purposes of this motion only, DCL's factual allegations are accepted as true.

1

Cmp. ¶ 192. Carpenter, Missimer, and Frank were employed by DCL and each came to work on the Program as developers. Am. Cmp. ¶ 13. On behalf of Lockheed Martin, Haddock serves as the Program Manager on the Program under the IDIQ Contract. Am. Cmp. ¶ 33.

> **B.    DCL Employees Expressed Concerns about DCL and Their Continued Ability to Work on the Program.**

On January 25, 2023, Haddock spoke with Ronald Pelkey (DCL's President and COO) about Carpenter's new venture, Black Sales Security LLC ("BSS"). Am Comp. ¶¶ 67-68. On January 26, 2023, Haddock sent an email to Chase Bertke (DCL's Chief Executive Officer), Carpenter, and Missimer seeking to meet with them and come to an agreement on their plans to move forward, so Carpenter and Missimer could stay employed on the Program. Am. Cmp. ¶ 74.

In February 2023, Haddock, in his capacity as Project Manager, called Bertke to discuss the status of Missimer and Carpenter's employment situation. Am. Cmp. ¶¶ 129, 133. Separately, at the end of February, Haddock received an email from another DCL employee working on the Program, Defendant Michael Frank, who expressed his intention to leave DCL but sought to remain working on the Program. Am. Cmp. ¶ 141. DCL does not allege Haddock responded to the email. *See generally* Am. Cmp.

> **C.    DCL Terminated Carpenter's and Missimer's Employment.**

On March 6, 2023, DCL terminated both Carpenter and Missimer's employment without notice. Am. Cmp. ¶ 156. Frank resigned from DCL shortly thereafter on March 14, 2023. Am. Cmp. ¶ 157.

## III.    <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) seeks to test the legal sufficiency of the factual allegations made in the Amended Complaint. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." *Id.* As the Supreme Court held in *Bell Atlantic v. Twombly,* a pleading offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Nor does a complaint suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial "plausibility" when the plaintiff pleads factual content permitting the court to draw the reasonable inference the defendant is liable for the misconduct alleged. 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557.

DCL's claims against Haddock fail to meet federal pleadings standards and should be dismissed.

## IV.    **ARGUMENT**

DCL fails to state a claim against Haddock on any of its causes of action.

### A.    **DCL Fails to State a Claim under the DTSA and the VUTSA.**

To state a claim for misappropriation of trade secrets under either the Defend Trade Secrets Act (the "DTSA") or the Virginia Uniform Trade Secrets Act (the "VUTSA"), a plaintiff must allege: (1) the existence of a trade secret and (2) misappropriation. 18 U.S.C. § 1832 *et seq.*; VA. CODE ANN. § 59.1-338 *et seq*. DCL's Amended Complaint fails to satisfy either element.

Under the DTSA, a trade secret is defined as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

18 U.S.C. § 1839(3). "The definition under the VUTSA is similar." *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, *3 (E.D. Va. June 4, 2019); VA. CODE ANN. § 59.1-336.[2]

Under both statutes, misappropriation requires: (1) the trade secret was acquired by a person who knew or should have known the secret was acquired by improper means; and (2) the misappropriated secret was subsequently used or disclosed without express or implied consent by a person who: (a) obtained the trade secret by improper means; or (b) at the time of use, knew or had reason to know his knowledge of the trade secret was: (i) acquired improperly; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy; or (iii) acquired by a person who owed a duty to the plaintiff to maintain its secrecy. 18 U.S.C. § 1839(5); VA. CODE ANN. § 59.1-336; *see also Apex Advanced Tech. LLC v. RMSI Private Ltd.*, No. 1:21-cv-1400, 2022 WL 4826335 (E.D. Va. Sept. 30, 2022) ("The applicable standards under the DTSA and the VUTSA

---

[2] The DTSA also requires the trade secret be "related to a product or service used in or intended for use in interstate or foreign commerce." 18 U.S.C. § 1832(a).

are nearly identical.") (internal citations and punctuation omitted; citing *OROS*, 2019 WL 2361047, at *2).[3]

### 1.    DCL has not identified any trade secrets at issue.

DCL fails to establish the existence of trade secrets anywhere in its Amended Complaint. It is not enough for DCL to simply allege it has trade secrets at issue. "A plaintiff must identify, with particularity, each trade secret it claims was misappropriated. This must be done to allow the finder of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D. Va. 2004) ("*Business Objects*") (internal citations and punctuation omitted); *see also Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21-cv-252, 2022 WL 3005990, *14 (E.D. Va. July 28, 2022) (trade secrets must be identified with particularity); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16–cv–545, 2018 WL 1796293 (E.D. Va. April 16, 2018) (same); *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, No. 15-CV00589-GBL-IDD, 2016 WL 740061, at *14 (E.D. Va. Feb. 25, 2016) (same); *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 407, 732 S.E.2d 676, 689 (2012) (upholding dismissal where the defendant "simply references a laundry list of items that PSS considers to be 'Confidential Information.'").

Indeed, a "common thread" in cases finding the existence of a trade secret is the "complaints described, with requisite specificity, the information constituting trade secrets," as distinct from complaints in which the plaintiff's allegations constituted "naked assertions."

---

[3] Under both the DTSA and the VUTSA, a trade secret misappropriation claim brought in bad faith can subject the party asserting such claims to an order to pay the defending party's reasonable attorneys' fees. *See* 18 U.S.C. § 1836(b)(3)(D); VA. CODE ANN. § 59.1-338.1. Haddock intends to seek recovery of his fees given DCL's bad faith in asserting these claims against him.

*Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-00042, 2021 WL 3856459, *9-10 (W.D. Va. Aug. 30, 2021) (finding plaintiff had not sufficiently alleged trade secrets where it merely referred to "various materials" as being proprietary and/or confidential); *see also All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559 (W.D. Va. 2009) (granting the defendant's motion to dismiss where, even after two amended complaints, the plaintiff's claim "under the VUTSA is premised on [a] single, conclusory assertion" the defendant sought to "appropriate and disclose the names" of the plaintiff's customers, along with other trade secrets and confidential information). "[P]laintiffs seeking statutory protection must provide specific factual detail about the unique nature of these materials, including how they were developed and why the underlying . . . information is not otherwise readily ascertainable by their competitors in the relevant market." *Power Home Solar, LLC,* 2021 WL 3856459, at *10.

In the interest of brevity, Haddock will only address the alleged trade secret in which he is (supposedly) implicated: his purported knowledge of confidential settlement terms.[4] Am. Cmp. ¶¶ 130 – 132. DCL claims Defendants revealed its trade secrets "including disclosure of proposed settlement terms." Am. Cmp. ¶¶ 154, 223. But, DCL has not explained how proposed settlement terms can constitute trade secrets under the DTSA or the VUTSA, and Haddock is not aware of any authority holding as much. To the contrary, ample caselaw demonstrates settlement terms, even if meant to be confidential, do not typically rise to the level of trade secrets. *See, e.g., Brockman v. Keystone Newport News, LLC*, No. 4:15-CV-74, 2018 WL 4956514, at *6 (E.D.

---

[4] Haddock addressed the full scope of potential "trade secrets" referenced in DCL's Amended Complaint in his Opposition to DCL's Motion for Temporary Restraining Order and respectfully refers the Court to that briefing to the extent it considers any of the other alleged "trade secrets" to have been associated with Haddock.  *See* ECF 40. Even setting aside whether the other items referenced in the Amended Complaint are trade secrets (*e.g.*, the business plan), there are no allegations Haddock has obtained or used them. *Cf.* Am. Cmp. ¶¶ 20, 159, 180.

Va. Oct. 12, 2018) (finding a confidentiality clause was inappropriate in settlement agreements where no proprietary business information or trade secrets were mentioned); *see also Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-CV-00058, 2010 WL 1257751, at *3 (W.D. Va. Mar. 26, 2010) ("The parties have not argued that the Settlement Agreement involves trade secrets, informants, scandalous or libelous information, or other circumstances where the interest in secrecy may be compelling."); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2017 WL 1881157, at *2 (N.D. Cal. May 9, 2017) (finding "a review of the Settlement Agreement shows that not all of the information contained therein consists of trade secret, proprietary, or otherwise protectable material" and therefore the parties failed to show compelling reasons why the entire document should be sealed); *Sobiech v. WhipperHill Consulting, LLC*, No. CIV.A. 15-667, 2015 WL 6736820, at *2 (W.D. Pa. Nov. 3, 2015) ("After reviewing it, the Court finds that contrary to Defendants' assertion, this settlement agreement does not identify, provide any details, or even remotely implicate any trade secrets.").

*Magnesium Mach., LLC v. Terves LLC*, No. 1:19 CV 2818, 2020 WL 3977689 (N.D. Ohio July 14, 2020) ("*Magnesium Mach. I*"), aff'd, No. 20-3779, 2021 WL 5772533 (6th Cir. Dec. 6, 2021), is instructive. In *Magnesium Mach. I*, the plaintiff pursued a trade secrets misappropriation claim after the defendant came into possession of a settlement agreement via a subpoena request to a third-party, which the plaintiff alleged disclosed trade secret products and methods belonging to plaintiff. The court observed the allegedly protected content was not labeled as a "trade secret" nor marked "Attorney's Eyes Only." *Id.* at *2. After an evidentiary hearing, the court found there was no evidence indicating any impropriety in the access or sharing of the information. *Id.* at *4. The court later found because the purported trade secret boiled down to a three-word phrase in the settlement agreement, the plaintiff's claim of trade

secret disclosures was "at best intentionally misleading, and at worst, intentionally deceptive" and therefore, found the case had been brought in bad faith, thereby justifying defendant's recovery of attorneys' fees. *Magnesium Mach., LLC v. Terves LLC,* No. 1:19 CV 2818, 2020 WL 5407986, *2 (N.D. Ohio Sept. 9, 2020) ("*Magnesium Mach. II*").

Similarly, the court in *Square D Co. v. Breakers Unlimited, Inc*., No. 1:07CV0806WTLJMS, 2008 WL 5111356, at *1 (S.D. Ind. Dec. 2, 2008), considered the defendant's request to file a settlement agreement under seal. The court rejected the defendant's contention the settlement agreement was a trade secret because it derived economic value from the secrecy thereof. The court noted: "Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination)." *Id.* at *1 (quoting *Union Oil Co. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)).

Even assuming proposed settlement terms could meet the definition of a trade secret in certain circumstances, DCL's allegations are woefully insufficient to support such a finding here. Indeed, DCL has not described these terms, depriving Haddock of the ability to defend himself against DCL's claims. Additionally, even if DCL is referring to a specific proposed settlement term (as distinct from the simple fact the parties were discussing settlement), DCL has not even attempted to explain how any such unidentified term "derives independent economic value, actual or potential," by not being known, as required to be considered a trade secret under either the DTSA or the VUTSA. Moreover, for purposes of the DTSA, any connection between the amorphous proposed settlement term to "a product or service used in or intended for use in interstate or foreign commerce" is tenuous at best. As DCL was unable to identify even in the

vaguest terms trade secrets allegedly misappropriated, there is no trade secret underlying DCL's claim against Haddock, and Counts I and II should be dismissed.

### 2. DCL fails to allege Haddock misappropriated any trade secrets.

Even assuming proposed settlement terms constitute trade secrets under the DTSA or the VUTSA, DCL must still allege Haddock misappropriated or threatens to misappropriate such items. "A trade secrets theft case fails when a plaintiff cannot demonstrate a chronological, plausible explanation for its allegations . . . . Mere speculation . . . is not enough to sustain [a party's] misappropriation claim." *OSI Systems, Inc. v. KM-Logix, LLC*, No. 1-:20-cv-01577, 2021 WL 5987905, *3 (E.D. Va. Dec. 17, 2021) (internal citations omitted); *see also Monogram Snacks Martinsville, LLC v. Wilde Brands, Inc.*, No. 4:20-cv-00030, 2022 WL 188188, *10 (W.D. Va. Jan. 20, 2022) (same; misappropriation claims failed where plaintiff asked the court "to make a number of inferential leaps that are unsupported by the record"). As the Supreme Court of Virginia has made clear, "[m]ere knowledge of trade secrets is insufficient to support an injunction under the [VUTSA]." *Motion Control Sys. v. East*, 262 Va. 33, 38, 546 S.E.2d 424, 426 (2001) (affirming denial of injunction where defendant "had not disclosed any trade secret or any other like fact."); *see also Milliken & Co. v. Evans*, No. 7:14-cv-00778, 2014 WL 8240512, *4 n.3 (D.S.C. Oct. 10, 2014) ("Plaintiff has produced no evidence that Defendant is using any information he obtained from Plaintiff."). Likewise, a defendant's possession of a trade secret without having used "improper means" to acquire it will not, by itself, constitute misappropriation; "[s]omething more is required: disclosure or use." *See, e.g., Business Objects*, 331 F. Supp. 2d at 417.[5]

---

[5] Under the VUTSA, "theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" constitute "improper means." Va. Code. Ann. § 59.1-336. Under the DTSA, improper means is defined similarly: "theft, bribery,

Assuming DCL could plausibly demonstrate it has trade secrets at issue in this litigation (which as set forth above in Section IV.A.1, Haddock denies), it nevertheless fails to ascribe any conduct to Haddock supporting a finding he has or threatens to misappropriate its trade secrets. DCL has not alleged Haddock has used such information or disclosed it to any third party, as required to demonstrate misappropriation. *Business Objects*, 331 F. Supp. 2d at 417. Of course, any assertion Haddock used the alleged trade secrets would not make any logical sense. Haddock does not work for a competitor that might have some use for DCL's trade secrets; instead, Haddock works for Lockheed Martin, one of DCL's clients. Neither Haddock nor Lockheed Martin have any use for DCL's competitive information (including proposed settlement terms). Even with Haddock's purported knowledge of DCL's trade secrets, he has no ability to use that information to target DCL's clients, when he *is* the client. *See Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 514 (E.D. Va. 2021).

As DCL fails to allege either the existence of trade secrets or Haddock's misappropriation thereof, Counts I and II should be dismissed.

**B.    DCL Fails to State a Claim for Common Law Misappropriation.**

DCL also asserts a claim for misappropriation of trade secrets under "Virginia common law." *See* Am. Cmp., Count IV. However, there is no such cognizable claim, as the VUTSA expressly "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." VA. CODE ANN. § 59.1-341(A); *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 205 n. 51 (2016).[6]

---

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but not "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

[6] While DCL cites two cases in its Amended Complaint (*see* Am. Cmp. at ¶ 256), both cases were decided under the VUTSA and thus do not support a cause of action for common law

In response to BSS and Carpenter's motion to dismiss (the "BSS Motion to Dismiss," ECF Nos. 35-36), DCL concedes the VUTSA displaces conflicting civil remedies for trade secret misappropriation and seems to acknowledge it may be unable to demonstrate the existence of trade secrets. *See* ECF No. 60 at pp. 14-16. Presumably, DCL will make the same argument in opposition to the instant motion. As established in Section IV.A, Haddock agrees DCL cannot establish trade secrets are at issue here. But DCL obviously cannot assert a claim for "common law trade secrets misappropriation" without trade secrets. DCL's cited cases do not include "common law" misappropriation claims; rather, in each of those cases, the court considered *other* causes of action not solely reliant on misappropriation that might survive if a trade secret is not established.[7] For example, in *Rogers Elec. of Va., Ltd. v. Sims*, 93 Va. Cir. 484, *3 (2015), the defendants argued the VUTSA preempted plaintiff's conspiracy, trespass, and tortious interference claims. To survive a motion to dismiss, the court noted, the plaintiff "must be able to demonstrate that the distinct theories of relief sought are supported by facts *unrelated to the misappropriation of the trade secret.*" *Id.* (internal citations and punctuation omitted; emphasis added). Obviously, DCL cannot argue its "common law misappropriation of trade secrets" claim is unrelated to the misappropriation of a trade secret.

---

misappropriation. *See MicroStrategy Inc. v. Li*, 268 Va. 249, 255-56, 263-67 (Va. 2004); *Dionne v. Se. Foam Converting & Packaging, Inc.*, 240 Va. 297, 301-305 (Va. 2004).

[7] *See, e.g., E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443 (E.D. Va. 2009) (discussing whether the VUTSA preempts tortious interference and conspiracy claims); *Anderson v. Fluor Intercontinental, Inc.*, Case No. 1:19-cv-0289, 2021 WL 837335, *17 (E.D. Va. Jan. 4, 2021) (same for breach of duty of loyalty claim); *AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13cv031, 2013 WL 3830500, *6-7 (W.D. Va. July 24, 2013) (same for conspiracy, tortious interference, and unjust enrichment claims); *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771 (E.D. Va. 2012) (finding tortious interference claim was preempted by the VUTSA).

Either DCL has alleged the existence of trade secrets (in which case the VUTSA would preempt the common law claim) or it has not (in which case a common law misappropriation of trade secrets claim necessarily cannot survive). Either way, Count IV should be dismissed.

### C.    DCL Fails  to State a Claim under the VUCITA.

DCL's claim for violation of the Virginia Uniform Computer Information Transactions Act (the "VUCITA") is likewise meritless. The VUCITA "applies to computer information transactions." VA. CODE ANN. § 59.1-501.3(a); *see also Smith v. Interactive Fin. Mktg. Grp. LLC*, 79 Va. Cir. 158, *7 (2009) (noting the VUCITA "is designed to protect individuals involved in computer information transactions, such as agreements to create, transfer, modify, or lease computer information."). The Amended Complaint contains no allegations suggesting any such agreements are at issue here. Indeed, DCL does not allege Haddock is under any individual contract with DCL, let alone one concerning "computer information."

In opposition to the BSS Motion to Dismiss, DCL argues that because the VUCITA's definition of "informational rights" includes trade secrets, the Amended Complaint states a cause of action for violation of the statute. ECF No. 60 at p. 13. But, the VUCITA is not implicated in every contract tangentially involving (alleged) trade secrets. In fact, expressly excluded from the VUCITA's scope are, *inter alia*, employment contracts, even though such agreements typically address the access to and use of confidential and trade secret information, just as the restrictive covenants agreements between DCL and the co-Defendants forming the basis of this dispute do. *See* VA. CODE ANN. § 59.1-501.3(d)(5). Finally, even assuming the VUCITA applied here, given DCL's claim is premised *solely* on Defendants' alleged access to and/or disclosure of trade secrets (*see* Am. Cmp. ¶¶ 252-53), it would be preempted by the VUTSA. *See supra* Section IV.B.

As the Amended Complaint offers no connection between the facts alleged and a violation of the VUCITA, Count III should be dismissed.

### D.    DCL Fails  to State a Claim for Aiding and Abetting a Breach of Contract and/or Fiduciary Duty and Duty of Loyalty.

In Count VII, DCL alleges Haddock has aided and abetted the other Defendants' breaches of contract and/or breaches of their fiduciary duties and duties of loyalty. This claim should also be dismissed, as set forth below.

First, there is no cognizable claim for aiding and abetting a breach of contract under either Virginia *or* Delaware law. *See, e.g., Power Home Solar, LLC*, 2021 WL 3856459 at *8; *Ryan v. Buckeye Partners, L.P.*, No. 2021-0432-JRS, 2022 WL 389827 (Del. Ch. Feb. 9, 2022). This claim should therefore be voluntarily withdrawn or otherwise dismissed by the Court.

Second, as to DCL's claim against Haddock for aiding and abetting a breach of fiduciary duty or duty of loyalty, the Amended Complaint does not describe the acts allegedly taken by Haddock forming the basis of this cause of action. *See generally* Am. Cmp. However, giving the Amended Complaint a generous read, it appears DCL bases this claim on its allegations *Missimer, Carpenter, and Frank* misappropriated trade secrets and solicited Lockheed Martin. This theory of liability fails as to Haddock for multiple reasons.

First, like DCL's contract-based aiding and abetting claim, it is highly unlikely a cause of action for aiding and abetting a breach of fiduciary duty even exists under Virginia law. *See, e.g., Keil v. Seth Corp.*, 3:21cv153 (DJN), 2021 WL 5088242, *14 (E.D. Va. Nov. 2, 2021) ("neither the common law nor any Virginia statute establishes a separate tort for aiding and abetting a breach of fiduciary duty").[8]

---

[8] The cases DCL cites in its motion papers to date predate *Keil* and in fact were carefully considered in *Keil*. In *Halifax Corp. v. Wachovia Bank*, 268 Va. 641 (2004), the trial court held the plaintiff failed to state a claim, even "*assuming* such an action exists;" the Virginia Supreme

13

Moreover, even assuming such a claim exists, DCL has not alleged conduct by Haddock supporting liability. For the reasons set forth above, DCL cannot demonstrate any trade secrets are at issue here, and any derivative liability for "aiding and abetting" is therefore non-existent. *Wenzel v. Knight*, No. 3:14–cv–432, 2015 WL 222182, *1 (E.D. Va. Jan. 14, 2015). Additionally, even if DCL could demonstrate the other Defendants had misappropriated trade secrets, it has failed to ascribe any conduct to Haddock supporting an aiding and abetting claim.

Nor can DCL establish Haddock "aided and abetted" a breach of the other Defendants' duties of loyalty, where the alleged underlying breach appears to be limited to "soliciting" Haddock as Lockheed Martin's agent. Haddock cannot be liable for aiding and abetting the other Defendants' alleged solicitation of himself (or his employer). *See* Am. Cmp. ¶ 186.

Finally, DCL has not identified any damages it has suffered as a result of the alleged breach of fiduciary duty as DCL acknowledges it is still under contract with Lockheed Martin. *See, e.g.*, Am. Cmp. ¶¶ 33, 147.

### E.    DCL Fails to State a Claim for Common Law Unfair Competition.

"Virginia adheres to a narrow, sharply defined common law definition of unfair competition." *Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 517 (E.D. Va. 2005) (internal citations and punctuation omitted). Where a plaintiff fails to allege a defendant "attempt[ed] to deceive the buying public by holding itself out as" another, it has "failed to

---

Court made "the same *assumption* and reach[ed] the same conclusion" in affirming. *Id.* at 647, 659-60 (emphasis added). Similarly, in *Uplinger v. Alexandria Overlook Condo. Council of Co-Owners*, No. 170871, 2018 WL 3062247 (Va. June 21, 2018), the Virginia Supreme Court stated: "Assuming *without deciding* that we *would* recognize such a cause of action in Virginia . . . . Uplinger's claim here fails as a matter of law  . . . ." *Id.* at *4 (emphasis added). The *Keil* court cited both cases in explaining such a cause of action was not recognized by Virginia courts (in fact, the Virginia Supreme Court has expressly *declined* to recognize it). 2021 WL 5088242 at *12-13.

allege the *essential element* of a Virginia cause of action for unfair competition." *Id.* at 518

(emphasis added). *See also Power Home Solar*, 2021 WL 3856459 at *11 (the "essential element

of unfair competition is deception, by means of which goods of one dealer are palmed off as

those of another, whereby the buyer is deceived, and the seller receives the profit which, but for

such deception, he would not have received;" the threat of unfair competition must be directed

"not at the complaining party, but at its customers or other third parties.") (internal citations and

punctuation omitted); *TK Elevator Corp. v. Shropshire*, Civil Action No. 7:21-cv-00579, 2022

WL 564648 (W.D. Va. Feb. 23, 2022) (same). DCL has not alleged any conduct suggesting any

Defendant, let alone Haddock, attempted to deceive the buying public or held themselves out as

DCL.

In opposing the BSS Motion to Dismiss, DCL cites various cases in an attempt to expand

the scope of "unfair competition." *See* ECF No. 60 at pp. 26-27. But, these cases did not involve

claims for unfair competition. In both *Duggin v. Adams*, 234 Va. 221 (1987), and *Preferred Sys.

Sols., Inc.*, the court considered a claim for tortious interference, including the requirement the

plaintiff allege defendant used improper methods to interfere, and found "unfair competition"

may constitute improper methods for purposes of such a claim. *Duggin*, 234 Va. at 228;

*Preferred Sys. Sols., Inc.*, 284 Va. at 404.[9] These cases do not change the scope of an unfair

competition claim under Virginia law. DCL clearly has failed to state a claim for unfair

competition or any facts indicating Haddock could liable for such a claim, and Count VIII should

therefore be dismissed.

---

[9] *Peace v. Conway*, 246 Va. 278 (1993), similarly involved a tortious interference claim.
Notably, that case does not mention "unfair competition" at all.

**F.      DCL Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.**

The Amended Complaint is also vague as to the alleged "facts" supporting its tortious interference with prospective economic advantage claim. Count IX alleges DCL has business relations with "numerous third-party customers or clients" without identifying those relationships. Am. Comp. ¶ 313. This alone dooms DCL's claim, even ignoring its failure to describe conduct interfering with such relationships. *Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (requiring harm to a "*specific, existing* contract or business expectancy;" "Failure to allege any specific, existing economic interest is fatal to the claim.") (emphasis in original). In *Masco Contractor Servs. East*, the counterclaim defendant's motion to dismiss was granted because the counterclaim "makes absolutely no mention of any particular contract." *Id.* at 710. The same result will occur here, where DCL's Count IX fails to identify any specific contract allegedly interfered with.

In fact, the only customer mentioned *anywhere* in the Amended Complaint is Lockheed Martin.[10] Assuming for the sake of argument the Lockheed Martin relationship forms the basis of DCL's tortious interference claim in Count IX, it is meritless for the reasons set forth below.

**1.      DCL still does business with Lockheed Martin.**

As DCL concedes, it is still doing business with Lockheed Martin under the IDIQ contract. There has been no interference with that relationship, nor has DCL suffered damages, both of which are necessary elements of a tortious interference claim. *Masco Contractor Servs. East*, 279 F. Supp. 2d at 709; *see also 3M Co. v. Boulter,* 842 F. Supp. 2d 85, 116 (D.D.C. 2012) (finding "although [the plaintiff] has alleged a reduction in business with [its] government

---

[10] To the extent DCL's claim is based on alleged interference of *another* relationship, Haddock has no knowledge thereof, which is a necessary element of the claim. *Id.* at 709.

[customer]" and its customer "has not yet met its estimated minimum order quantity," the plaintiff "has given no specific examples of actual contracts" that were terminated as a result of defendant's conduct); *White Hall Pharmacy LLC v. Doctor's Orders RX Inc.*, No. 4:19-CV-00366-KGB, 2019 WL 7838299, at *12 (E.D. Ark. June 10, 2019) (where the plaintiff's relationship with its customer continued, "albeit on somewhat different terms than before," the plaintiff failed to prove a termination or breach of a business expectancy). More specifically, DCL employees are still working for Haddock under the IDIQ Contract with Lockheed Martin. Indeed, DCL only speculates it "anticipates" Lockheed Martin will not exercise its option to extend its contract with DCL, but Lockheed Martin has taken no such course of action (nor has DCL alleged any facts supporting a conclusion that if Lockheed Martin were to do so, it would constitute or be attributable to any wrongdoing by Haddock). Am. Cmp. ¶ 202.[11]

Still, DCL will likely point to alleged changes in funding and payment terms as "evidence" of interference. Am. Cmp. ¶¶ 193-203. Neither supports a finding of interference or harm. First, any contention that Lockheed Martin's most recent purchase order represents a downward departure from its prior dealings with DCL is speculative at best where DCL assumes Lockheed Martin—and not the end consumer—allocated the funding amount; indeed, DCL provides no facts suggesting the funding amount is determined by Lockheed Martin (rather than the Government customer), constitutes a breach of the contract, or that it was influenced by *any* Defendant's alleged interference. Additionally, the most recent purchase order cannot be treated as an injury where the specific amount of business is not guaranteed by the contract between Lockheed Martin and DCL. Am. Cmp. ¶¶ 196-202.

---

[11] DCL should voluntarily withdraw this cause of action because since filing its Amended Complaint, *DCL* has chosen to withdraw from consideration for Option Year 2.

Next, DCL admits the "NET 45" payments are "the maximum time allowable under the IDIQ Contract." Am. Cmp. ¶ 194. DCL cannot complain about payments made within the time allowed under the contract. *See, e.g., 3M Co.,* 842 F. Supp. 2d at 116 (noting a reduction in business is insufficient to state a claim); *White Hall Pharmacy*, 2019 WL 7838299 at *12 (holding tortious interference claim failed where the plaintiff's relationship with its customer continued).

Based on these factors alone, there is no basis for a tortious interference claim.

### 2.    The Lockheed Martin relationship was never guaranteed to continue.

Even if DCL's relationship with Lockheed Martin had terminated, its claim would still fail. Per the IDIQ contract, Lockheed Martin has *always* had the choice not to exercise its option to continue its business relationship with DCL, and DCL has not alleged that Lockheed Martin made any promises to DCL that its relationship would continue in the future. Am. Cmp. ¶ 190. Under Virginia law, "the expectancy of remaining in business is too general to support a tortious interference claim." *Levine v. McLeskey*, 881 F. Supp. 1030, 1057 (E.D. Va. 1995). Instead, DCL must establish a "particular expectancy" that is "reasonably certain will be realized." *Id.* DCL has not and cannot do so.

DCL will surely point to Haddock's prior praise of DCL to support its expectation Lockheed Martin would exercise its option to continue working with DCL. However, Haddock's (and his employer's) satisfaction with DCL in 2022 is irrelevant given DCL's intervening conduct—namely, DCL's treatment of its employees and the developers who are critical to the success of the mission, as well as its decision to sue Lockheed Martin's employee. Accordingly, even if there had been a disruption in DCL's relationship with Lockheed Martin to support a tortious interference claim (which DCL has not shown), the Amended Complaint itself provides a more likely cause of that disruption—DCL's own inappropriate conduct.

18

### 3.    Haddock cannot interfere with his employer's relationship.

Finally, even assuming DCL could allege a breach in its relationship with Lockheed Martin, that cannot be attributed to Haddock, Lockheed Martin's agent, Am. Cmp. ¶ 33. *See Sharma v. Washington Metro. Area Transit Auth.*, 57 F. Supp. 3d 36, 46 n.6 (D.D.C. 2014) (finding where contract was between defendant and plaintiff, defendant and its agents could not have tortiously interfered with the contract); *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) ("In the jurisprudence of tortious interference, it is axiomatic that a party cannot interfere with his own contract."); *Salvin v. Am. Nat'l Prop. & Cas. Co.*, No. 2:06CV264, 2006 WL 8448734, at *4 (E.D. Va. July 25, 2006) (holding the plaintiff's tortious interference claim fails because a party cannot interfere with its own contract).

For all these reasons, DCL's allegations do not support a claim for tortious interference with prospective economic advantage, thereby warranting its dismissal.

### G.    DCL Fails to State a Claim for Tortious Interference with Contractual Relations.

For many of the same reasons, DCL's tortious interference with contract claim also fails as a matter of law.[12] To begin with, DCL does not allege Haddock had knowledge of the other Defendants' restrictive covenants, which is alone fatal to its claim. *Power Home Solar, LLC*, 2021 WL 3856459 at *13; *Elite Cleaning Co. v. Capel*, No. Civ. A 690-N, 2006 WL 1565161, *10 (Del. Ch. June 2, 2006).

---

[12] Count X of the Amended Complaint suffers from many of the same infirmities as Count IX, as it vaguely alleges contractual relationships between DCL and "various other third-party customers or clients." *See* Section IV.F above. Rather than reiterate those infirmities, Haddock devotes this section to DCL's claim he interfered with DCL's relationships with Carpenter and Missimer. Am. Cmp. ¶ 327.

Additionally, a defendant cannot interfere with an invalid agreement. *See, e.g., Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.,* 249 F.3d 204, 210 (4th Cir. 2001) (applying Virginia law; requiring the existence of a valid contract for tortious interference claim); *Elite Cleaning,* 2006 WL 1565161 at *10 (same under Delaware law).[13] *See* Am. Cmp. ¶¶ 53-54, 63-64. Restrictive covenants are restraints on trade and must be "narrowly drawn" and "strictly construed against the employer." *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 249 (2005).[14] Each non-compete agreement must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the contractual parties. *Id.* at 249. A restrictive covenant is unenforceable if it is "functionally overbroad" such that the range of proscribed activities is "greater than necessary" to protect the employer's legitimate business interest. *Nortec Comm'n, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 231 (E.D. Va. 2008).

The restrictive covenants at issue are unenforceable for a number of reasons, including that the covenants are: (i) overly broad due to lack of geographic scope, (ii) overly broad in restricting former employees from working with DCL clients whom they may have never

[13] In its opposition to the BSS Motion to Dismiss, DCL argues that merely alleging the existence of contracts is sufficient to survive a motion to dismiss. *See* ECF No. 60 at pp. 17-18. This is not true. To survive a motion to dismiss, a plaintiff must allege the existence of an *enforceable* contract, as even DCL concedes. *See id.* at p. 17 (citing *Design & Prod., Inc. v. Am. Exhibitions, Inc.*, 820 F. Supp. 2d 727, 736 (E.D. Va. 2011)); *see also UtiliSave, LLC v. Miele*, C.A. No. 10729-VCP, 2015 WL 5458960, *5 (Del. Ch. Sept. 17, 2015). DCL attempts a sleight of hand by referencing the contracts' confidentiality provisions, while ignoring the non-competition clauses it relies on in the Amended Complaint, which are overbroad and unenforceable on their face (and which discovery will not change). And as noted *supra*, there is no evidence any Defendant misappropriated trade secrets in violation of their agreements.

[14] DCL cites *Omniplex* in its opposition to the BSS Motion to Dismiss, in support of its argument that the other Defendants' restrictive covenants are enforceable. ECF No. 60 at pp. 22-23. However, *Omniplex* upheld the trial court's ruling that the covenants were overbroad and thus unenforceable. 270 Va. 250.

worked with or in lines of business DCL may have entered but not yet pursued work, and (iii) ambiguous and overly broad in restricting employees from working in business lines "related to" DCL's current or planned business lines, of which the former employee may not even be fully aware. *See, e.g., ManTech Int'l Corp. v. Analex Corp.*, 75 Va. Cir. 354 (2008) (rejecting a noncompete prohibiting work in "predominantly similar" business as impermissibly broad and ambiguous).

DCL cannot bar its former employees, who are members of such a finite, talented niche, from employment entirely, which seems to be the very goal of this litigation. The Court must "strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment." *Omniplex*, 270 Va. at 249. Here, DCL's allegations fail to support a claim that Carpenter, Missimer, and Frank have used anything except their innate talents to continue to perform services for Lockheed Martin. Other than in vague, conclusory allegations, co-Defendants are not alleged to have used any trade secrets or other protected interests of DCL to secure gainful employment—which DCL desperately seeks to deprive them of.[15]

Additionally, DCL has not alleged Haddock engaged in any "intentional interference" or "employed improper methods" to terminate DCL's contractual relationship with its employees. *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149, 710 S.E.2d 716, 720 (2011). Similarly, DCL has not established Haddock's alleged interference—whatever it may be—was

---

[15] For the reasons set forth in Defendant Missimer's opposition to DCL's motion for a temporary restraining order, the restrictive covenants in his agreement should be governed by Virginia law, not Delaware law. *See* ECF No. 42 at pp. 6-10. However, even under Delaware law, the covenants in Missimer's agreement are unenforceable. *Id.* at pp. 11-12.

intended to harm DCL. *See Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F.

Supp. 2d 385, 394 (E.D. Va. 2002) ("[T]ortious interference requires pleading and proof of a

purpose to harm prospective economic opportunities . . . ."). These allegations simply do not

amount to a claim for tortious interference with contractual relations.

###### H.    DCL Fails to State a Claim for Civil Conspiracy.

DCL claims Haddock "conspired" with the co-Defendants but fails to set forth *any* facts

to support a civil conspiracy claim. *See Taylor v. CNA Corp.,* 782 F. Supp. 2d 182, 204–05 (E.D.

Va. 2010) ("In Virginia, the elements of a common law civil conspiracy claim are (i) an

agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish

a lawful purpose by unlawful means, which (iii) results in damage to plaintiff."); *Dunlap v.

Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014) ("actions for common law civil

conspiracy . . . lie only if a plaintiff sustains damages as a result of an act that is itself wrongful

or tortious"). Where a civil conspiracy "is asserted in mere conclusory language and the

argument in support of the theory is based on inferences that are not fairly and justly drawn from

the facts alleged," the claim should be dismissed. *Bowman v. State Bank of Keysville*, 229 Va.

534, 541 (1985); *see, e.g.*, Am. Cmp. ¶¶ 74 ("DCL interpreted…"), 142 (even though the email

cited speaks for itself, Plaintiff alleges the "email demonstrates…"); 152 ("On information and

belief…"), 154 (same).

DCL has not shown Haddock (or the other Defendants) engaged in any unlawful conduct.

Again, other than in conclusory, speculative allegations bereft of factual support, DCL does not

allege Haddock is a party to, or has ever been a party to, any arrangement to divert work away

from or otherwise harm DCL. Without an independent unlawful act, there can be no civil

conspiracy. *See Chahmoune v. Clark,* No. 1:21-CV-42 (RDA/TCB), 2022 WL 811297, at *7

(E.D. Va. Mar. 16, 2022) ("[A] standalone civil conspiracy claim is not actionable under

Virginia law; there must be an underlying unlawful act that independently imposes liability upon the primary wrongdoer."). In fact, as stated numerous times, DCL concedes it is still under contract with Lockheed Martin. *See, e.g.*, Am. Cmp. ¶¶ 33, 147. Furthermore, DCL fails to allege the existence of a new contract entered into between Lockheed Martin (or Haddock) and the co-Defendants to take away work from DCL. DCL's reliance on Frank's sole email *to* Haddock indicating Frank's intent to leave DCL is unavailing; DCL can draw no reasonable inference from the email that Haddock conspired with Frank or the other co-Defendants, especially where DCL has not alleged Haddock responded to the email. Am. Cmp. ¶ 141. Finally, to the extent DCL relies on Haddock's February 9, 2023, voicemail to DCL, this *direct* phone call from Haddock to DCL speaks for itself in demonstrating Haddock was transparent about the practical repercussions of DCL not working with Lockheed Martin to protect the mission and keep its employees on the project. *See* Am. Cmp. ¶ 133. DCL makes an unwarranted, illogical leap from the voicemail to a conclusion, unsupported by any facts, that Haddock conspired with the other Defendants; but DCL's rank suspicion cannot defeat a motion to dismiss. The foregoing instances are far from indicia of any secrecy or conspiracy engaged in by Haddock against DCL, and therefore this claim should be dismissed.

    **I.**    **DCL's Claims for Injunctive Relief and Accounting Require Dismissal as Remedies, Not Causes of Action.**

    To begin with, this Court has already denied DCL's request for a temporary restraining order *and* its request for a preliminary injunction. *See* ECF No. 52. Moreover, injunctive relief is a remedy, not an independent cause of action. *Bell v. WestRock CP, LLC,* Civil Action No. 3:17-cv-829, 2018 WL 3493077, at *1 (E.D. Va. July 20, 2018) (granting motion to dismiss count for injunctive relief).

Nor has DCL sufficiently alleged a cause of action for accounting against Haddock. In

*Granados v. Bank of America, N.A.*, No. 1-15-cv-752-GBL, 2015 WL 4994534 (E.D. Va. Aug.

19, 2015), the court discussed claims for accounting:

> Accounting in equity claims are usually asserted in cases involving joint ventures where one party seeks to hold the other liable in the event of joint business ventures gone sour. Virginia Code § 8.01–31 states that an accounting in equity may be filed against "any fiduciary or by one joint tenant, tenant in common, or coparcener for receiving more than come to his just share or proportion, or against the personal representative of any such party."
>
> Defendants are not fiduciaries, joint tenants, tenants in common, or coparceners in relations to Plaintiff. They do not personally represent any of Plaintiff's interests, nor do they share any level of fiduciary duty to Plaintiff. Plaintiff fails to establish the necessary elements of an action for accounting and thus the Court dismisses Count V.

*Id.* at *5-6 (internal citations omitted). *See also Williams v. Reynolds*, No. 4:06cv00020, 2006

WL 3007347, *5 (W.D. Va. Oct. 20, 2006) ("a cause of action for accounting . . . requires a

fiduciary or similar relationship between the parties").

DCL has failed to allege the existence of a fiduciary or similar relationship between it

and Haddock giving rise to DCL's demand for an accounting by Haddock. This claim should

therefore be dismissed.

## V.    <u>CONCLUSION</u>

For the reasons set forth in this Motion, because DCL has failed to allege a plausible

claim against Haddock, the Amended Complaint against him should be dismissed with prejudice.

Haddock further requests the Court set a briefing schedule to permit him to seek recovery of

attorneys' fees incurred based on DCL's assertion and maintenance of bad faith misappropriation

claims against Haddock.

Dated: June 5, 2023                  Respectfully submitted,

                                     */s/Renée Appel*
                                     Renée Appel
                                     Virginia State Bar No. 87721
                                     Seyfarth Shaw LLP
                                     975 F Street, NW
                                     Washington, D.C. 20004
                                     Phone: 202-828-5371
                                     Fax: 202-641-9182
                                     rappel@seyfarth.com

                                     Dawn Mertineit (admitted *pro hac vice*)
                                     Massachusetts Bar No. 669988
                                     Seyfarth Shaw LLP
                                     Two Seaport Lane, Ste. 1200
                                     Boston, MA 02210
                                     Phone: 617-946-4800
                                     dmertineit@seyfarth.com

                                     *Attorneys for Defendant Keith Haddock*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                    :
DARK CIRCUIT LABS, INC.,                            :
                                                    :    Case No. 1:23-cv-00326
                                    Plaintiff,      :
                                                    :
              v.                                    :
                                                    :
BLACK SAILS SECURITY LLC, JOHN                      :
CARPENTER, ERIC MISSIMER, MICHAEL                  :
FRANK, and KEITH HADDOCK,                           :
                                                    :
                                    Defendants.     :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 5, 2023, a true and correct copy of DEFENDANT

KEITH HADDOCK'S MEMORANDUM OF LAW was filed with the Clerk of the Court using

the CM/ECF system, which will automatically send electronic notification of such filing to the

following attorneys of record:

    Steven J. Weber
    Gregory R. Begg
    Lauren Rayner Davis
    Lucas Taylor Daniels
    Peckar & Abramson, P.C.
    2055 L Street, NW
    Suite 750
    Washington, DC 20036
    gbbegg@pecklaw.com
    ldavis@pecklaw.com
    ldaniels@pecklaw.com
    sweber@pecklaw.com

    *Counsel for Plaintiff*

Broderick Coleman Dunn
Maria Estelle Stickrath
Cook Craig & Francuzenko PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, VA 22030
bdunn@cookcraig.com
mstickrath@cookcraig.com

*Counsel for Defendant Eric Missimer*

Anne G. Bibeau
WOODS ROGERS VANDEVENTER BLACK PLC
101 W. Main Street, Suite 500
Norfolk, VA 23510
abibeau@wrvblaw.com

Pietro Sanitate
WOODS ROGERS VANDEVENTER BLACK PLC
Riverfront Plaza, West Twoer
901 East Byrd Street, Suite 1550
Richmond, VA 23219
psanitate@wrvblaw.com

*Counsel for Defendants Black Sails Security, LLC and John Carpenter*

Roya Vasseghi
VASSEGHI BUDD LAW
9663-A Main Street
Fairfax, VA 22031
roya@vasseghibuddlaw.com

*Counsel for Defendant Michael Frank*

Dated: June 5, 2023                    Respectfully submitted,

                                        /s/ Renée Appel
                                        Renée Appel
                                        Virginia State Bar No. 87721
                                        Seyfarth Shaw LLP
                                        975 F Street, NW
                                        Washington, D.C.  20004
                                        Phone: 202-828-5380
                                        Fax: 202-641-9182
                                        rappel@seyfarth.com

- 2 -

Dawn Mertineit (admitted *pro hac vice*)
Massachusetts Bar No. 669988
Seyfarth Shaw LLP
Two Seaport Lane, Ste. 1200
Boston, MA 02210
Phone: 617-946-4800
dmertineit@seyfarth.com

*Attorneys for Defendant Keith Haddock*

- 3 -

95551853v.1