**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| DARK CIRCUIT LABS, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No.: 1:23-cv-00326-LMB-LRV |
| : | |
| BLACK SAILS SECURITY LLC, et al. : | |
| : | |
| Defendants. : | |
| : | |
| ERIC MISSIMER, : | |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| DARK CIRCUIT LABS, INC., : | |
| : | |
| Defendant. : | |
| : | |

**DEFENDANT MICHAEL FRANK'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS**

Dated: June 5, 2023

Respectfully submitted,

/s/ Roya Vasseghi
Roya Vasseghi (VSB No. 85122)
Erin N. Schiffman *(admitted pro hac vice)*
VASSEGHI BUDD PLLC
9663-A Main Street
Fairfax, VA 22031
(703) 215-9358 Tel.
(703) 563-7401 Fax
roya@vasseghibuddlaw.com
erin@vasseghibuddlaw.com

*Attorneys for Defendant Michael Frank*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 1

LEGAL STANDARD ................................................................................................. 4

ARGUMENT .............................................................................................................. 5

I.    This Court Lacks Subject Matter Jurisdiction and Is An Improper Venue For the Majority of DCL's Claims Against Frank Because of the Agreement's Arbitration Clause ................................................................................................................ 4

A. DCL Is Required to Arbitrate Almost all of its Claims Against Frank ................ 4

B. Any Question Regarding Arbitrability Should Be Decided by An Arbitrator ....... 5

II.   Even If This Court Had Subject Matter Jurisdiction, DCL Has Failed to State Any Claim Against Frank Upon Which Relief Can Be Granted ......................................... 6

A. Counts 1 and 2, Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA"), Should be Dismissed Because DCL Fails to Identify Any Trade Secrets or that Frank Accessed or Misappropriated the Same ............................................................... 7

i.   *DCL fails to identify any trade secrets with particularity, instead merely making conclusory and generalized statements* …..................................... 8

ii.  *DCL's alleged "trade secrets" are publicly available and it once again makes conclusory allegations lacking in any support* ............................... 10

iii. *Virginia does not recognize the doctrine of inevitable disclosure and DCL cannot rely on a case decided under Delaware law for Frank's Agreement in Virginia* ................................................................................................ 11

B. Count 3, Violation of Virginia's Uniform Computer Information Transactions Act ("VUCITA") is Inapplicable to this Dispute ...................................................... 12

C.  Count 4, Common Law Misappropriation of Trade Secrets, Should Be Dismissed Because There is No Such Cause of Action Under Virginia Law ...................... 13

D.  Count 5, Breach of Contract, Should Be Dismissed Because DCL Has Not Pled a Valid Contract or Breach Thereof ...................................................................... 13

   i.  *The restrictive covenants in the Agreement are functionally overbroad and unenforceable under Virginia law* .......................................................... 14

   ii.  *The non-solicitation provisions of the Agreement are overbroad and unenforceable under Virginia law* .......................................................... 17

E.  Count 6, DCL Failed to Plead a Valid Claim for Breach of Fiduciary Duty and/or Breach of Duty of Loyalty ..................................................................................... 19

F.  Count 7 Should be Dismissed Because Virginia Does Not Recognize a Cause of Action for Aiding and Abetting Breach of Contract and/or Breach of Fiduciary Duty ......................................................................................................................... 20

G.  DCL Fails to Plead Facts to Support its Claims For Common Law Unfair Competition ......................................................................................................... 21

H.  Counts 9 and 10, Tortious Interference with Contractual Relations and Prospective Economic Advantage, Should Be Dismissed Because DCL Fails to Allege the Existence of a Valid Contract or Business Expectancy ......................................... 22

I.  DCL Fails to Plead Facts Sufficient to Support its Claim for Civil Conspiracy as to Defendant Frank ................................................................................................. 25

J.  DCL Has Not Pled Facts to Support its Claim for Permanent Injunction ...................................................................................................................... 26

K.  DCL's Accounting Claim Fails Because it Cannot Stand on its Own and DCL's Remaining Claims Will Not Survive Dismissal ................................................... 29

CONCLUSION ..........................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) ................................................. 3

*All. Tech. Grp., LLC v. Achieve 1, LLC,*
    Civ. Action No. 3:12CV701-HEH, 2013 U.S. Dist. LEXIS 4708 (E.D. Va. Jan. 11, 2013) .. 19

*Am. Bankers Ins. Grp., Inc. v. Long*,
    453 F.3d 623 (4th Cir. 2006) ................................................. 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................. 3, 6

*Atl. Diving Supply, Inc. v. Jay Basnight*,
    Case No. 2:22cv298, 2022 U.S. Dist. LEXIS 186020 (E.D. Va. Sept. 21, 2022) .................. 12

*Audio-Video Grp., LLC v. Green*,
    No. 1:14CV169 (JCC/TCB), 2014 U.S. Dist. LEXIS 25413 (E.D. Va. Feb. 26, 2014) .......... 7

*Babcock & Wilcox Co. v. Areva NP, Inc.*,
    292 Va. 165 (2016) ................................................. 13

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
    261 F.Supp.2d 483 (E.D. Va. 2003) ................................................. 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................. 3, 6

*Benjamin T. Crump Co. v. J.L. Lindsay, Inc.*,
    130 Va. 144 (1921) ................................................. 22

*Brainware, Inc. v. Mahan*,
    808 F.Supp.2d 820 (E.D. Va. 2011) ................................................. 23

*Cantol, Inc. v. McDaniel*,
    Case No. 2:06cv86, 2006 U.S. Dist. LEXIS 24648 (E.D. Va. Apr. 28, 2006) ...................... 14

*Chaves v. Johnson*,
    230 Va. 112 (1985) ................................................. 22

*Com. Bus. Sys., Inc. v. Bell S. Servs.*,
    249 Va. 39 (1995) ................................................. 25

*Com. Bus. Sys., Inc. v. Halifax Corp.,*
  253 Va. 292 (1997) ........................................................................................ 23

*Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.,*
  249 F.3d 204 (4th Cir. 2001) ......................................................................... 24

*Crews v. S & S Serv. Ctr. Inc.,*
  848 F.Supp.2d 595 (E.D. Va. 2012) ................................................................ 3

*Dionne v. Se. Foam Converting & Packaging, Inc.,*
  240 Va. 297 (1990) ................................................................................... 10, 13

*Duggin v. Adams,*
  234 Va. 221 (1987) .................................................................................. 23, 25

*Dunn, McCormack & MacPherson v. Connolly,*
  281 Va. 553 (2011) ........................................................................................ 23

*Ebay Inc. V. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ....................................................................................... 26

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft,*
  189 F.Supp.2d 385 (E.D. Va. 2002) ............................................................... 23

*Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C.,*
  260 Va. 35 (2000) .......................................................................................... 20

*Forbes v. SeaWorld Parks & Entm't,*
  No. 4:16cv172, 2017 U.S. Dist. LEXIS 86926 (E.D. Va. June 2, 2017) ............. 4, 5

*Fox v. Deese,*
  234 Va. 412 (1987) ........................................................................................ 24

*Gilbert v. Donahoe,*
  751 F.3d 303 (5th Cir. 2014) ........................................................................... 4

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991) ........................................................................................... 4

*Gov't Ins. Co. v. Google, Inc.,*
  330 F.Supp.2d 700 (E.D. Va. 2004) ............................................................... 25

*Gov't Tech. Servs., Inc. v. IntelliSys. Tech. Corp.,*
  51 Va. Cir. 55 (Fairfax 1999) ......................................................................... 12

*Grant v. Carotek, Inc.,*
    737 F.2d 410 (4th Cir. 1984) ................................................................ 14

*Home Paramount Pest Control Cos. v. Shaffer,*
    282 Va. 412 (2011) ................................................................ 28

*Knowesis, Inc. v. Herrera,*
    103 Va. Cir. 175 (Fairfax 2019) ................................................................ 8

*L-3 Commc'ns Corp. v. Serco, Inc.,*
    926 F.3d 85 (4th Cir. 2019) ................................................................ 23

*Lanmark Tech., Inc. v. Canales,*
    454 F.Supp.2d 524 (E.D. Va. 2006) ................................................................ 19

*Lasership Inc. v. Watson,*
    79 Va. Cir. 205 (Fairfax 2009) ................................................................ 18, 19

*Masco Contractor Servs. E., Inc. v. Beals,*
    279 F.Supp.2d 699 (E.D. Va. 2003) ................................................................ 23

*Mayor of Balt. v. Azar,*
    973 F.3d 258 (4th Cir. 2020) ................................................................ 27

*McClung v. Smith,*
    870 F.Supp. 1384 (E.D. Va. 1994) ................................................................ 29

*Mezu v. Morgan State Univ.,*
    367 F. App'x 385 (4th Cir. 2010) ................................................................ 3

*MicroStrategy Inc. v. Bus. Objects, S.A.,*
    331 F.Supp.2d 396 (E.D. Va. 2004) ................................................................ 7, 8, 9

*MicroStrategy Inc. v. Li,*
    268 Va. 249 (2004) ................................................................ 13

*Mission Residential, LLC v. Triple Net Props., LLC,*
    275 Va. 157 (2008) ................................................................ 5

*Mod. Env'ts, Inc. v. Stinnett,*
    263 Va. 491 (2002) ................................................................ 14, 16, 28

*Motion Control Sys., Inc. v. East,*
    262 Va. 33 (2001) ................................................................ 14

*Nortec Commc'ns, Inc. v. Lee-Llacer,*
    548 F.Supp.2d 226 (E.D. Va. 2008) ................................................................... 14

*Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.,*
    270 Va. 246 (2005) ................................................................... 14, 16, 28

*Phoenix Renovation Corp. v. Rodriguez,*
    403 F.Supp.2d 510 (E.D. Va. 2005) ................................................................... 21

*Power Distrib., Inc. v. Emergency Power Eng'g, Inc.,*
    569 F.Supp. 54 (E.D. Va. 1983) ................................................................... 28

*Reading & Language Learning Ctr. v. Sturgill,*
    94 Va. Cir. 94 (Fairfax 2016) ................................................................... 17

*Reladyne Reliability Servs. v. Bronder,*
    No. 2:20cv377, 2020 U.S. Dist. LEXIS 178856 (E.D. Va. Aug. 4, 2020) ............................ 16

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ................................................................... 6

*Richardson v. Paxton Co.,*
    203 Va. 790 (1962) ................................................................... 15

*Roto-Die Co. v. Lesser,*
    899 F.Supp. 1515 (W.D. Va. 1995) ................................................................... 14, 16, 28

*Schaecher v. Bouffault,*
    290 Va. 83 (2015) ................................................................... 22

*Smith v. Interactive Fin. Mktg. Grp., L.L.C.,*
    79 Va. Cir. 158 (Richmond City 2009) ................................................................... 12

*Smithfield Ham & Prods. Co., Inc. v. Portion Pac, Inc.,*
    905 F.Supp. 346 (E.D. Va. 1995) ................................................................... 26

*Stone Castle Fin., Inc. v. Friedman, Billins, Ramsey & Co.,*
    191 F.Supp.2d 652 (E.D. Va. 2002) ................................................................... 19

*Strategic Enter. Sols., Inc. v. Ikuma,*
    77 Va. Cir. 179 (Fairfax 2008) ................................................................... 16, 18

*Strategic Res., Inc. v. Nevin,*
    No. 1:05cv992, 2005 U.S. Dist. LEXIS 30985 (E.D. Va. Nov. 23, 2005) ....................... 15, 16

*Sunsport Inc. v. Barclay Leisure Ltd.*,
    984 F.Supp. 418 (E.D. Va. 1997) ...................................................................... 22

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    No. 3:21cv252, 2022 U.S. Dist. LEXIS 134694 (E.D. Va. July 28, 2022) ............................... 8

*Taylor v. CAN Corp.*,
    782 F.Supp.2d 182 (E.D. Va. 2010) .................................................................... 25

*TradeStaff & Co. v. Nogiec*,
    77 Va. Cir. 77 (Chesapeake 2008) ..................................................................... 25

*Trandes Corp. v. Guy F. Atkinson Co.*,
    996 F.2d 655 (4th Cir. 1993) ........................................................................ 8, 9

*Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale LTD*,
    859 F.Supp.2d 771 (E.D. Va. 2012) ..................................................................... 7

*Tysinger Motor Co., Inc. v. Chrysler Grp., LLC*,
    Civ. Action No. 3:10CV554, 2011 U.S. Dist. LEXIS 1694 (E.D. Va. Jan. 7, 2011) ...................... 3

*Update, Inc. v. Samilow*,
    311 F.Supp.3d 784 (E.D. Va. 2018) .................................................................... 15

*Vienna Metro LLC v. Pulte Home Corp.*,
    786 F.Supp.2d 1076 (E.D. Va. 2011) ................................................................... 13

*Virginia v. United States*,
    926 F.Supp. 537 (E.D. Va. 1995) ....................................................................... 3

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ................................................................................... 5

*Walsh v. Bank of Am., NA*,
    No. 1:11-cv-1168 (AJT/JFA), 2012 U.S. Dist. LEXIS 190987 (E.D. Va. Feb. 15, 2012) ..... 29

*Williams v. Dominion Tech. Partners, LLC*,
    265 Va. 280 (2003) ................................................................................... 19

*Williams v. Reynolds*,
    No. 4:06CV00020, 2006 U.S. Dist. LEXIS 79178 (W.D. Va. Oct. 31, 2006) ....................... 23

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................... 28

**Statutes**

9 U.S.C. §§ 1, *et seq.* ................................................................................................4

18 U.S.C. § 1839(3) .................................................................................................. 11

Va. Code § 8.01-31 .................................................................................................. 29

Va. Code § 8.01-581.01 ............................................................................................. 5

Va. Code § 58.1-341 ................................................................................................ 13

Va. Code § 59.1-336 ................................................................................................ 11

Va. Code § 59.1-501.3(d)(5) ....................................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................................3

Fed. R. Civ. P. 12(b)(3) .............................................................................................3

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3

**Other Authorities**

AAA Employment Arbitration Rule 6(a), *available at* https://adr.org/sites/default/files/EmploymentRules-Web.pdf ................................... 5

*FOIA Update: Disclosure of Prices*, U.S. Dep't of Just., https://www.justice.gov/oip/blog/foia-update-disclosure-prices (last modified Aug. 13, 2014) .......................................... 11

*Our Capabilities: providing tools for the United States' cyber arsenal*, Dark Circuit Labs, https://darkcircuitlabs.com/capabilities/ (last visited Apr. 15, 2023) .................................. 11, 15

## SUMMARY OF ARGUMENT

This Court should dismiss DCL's First Amended Verified Complaint ("FAVC") against Defendant Michael Frank because DCL's claims are subject to a valid arbitration agreement and therefore this Court lacks subject matter jurisdiction over Counts 1 through 11 and 13 of the FAVC. FAVC, Ex. C ¶ 12 (ECF No. 11-3). Even without a valid agreement to arbitrate, DCL failed to properly state a claim upon which relief can be granted with respect to each and every cause of action against Frank and the entire FAVC as to Frank must be dismissed, with prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND

On March 10, 2023, DCL filed its first Complaint (ECF No. 1), to which Frank was not a defendant. On March 23rd, DCL filed its first Amended Complaint (ECF No. 3). That same day, DCL filed its FAVC (ECF No. 11), the operative complaint in this matter. On April 6th, DCL filed a Motion for Order to Show Cause for Temporary Restraining Order ("TRO"), Preliminary Injunction, and Expedited Discovery ("Plaintiff's Motion for TRO") (ECF No. 21) and memorandum of law in support (ECF No. 20), which was denied on April 21st (ECF No. 52).

DCL asserts that it provides cyber security personnel, tools, and expertise in support of United States' National security missions. FAVC ¶ 6, ECF No. 11. DCL maintains that its current government contracts include "providing software development services in support of National security, intelligence, and law enforcement missions" and further that "any enterprises that provide substantially similar services under government contracts are considered competitors of DCL[,]" *even if DCL does not provide the same product or service. Id*. at ¶ 8.

Defendant Frank was employed by DCL from August 7, 2022 through March 14, 2023. FAVC ¶ 29. As part of his employment with DCL, Frank was required to execute a Confidentiality Non-Competition and Protectable Rights Agreement (the "Agreement"), which was executed on

1

July 30, 2022. FAVC ¶ 61; *see* Ex. C. Frank was employed with DCL for approximately 7 months prior to his resignation on March 14, 2023. FAVC ¶ 29.

DCL alleges that Defendants Missimer and Carpenter began conspiring to compete with DCL at some point prior to leaving DCL. FAVC ¶¶ 70–74. DCL further alleges that it took actions to address this information, including sending cease and desist letters to Missimer and Carpenter and conducting an internal investigation. *Id.* at ¶¶ 75–78. Ronald Pelkey informed Frank of the internal investigation and Frank fully cooperated with DCL's requests for information. *Id.* at ¶¶ 79–81. DCL further alleges that during the investigation, Missimer and Carpenter admitted to forming a new entity, Defendant Black Sails Security LLC ("BSS") and that they intended to terminate their employment with DCL and provide cyber security products and services to the United States Federal government through BSS. FAVC ¶¶ 82–83. However, the FAVC does not contain any allegations that Frank was involved in forming BSS, or that Frank was ever employed by BSS. *Id.* at ¶¶ 84–88. Eventually, DCL alleges that its owners engaged in settlement discussions with Defendants Missimer and Carpenter regarding the dispute. FAVC ¶ 17. DCL does not allege that Frank was involved in these discussions or BSS or even had knowledge of the settlement discussions or terms apart from what Pelkey informed him of. *Id*. at ¶¶ 127–31.

On February 9, 2023, Defendant Haddock informed Chase Bertke, one of DCL's founders, that Lockheed Martin Corp. ("LMCO") would be terminating its contract with DCL and intended to "keep all the developers," which included Frank, as it did with Frank's former employer. FAVC ¶ 133. DCL conducted a search of Frank's DCL email and produced a single email from Frank to Haddock dated February 23, 2023, which it relies on to prove each and every count against Frank. *Id.* at ¶ 141. This email, dated weeks after Haddock notified DCL of LMCO's intent to terminate

its contract with DCL and work with another contractor, makes no mention of Frank's alleged intention to take any DCL trade secrets or other confidential and proprietary information. *Id*.

## **LEGAL STANDARD**

Rule 12(b)(1) permits a court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of proving subject matter jurisdiction. *Crews v. S & S Serv. Ctr. Inc.*, 848 F.Supp.2d 595, 597 (E.D. Va. 2012). A defendant may contest subject matter jurisdiction by arguing that, even if all facts alleged in the complaint are presumed true, "the complaint fails to allege facts upon which subject matter jurisdiction may be based." *Id.* (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Virginia v. United States*, 926 F.Supp. 537, 540 (E.D. Va. 1995)). Likewise, Rule 12(b)(3) permits a court to dismiss a claim for improper venue. Fed. R. Civ. P. 12(b)(3).

Rule 12(b)(6) provides for dismissal of a cause of action based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388 (4th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The plaintiff must allege facts that, "when accepted as true," demonstrate its "plausibility of entitlement to relief." *Id.* (cleaned up). A complaint "must contain more than labels and conclusions"—"a formulaic recitation of the elements of a cause of action will not do." *Tysinger Motor Co., Inc. v. Chrysler Grp., LLC*, Civ. Action No. 3:10CV554, 2011 U.S. Dist. LEXIS 1694, at *6–7 (E.D. Va. Jan. 7, 2011) (cleaned up). DCL's bare bones allegations against Frank are insufficient and the FAVC should be dismissed, with prejudice.

3

## ARGUMENT

I.    **This Court Lacks Subject Matter Jurisdiction and Is An Improper Venue For the Majority of DCL's Claims Against Frank Because of the Agreement's Arbitration Clause[1]**

DCL's claims against Frank for both monetary damages and injunctive relief should be dismissed for lack of subject matter jurisdiction and improper venue because DCL's Agreement provides for arbitration. *See* Ex. C ¶ 12. "[I]t is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (cleaned up). DCL cannot rely on its Agreement in its attempt to bring its claims, and then repudiate it when it prevents it from litigating in Court.

### A.  DCL Is Required to Arbitrate Almost All of its Claims Against Frank.

A district court lacks subject matter jurisdiction over a case and should dismiss it for the same and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(3) when the parties' dispute is subject to binding arbitration. *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014), *cert. denied*, 574 U.S. 873 (2014); *Forbes v. SeaWorld Parks & Entm't*, No. 4:16cv172, 2017 U.S. Dist. LEXIS 86926, at *9–11 (E.D. Va. June 2, 2017). The law and public policy in favor of enforcing arbitration agreements is firmly established. The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), reflects a "liberal federal policy favoring arbitration agreements" as a means of settling disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *see Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) ("The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

---

[1] Of import, while DCL brings a claim for permanent injunction that requires adjudication in court, there is no risk of inconsistent results if this Court compels arbitration because the arbitrator would only decide DCL's claims for monetary relief. If DCL prevails before the arbitrator on those claims, it could then seek permanent injunctive relief in court.

for the revocation of any contract.'"). "[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989); *Forbes*, 2017 U.S. Dist. LEXIS 86926, at *10. The Virginia Uniform Arbitration Act, Va. Code §§ 8.01-581, *et seq.*, is in accord with the FAA. Va. Code § 8.01-581.01 ("On application of a party showing an agreement [to arbitrate,] . . . the court shall order the parties to proceed with arbitration . . . ."); *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161 (2008). DCL agreed that it would not bring claims for monetary damages in court: "***Neither Employee nor the Company will be able to sue in court in connection with monetary claims related to this agreement.***" Ex. C ¶ 12 (emphasis in original). The Agreement further requires that "except for claims for injunctive relief relating to this Agreement and/or Employees' employment such as requests for temporary restraining orders, and preliminary and/or permanent injunctions which shall first be heard in the state and federal courts located in the State of Virginia", "[a]ny dispute or controversy … arising out of or relating to [the] [A]greement and/or Employee's employment … shall be resolved through arbitration …." *Id.* Therefore, this Court should dismiss Counts 1–11 and 13 against Frank in the FAVC, for lack of subject matter jurisdiction and improper venue, pursuant to the Agreement's arbitration clause.

### B.  Any Question Regarding Arbitrability Should Be Decided by An Arbitrator.

In the Agreement, DCL stipulated to the American Arbitration Association's ("AAA") Employment Arbitration Rules, under which the arbitrator has the exclusive authority to decide arbitrability. Ex. C ¶ 12. The AAA Employment Arbitration Rules empower the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rule 6(a), *available at*

https://adr.org/sites/default/files/EmploymentRules-Web.pdf. The FAA requires enforcement of an agreement to delegate issues of arbitrability, *i.e.*, the "threshold issues concerning the arbitration agreement," to the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "'[Q]uestions of arbitrability' … include questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement." *Id.* at 78. The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* Where the parties have delegated arbitrability to the arbitrator, the court should compel arbitration on issues relating to arbitrability along with the underlying dispute. *Id.* Here, because the Agreement invokes the AAA Employment Arbitration Rules, the Court should decline to decide any challenge to the scope of the Agreement's arbitration clause and defer the same to be decided by an arbitrator.

## II.    Even If This Court Had Subject Matter Jurisdiction, DCL Has Failed to State Any Claim Against Frank Upon Which Relief Can Be Granted.

DCL has failed to allege sufficient facts in support of any of its claims, including those seeking injunctive relief. As the U.S. Supreme Court set forth in *Twombly* and *Iqbal*, conclusory allegations are insufficient; rather, the plaintiff must allege facts that make it plausible that it can prevail. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. DCL's FAVC is wholly devoid of actual factual allegations against Frank. Each of DCL's claims is based entirely on conclusory allegations, many pled "upon information and belief" and based on unfounded assumptions. The Court should dismiss DCL's FAVC in its entirety, with prejudice, under Rule 12(b)(6).

**A. Counts 1 and 2, Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA"), Should be Dismissed Because DCL Fails to Identify Any Trade Secrets or that Frank Accessed or Misappropriated the Same.**

DCL's trade secret-related claims as to Frank are missing a key element—DCL fails to identify *any* trade secrets that Frank had access to *or* misappropriated—and thus they fail. To establish a claim under the DTSA, DCL must establish that it owned a trade secret, that Frank misappropriated the trade secret, and that Frank's actions damaged or will damage it. 18 U.S.C. § 1839(5)(B). Similarly, under the VUTSA, DCL must establish misappropriation of a trade secret, either by acquisition of a trade secret by improper means, or by disclosure or use of a trade secret. *See* Va. Code § 59.1-336; *Audio-Video Grp.*, *LLC v. Green*, No. 1:14CV169 (JCC/TCB), 2014 U.S. Dist. LEXIS 25413, at *10–12 (E.D. Va. Feb. 26, 2014).

"An alleged trade secret must 'meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy.'" *Audio-Video Grp.*, 2014 U.S. Dist. LEXIS 25413, at *11 (quoting *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale LTD*, 859 F.Supp.2d 771, 778 (E.D. Va. 2012) *aff'd per curiam,* 505 F. App'x 242 (4th Cir. 2013)). Improper means "includes theft, bribery, misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Va. Code § 59.1-336; *see* 18 U.S.C. § 1839(6)(B) (same except the DTSA does not include "use of a computer or computer network without authority").

Additionally, even where "the defendant did not utilize 'improper means' to acquire a trade secret, the fact that it possessed a trade secret *will not alone* constitute misappropriation." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F.Supp.2d 396, 417 (E.D. Va. 2004) (emphasis added). While DCL repeatedly uses the word "Defendants," there are specific allegations against

7

Defendants Carpenter, Missimer, and BSS, and even Haddock, but there are *no* specific allegations against Frank. *See* FAVC ¶¶ 214, 218–28, 233, 237–46. Many of the key paragraphs in the FAVC do not even include Frank. *See, e.g.*, *id.* at ¶¶ 221, 223, 240–44.

### i. DCL fails to identify any trade secrets with particularity, instead merely making conclusory and generalized statements.

DCL has not identified any specific information or documents as trade secrets that Frank allegedly misappropriated or even had access to in its FAVC. *Bus. Objects*, 331 F.Supp.2d at 418. While the FAVC makes allegations that other Defendants, such as Missimer, had access to its trade secrets or confidential/proprietary information, without specifying the same, DCL never alleges that Frank did so. *See, e.g.*, FAVC ¶¶ 47–49, 159–60, 175, 219, 239.

Moreover, in Virginia, "the alleged trade secret must be described 'in sufficient detail to establish each element of a trade secret.'" *Bus. Objects*, 331 F. Supp. 2d at 418 (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (the Court dismissed claims that allege "specific engineering formulas and methods of calculation embodied in the Tunnel System" and "the structure and organization of the Tunnel system modules" constitute trade secrets)). In other words, "[a] plaintiff must identify, with particularity, each trade secret it claims was misappropriated. This must be done to allow the finder of fact to distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information." *Bus. Objects*, 331 F.Supp.2d at 418 (internal citation omitted). "The Court, in turn, must determine if each individual trade secret satisfies each element." *Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21cv252, 2022 U.S. Dist. LEXIS 134694, at *29 (E.D. Va. July 28, 2022); *see Knowesis, Inc. v. Herrera*, 103 Va. Cir. 175, 180 (Fairfax Co. 2019) ("Making specific allegations as to the trade secrets misappropriated and the means of misappropriation is critical to stating a VUTSA claim.").

DCL has not shown source code, or anything at all, to identify its supposed trade secret(s). The furthest that DCL goes to identify its alleged "trade secrets" is by stating, in conclusory fashion, that "DCL Trade Secrets constitute business and financial information, both tangible and intangible, relating to its company operations and including, but is not limited to, plans, compilations, formulas, designs, methods, techniques, processes, procedures and customer lists," without providing further detail or alleging Frank had access to or misappropriated the same. FAVC ¶¶ 216, 235.

DCL's conclusory statements that it "had and has valuable trade secrets relating to" "its provision of cyber security products and services marketed to the United States federal government" do not satisfy the requirements of the DTSA or Section 59.1-336 of the Virginia Code to identify and plead each trade secret with particularity and do not rise to the level of the claim that proceeded in *Trandes*. FAVC ¶¶ 215, 234; *Bus. Objects*, 331 F.Supp.2d at 418. None of DCL's statements allow the Court to "distinguish that which is legitimately a trade secret from other information that is simply confidential but not a trade secret, or is publicly available information" as is required. *Bus. Objects*, 331 F. Supp. 2d at 418 (internal citation omitted); *Trandes*, 996 F.2d at 661–63; *see, e.g.*, FAVC ¶¶ 215–17, 219–20, 234–36, 238–39.

DCL has not provided *any* allegations that relate to Frank that support its claims that (a) Defendants generally violated the DTSA and VUTSA by "soliciting DCL employees away from DCL to join BSS or other employers[,]" and "soliciting, diverting and/or servicing DCL's actual or prospective customers" and (b) "Frank's February 23, 2023 email demonstrates Defendants were actively working behind the scenes during settlement discussions to unlawfully divert DCL's interests under the IDIQ Contract as well as shift DCL employees to 'PLEX[.]'" FAVC ¶¶ 142, 224, 242. DCL's FAVC does not support or provide any factual allegations that Frank used DCL's

trade secrets to solicit clients, prospective customers, or employees. *Id.*; *see, e.g.*, *id.* at ¶¶ 133, 136, 141. Paragraph 133 concerns a February 9, 2023 voicemail from Haddock to Bertke regarding Missimer and Carpenter. *Id.* at ¶ 133. Paragraph 136 leaps to the conclusion that "[b]ased on Haddock's February 9, 2023 communications, Defendants continued to communicate with Haddock or others at LMCO" despite no allegations tying Frank to Haddock's February 9th voicemail. *Id.* at ¶¶ 133, 136.

Paragraph 141, the only paragraph cited by DCL that in any way relates to Frank, concerns an email from Frank on the morning of February 23, 2023 that in no way mentions, or even alludes to, any confidential or proprietary information or use of trade secrets to solicit anyone away from DCL. *See id.* at ¶ 141. Without more of a causal connection, DCL cannot logically make the jump to its conclusory assumption that Frank solicited anyone or that "Frank's February 23, 2023 email demonstrates Defendants were actively working behind the scenes during settlement discussions to unlawfully divert DCL's interests under the IDIQ Contract as well as shift DCL employees to 'PLEX[.]'" *Id.* at ¶¶ 142, 224, 242. Further, Frank, and the other individual Defendants, all worked on this Contract and/or for LMCO for prior employers.

Because DCL has failed to identify a trade secret with particularity or plead that Frank had access to *or* misappropriated any of DCL's trade secrets, it has not satisfied all of the requisite elements to establish a trade secret and Counts 1 and 2 must be dismissed.

> ### ii. *DCL's alleged "trade secrets" are publicly available and it once again makes conclusory allegations lacking in any support.*

The Virginia Supreme Court has noted that the most important characteristic of a trade secret is its secrecy. *Dionne v. Se. Foam Converting & Packaging, Inc.*, 240 Va. 297, 302 (1990).

However, as stated above, part of what DCL claims to be a "trade secret," is publicly available.[2] Specifically, DCL's relationship with LMCO was public information, as was Haddock's involvement with the IDIQ Contract.[3]

DCL also alleges that Defendants, although not Frank specifically, disclosed "proposed settlement terms" as justification for its trade secret claims against Frank. *See* FAVC ¶ 223. Yet, Pelkey himself texted Frank about the investigation and settlement. *See id.* at ¶¶ 79–81. Settlement agreement terms are not "trade secrets" under the DTSA or the VUTSA, nor does DCL allege that Frank was aware of settlement agreement terms between DCL, Missimer and Carpenter or that he disclosed those terms. *See id.* at ¶¶ 127–32. DCL also does not allege that it derived independent economic value from keeping the settlement negotiations secret, or that it took reasonable efforts to maintain the secrecy, because it cannot, and it did not. *See generally* FAVC; 18 U.S.C. § 1839(3) (defining "trade secret" under DTSA); Va. Code § 59.1-336 (same under VUTSA).

### iii.   *Virginia does not recognize the doctrine of inevitable disclosure and DCL cannot rely on a case decided under Delaware law for Frank's Agreement in Virginia.*

DCL further admits that Frank did not access *or* disclosure trade secrets by stating that there "exists a substantial likelihood of 'inevitable disclosure' of DCL Trade Secrets if Missimer, Carpenter or Frank are allowed to work at a competitor company," attempting to rely on the doctrine of inevitable disclosure, a doctrine not recognized in Virginia. FAVC ¶ 222. Notably, the case cited by DCL in support of the conclusory allegations—*Atlantic Diving Supply, Inc. v. Jay Basnight*, Case No. 2:22cv298, 2022 U.S. Dist. LEXIS 186020 (E.D. Va. Sept. 21, 2022)—does

---

[2] This information DCL claims constitutes trade secrets, without offering more detail into why, is publicly available. *See Our Capabilities: providing tools for the United States' cyber arsenal*, Dark Circuit Labs, https://darkcircuitlabs.com/capabilities/ (last visited Apr. 15, 2023).

[3]    *See FOIA Update: Disclosure of Prices*, U.S. Dep't of Just., https://www.justice.gov/oip/blog/foia-update-disclosure-prices (last modified Aug. 13, 2014).

not support its propositions. As an initial matter, the court in *Atlantic Diving Supply* applied Delaware law to the employment agreement, breach of contract claim, and action for a preliminary injunction, including application of the inevitable disclosure doctrine, not Virginia law. 2022 U.S. Dist. LEXIS 186020, at *18–19. Virginia law governs Frank's agreements and any claims against Frank in the above-captioned matter. *See* Ex. C ¶ 12. Further, "Virginia does not recognize the inevitable disclosure doctrine[.]" *Atl. Diving*, 2022 U.S. Dist. LEXIS 186020, at *18 n.8 (quoting *Gov't Tech. Servs., Inc. v. IntelliSys. Tech. Corp.*, 51 Va. Cir. 55, 55 (Fairfax 1999)). Therefore, DCL's attempt to rely on the doctrine of inevitable disclosure and a case decided under Delaware law are inapplicable to Frank, whose Agreement is governed by Virginia law, which does not recognize the inevitable disclosure doctrine.

Accordingly, Counts 1 and 2 should be dismissed with prejudice because DCL has failed to sufficiently allege that it has trade secrets, or that Frank took or disclosed any, which he did not, and DCL cannot.

### B. Count 3, Violation of Virginia's Uniform Computer Information Transactions Act ("VUCITA") is Inapplicable to this Dispute.

The VUCITA has no application to this case. The VUCITA was "designed to protect individuals involved in computer information transactions, such as agreements to create, transfer, modify, or lease computer information." *Smith v. Interactive Fin. Mktg. Grp., L.L.C.*, 79 Va. Cir. 158, 166 (City of Richmond 2009). The VUCITA expressly states that it does not apply to "a contract of employment of an individual, other than an individual hired as an independent contractor…." Va. Code § 59.1-501.3(d)(5).

None of the allegations in the FAVC have any legitimate relation to the VUCITA, and not only are the allegations in Count 3 vague and conclusory, but they also do not once mention Frank by name. *See* FAVC ¶¶ 248–54. DCL's only allegation is that

12

> [b]y and through the use of computer information transactions, Carpenter and Missimer and the other Defendants, singularly and in concert, purposefully or knowingly accessed, took, and destroyed Trade Secrets contained in data and/or databases and otherwise disseminated or utilized Trade Secrets belonging to DCL for their own benefit to the detriment of DCL.

FAVC ¶ 252. Again, DCL has failed to sufficiently allege that Frank "accessed, took, or destroyed" or "otherwise disseminated or utilized" these alleged "trade secrets." Accordingly, Count 3 should also be dismissed, with prejudice, for the same reasons as Counts 1 and 2.

### C. Count 4, Common Law Misappropriation of Trade Secrets, Should Be Dismissed Because There is No Such Cause of Action Under Virginia Law.

There is no common law cause of action of misappropriation of trade secrets under Virginia law—the VUTSA supplanted it. *See Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 205 n.51 (2016) ("the VUTSA expressly states that it 'displaces … other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.'") (citing Va. Code § 58.1-341(A)). The cases DCL cites in support of this claim—*MicroStrategy Inc. v. Li*, 268 Va. 249 (2004) and *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297 (1990)—were both decided under the VUTSA without mention of a common law cause of action. Regardless, if the unidentified information at issue does not constitute a trade secret, then there can be no misappropriation claim in relation to it under either statutory or common law. As there is no common law trade secrets claim under Virginia law, Count 4 should be dismissed with prejudice.

### D. Count 5, Breach of Contract, Should Be Dismissed Because DCL Has Not Pled a Valid Contract or Breach Thereof.

To sufficiently allege breach of contract, DCL must establish "(1) a legally enforceable obligation, (2) [Frank's] material breach of that obligation, and (3) damage to [DCL] caused by the breach of that obligation." *Vienna Metro LLC v. Pulte Home Corp.*, 786 F.Supp.2d 1076, 1086 (E.D. Va. 2011). DCL has not sufficiently pled any of these elements, much less all three of them.

Virginia case law is clear that restraints on trade are disfavored and must be narrowly tailored to protect the employer's legitimate business interest in order to be enforceable. *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 249 (2005) (explaining that a non-compete must not unduly burden an employee's ability to earn a living); *Mod. Env'ts, Inc. v. Stinnett*, 263 Va. 491, 493 (2002). Virginia courts apply a three-part reasonableness test to determine whether to enforce restrictive covenants. *Nortec Commc'ns, Inc. v. Lee-Llacer*, 548 F.Supp.2d 226, 230–31 (E.D. Va. 2008). Ultimately, restrictive covenants will only be enforced if the restraint is: (1) no broader than necessary to protect the owner's legitimate business interests; (2) not unduly harsh and oppressive to the employee's legitimate efforts to earn a living; and (3) not in violation of public policy. *Id.* Virginia law requires that "non-competition clauses be strictly construed against the employer." *Roto-Die Co. v. Lesser*, 899 F.Supp. 1515, 1519 (W.D. Va. 1995) (quoting *Grant v. Carotek, Inc.*, 737 F.2d 410, 411 (4th Cir. 1984)).

i.      **The restrictive covenants in the Agreement are functionally overbroad and unenforceable under Virginia law.**

A restrictive covenant is unenforceable in its entirety under Virginia law if it is "functionally overbroad"—*i.e.*, if the range of proscribed activities is "greater than necessary" to protect the employer's legitimate business interest—or if it is ambiguous in scope. *Nortec Comm'n*, 548 F.Supp.2d at 231; *see Cantol, Inc. v. McDaniel*, Case No. 2:06cv86, 2006 U.S. Dist. LEXIS 24648, at *10 (E.D. Va. Apr. 28, 2006) (dismissing claim based on overbroad restrictive covenant); *Omniplex*, 270 Va. at 250 (non-compete barring employee from seeking subsequent employment in unrelated or non-competitive field is overbroad); *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37–38 (2001) (same).

Moreover, articulating a legitimate business interest alone is not sufficient to make a non-competition or non-solicitation clause enforceable in Virginia; the clause "must also be 'reasonable

in the sense that it is no greater than is necessary to protect' an employer's legitimate business interest." *Update, Inc. v. Samilow*, 311 F.Supp.3d 784, 789 (E.D. Va. 2018) (quoting *Richardson v. Paxton Co.*, 203 Va. 790, 794 (1962)). The Agreement prevents Frank from working in any capacity in the cyber security space, despite DCL only providing products and services in a very narrow subset of the cyber security field. *See* Ex. C ¶ 4; *Our Capabilities*, *supra* note 2.

As drafted, the restrictive covenant in Section 4(b) of the Agreement, the very provision that DCL is attempting to enforce via its Complaint, is functionally overbroad and not enforceable under Virginia law. Section 4(b) prohibits Frank from competing or

> accept[ing] an offer to do business of the same type or related to the Company Business with or referral from . . . [or] providing services of the same type or related to the Company Business to . . . any person or entity who, at the time Employee's employment with the Company ended was a Client, Prospective Client, Service Provider, Prospective Service Provider, or Referral Source of the Company within the last twenty-four (24) month period prior to termination of Employee's employment with the Company.

for 12 months after Frank separates from his employment with DCL. Ex. C ¶ 4(b).

"Company Business" is defined in the Agreement as "the development of cyber security products, software and services, or other lines of business that the Company enters (or has taken concrete steps to enter into in the near future) during the term of [Frank's] association with the Company." *Id*. at 1. This restriction, on its face, and by DCL's own admission, is not limited in geographic scope. *See id*. at 1. For example, Frank cannot perform any work related to cyber security in Zimbabwe with the Agreement, as drafted, even though DCL does not do business there. Even when employers have operated on a worldwide basis, which DCL does not, this Court has struck down non-competes without a geographic restriction. *See Strategic Res., Inc. v. Nevin*, No. 1:05cv992, 2005 U.S. Dist. LEXIS 30985, at *8–11 (E.D. Va. Nov. 23, 2005) (striking down non-compete without geographic restriction as unreasonable because not restricted to employer's

covered areas even though employer operated on worldwide basis and granting motion to dismiss breach of contract claim based on overbroad non-compete and non-solicit).

The Agreement also prohibits Frank from accepting an offer to work in *any capacity* for any individual or entity that does business of the same type or related to or provides services that relate to the development of cyber security products, software and services or any products, software and services *related to* cyber security for 1 year following the termination of his employment with DCL for any "Client, Prospective Client, Service Provider, Prospective Service Provider, or Referral Sources of DCL," regardless of whether Frank was aware of the individual or entity or had any contact with the individual or entity during his employment with DCL. Ex. C ¶ 4. This provision prevents Frank from working in *any capacity* for any employer that is engaged in the "development of cyber security products, software and services," regardless of whether the position is the same or similar to the work that Frank did for DCL *or* if DCL provides the same products or services as the new employer. Provisions preventing employees from working for a client or employer in *any* capacity fail the "janitor test." *See Reading & Language Learning Ctr. v. Sturgill*, 94 Va. Cir. 94, 103 (Fairfax 2016); *Roto-Die*, 899 F.Supp. at 1520; *Strategic Enter. Sols., Inc. v. Ikuma*, 77 Va. Cir. 179, 183 (Fairfax 2008); *Omniplex*, 270 Va. at 250 (collecting cases) (holding that a prohibition from working for any business competitive with that of former employer in any capacity is overbroad and unenforceable).

DCL cannot argue in good faith that it has a legitimate business interest in preventing Frank from working for an employer that provides products or services that DCL does not provide. The remainder of the clause makes no sense and is impossible for Frank to comply with. *See Mod. Env'ts*, 263 Va. at 493 ("[C]ovenants in restraint of trade are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee.") (citations omitted).

ii.    **The non-solicitation provisions of the Agreement are overbroad and unenforceable under Virginia law.**

DCL's non-solicitation language is also sweepingly overbroad and prevents Frank from contacting individuals that Frank never encountered while working with DCL, with no tie to protecting DCL's legitimate business interests. Further, DCL is asking this Court to rewrite its Agreement and make it even *more restrictive*, barring Frank from communicating with any DCL client for *any reason* for two (2) years. FAVC 64–65. With respect to Clients and Prospective Clients, again, the language in the Agreement is not limited to Clients and/or Prospective Clients that Frank actually had knowledge of or was in contact with "within the last twenty-four (24) month period prior to termination of [Frank's] employment with the Company." Ex. C ¶ 4. Further, DCL has not, and cannot, articulate any legitimate business interest in preventing Frank from soliciting or seeking cyber security products, software and services (not providing or attempting to provide cyber security products, software and services to the individuals and/or entities) from DCL's Clients or Prospective Clients, regardless of whether DCL provides the same products or services that Frank is seeking.

Pursuant to Paragraph 4(b) of the Agreement, Frank may not

> induce the termination, non-renewal of, or reduction of business done or referred of any person or entity who, at the time Employee's employment with the Company ended was a Client, Prospective Client, Service Provider, Prospective Service Provider, or Referral Source of the Company within the last twenty-four (24) month period prior to termination of Employee's employment with the Company

*regardless of whether Frank was ever aware of or had contact with* the Client, Service Provider, Prospective Client, Prospective Service Provider, or Referral Source. Ex. C ¶ 4(b). Frank cannot be restricted from contacting individuals and/or entities he was not aware of because he either did not have contact with them, or they became Clients, Prospective Clients, Service Providers, Prospective Services Providers, or Referral Sources *before* he joined DCL. Similar covenants have

17

been found to be unenforceable, even for a shorter restriction. *See, e.g., Lasership, Inc. v. Watson*, 79 Va. Cir. 205 (Fairfax 2009) (2-year non-solicitation found unenforceable when imposing an unreasonable burden on an employee to know all of the customers invoiced *one* year). Accordingly, this provision of Paragraph 4 is overbroad and does not serve to protect any legitimate business interest of DCL, making it unenforceable under Virginia law.

Finally, per Paragraph 5 of the Agreement, in recognition of DCL's "Goodwill," "Confidential Information and Trade Secrets through the continued service of its employees," "[w]hile employed by [DCL] and for a period of twelve (12) months thereafter," Frank may not

> (directly or indirectly or on behalf of himself/herself or a third party) solicit, assist or induce any then-current (a) employee; (b) independent contractor; or (c) consultant of the Company, to terminate or reduce his, her, their or its relationship with the Company or to become an employee, consultant or independent contractor with an entity other than the Company. Furthermore, Employee shall not (directly or indirectly on behalf of himself/herself or a third-party) hire as an employee, or engage as independent contractor or consultant, any former employee, consultant or independent contractor of the Company who was employed or engaged by the Company at any time during the twelve (12) month period prior to such hiring or engagement.

Ex. C ¶ 5. This provision is overly broad and would bar Frank from soliciting or hiring a former DCL employee in *any* capacity for *any* type of business. For example, Frank could not hire a former employee to work with him at a fast-food restaurant. DCL has not, and cannot, articulate any legitimate business interest in preventing its former employees from working in non-competitive roles. *See Ikuma*, 77 Va. Cir. at 183 (rejecting overly broad non-solicitation of employees clause). The overly broad and ambiguous nature of the restrictive covenants in the Agreement renders them unenforceable, and therefore, DCL has failed to state a claim upon which relief can be granted under its breach of contract claim against Frank. *See, e.g., Lasership*, 79 Va. Cir. at 217 ("Because the noncompetition, nonsolicitation, and confidentiality clauses are

unenforceable as a matter of law, all claims arising from those clauses" cannot succeed). Accordingly, Count 5 should be dismissed with prejudice.

DCL cannot attempt to correct the deficiencies in its Agreement via its pleadings, nor can it ask the Court to rewrite its Agreement to make it enforceable under Virginia law. An employer may not "try to limit the in terrorem effect of an ambiguous non-compete clause by interpreting it narrowly." *Lanmark Tech, Inc. v. Canales*, 454 F.Supp.2d 524, 529 (E.D. Va. 2006). Former employees and prospective employers cannot be left guessing what is and is not prohibited. *Id.* at 529. Finally, an employer cannot ask a court to fix an overly broad restrictive covenant, because Virginia law requires courts to "take the non-compete provision as written; there is no authority for courts to 'blue pencil' or otherwise rewrite the contract to eliminate any illegal overbreadth." *Id.*

### E. DCL Failed to Plead a Valid Claim for Breach of Fiduciary Duty and/or Breach of Duty of Loyalty.

Count 6 for breach of fiduciary duty and duty of loyalty fails as a matter of law. A breach of fiduciary duty and duty of loyalty requires (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages resulting from that breach. *All. Tech. Grp., LLC v. Achieve 1, LLC*, Civ. Action No. 3:12CV701-HEH, 2013 U.S. Dist. LEXIS 4708, at *13 (E.D. Va. Jan. 11, 2013). For a plaintiff to successfully allege both breach of fiduciary duty and breach of contract claims, the fiduciary and contractual duties must exist independently. *Stone Castle Fin., Inc. v. Friedman, Billins, Ramsey & Co.*, 191 F.Supp.2d 652 (E.D. Va. 2002). "An employee, including an employee at-will, owes a fiduciary duty of loyalty to his employer during his employment." *Williams v. Dominion Tech. Partners, LLC*, 265 Va. 280, 289 (2003). The duty of loyalty imposes restrictions upon employees to not compete with their employer *during the course of employment*; however, they may make plans to compete. *Id.*

19

Like the rest of the FAVC, Count 6 is based solely on conclusory allegations. DCL does not allege that Frank ever accepted employment and/or began working for BSS. Even if Frank had made plans to compete with DCL while working for DCL, it is black letter law that forming a company or making preliminary plans to compete is not actionable. *Feddeman & Co.*, *v. Langan Assocs., P.C.*, 260 Va. 35, 42 (2000). Prior to resigning from employment, employees are entitled to make arrangements to resign, including plans to compete with their employer. *Id.* This right is based on a policy of free competition. *Id.* DCL attempts to allege breach of fiduciary duty through Frank's alleged use of DCL's unidentified "confidential and proprietary information," but as discussed above, DCL has not alleged sufficient facts suggesting Frank misappropriated any of its information. Frank never disclosed any confidential, proprietary, or alleged "trade secret" information of DCL. Nothing supports a claim that "Frank's actions constitute a scheme of self-dealing" and that Frank "acted against the interests of DCL for [his] own economic advantage and that of BSS's, thereby disadvantaging DCL's economic and business interests." FAVC ¶ 285. Nor does DCL allege that Frank's alleged actions caused it any damage. BSS never conducted business or employed Frank. Further, DCL seeks return of wages paid for the entire 7 months Frank worked at DCL with no basis. *See id.* at 65. Accordingly, Count 6 should be dismissed with prejudice.

**F. Count 7 Should Be Dismissed Because Virginia Does Not Recognize a Cause of Action for Aiding and Abetting Breach of Contract and/or Breach of Fiduciary Duty.**

Count 7 for aiding and abetting breach of contract and/or breach of duty of loyalty and fiduciary duty also fails as a matter of law. As an initial matter, Virginia has not recognized a cause of action for aiding and abetting a breach of fiduciary duty even exists. *See, e.g.*, *Keil v. Seth Corp.*, Civil No. 3:21cv153 (DJN), 2021 U.S. Dist. LEXIS 212042, at *44 (E.D. Va. Nov. 2, 2021) ("neither the common law nor any Virginia statute establishes a separate tort for aiding and

abetting a breach of fiduciary duty. And, the Supreme Court of Virginia has expressly declined to recognize the tort despite having the opportunity to do so. Accordingly, this Court will not assess Plaintiff's claims as if the cause of action exists."). DCL cites to no authority supporting the existence of an aiding and abetting breach of fiduciary duty cause of action in Virginia, despite that for many of its other counts it cites to case law. DCL claims that "[a]ll Defendants are [sic] have knowledge of the contractual, statutory and common law duties owed by Carpenter, Missimer, and Frank to DCL yet Defendants encouraged and assisted them in committing breaches of [the] same." FAVC ¶ 294. But DCL fails to identify the contractual duties and relations at issue, and if DCL is referring to the Agreement, it is unenforceable. If DCL relies solely on its alleged "trade secrets," this also fails, because for the reasons set forth above, DCL cannot demonstrate any trade secrets are at issue here, and any derivative liability for "aiding and abetting" is thus non-existent. *Wenzel v. Knight*, No. 3:14–cv–432, 2015 U.S. Dist. LEXIS 4476, at *10 (E.D. Va. Jan. 14, 2015). In Sum, Count 7 should be dismissed with prejudice because it is not sufficiently pled.

### G. DCL Fails to Plead Facts to Support its Claim For Common Law Unfair Competition.

Count 8, common law unfair competition, fails as a matter of law. Virginia has "a narrow, sharply defined common law definition of unfair competition." *Phoenix Renovation Corp. v. Rodriguez*, 403 F.Supp.2d 510, 517 (E.D. Va. 2005) (citation omitted). "The essential element of unfair trading is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is deceived, and the seller receives the profit which, but for such deception, he would not have received." *Id.* In *Phoenix*, this Court dismissed the plaintiff's unfair competition claim because there was "no allegation that [the defendant] is attempting to deceive the buying public by holding itself out as [the plaintiff]" *Id.* at 518. Likewise, here, the FAVC contains no allegations that Frank sold anything, let alone deceived anyone about what he "sold"

or otherwise engaged in any "deception, by means of which goods of one dealer are palmed off as those of another." *Id.*; *Benjamin T. Crump Co. v. J.L. Lindsay, Inc.*, 130 Va. 144, 160 (1921). Accordingly, Count 8 should be dismissed with prejudice.

### H. Counts 9 and 10, Tortious Interference with Contractual Relations and Prospective Economic Advantage, Should Be Dismissed Because DCL Fails to Allege the Existence of a Valid Contract or Business Expectancy.

Counts 9 and 10, tortious interferences with prospective economic advance and contractual relations, are fatally deficient and therefore have not been properly pled. To state a plausible claim for tortious interference with contractual relations or prospective economic advantage, a plaintiff must plausibly allege (1) a specific, existing contractual relationship or business expectancy, and (2) that the defendant knew of that relationship or expectancy and intentionally interfered with it. *Sunsport, Inc. v. Barclay Leisure Ltd.*, 984 F.Supp. 418, 423 (E.D. Va. 1997) (citation omitted); *Schaecher v. Bouffault*, 290 Va. 83, 106 (2015). In cases involving a business expectancy, "a plaintiff must also demonstrate that the defendant employed 'improper means' in causing the alleged interference." *E.I. Dupont de Nemours & Co. v. Kolon Indus. Inc.*, 688 F.Supp.2d 443, 453 (E.D. Va. 2009). A claim for tortious interference with a contract requires a valid contractual relationship. *Chaves v. Johnson*, 230 Va. 112, 120 (1985).

DCL does not allege a specific, existing business expectancy in Count 9, nor does it allege that Frank knew of that expectancy and took advantage of it. DCL merely alleges that it "has actual and prospective business relationships with numerous third-party customers or clients," that it "had reasonable expectations of economic advantage with prospective business relationships in the form of potential customers or clients," that these "relationships and expectations constitute protectable interests" and "Defendants tortiously interfered with DCL's prospective economic advantage[.]" FAVC ¶¶ 313–16. DCL's allegations are "too general to support a tortious interference claim"

under Virginia law. *Masco Contractor Servs. E., Inc. v. Beals*, 279 F.Supp.2d 699, 710 (E.D. Va. 2003). DCL further fails to allege facts showing that the business opportunity was reasonably certain. The mere possibility of future economic benefit is insufficient. The business expectancy must be reasonably certain of being achieved. *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 94 (4th Cir. 2019) ("proof of a plaintiff's belief and hope that a business relationship will continue is inadequate."); *Williams v. Reynolds*, No. 4:06CV00020, 2006 U.S. Dist. LEXIS 79178, at *16–18 (W.D. Va. Oct. 31, 2006); *Com. Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997). DCL's merely alluding to the existence of "potential customers or clients" is wholly insufficient. FAVC ¶ 314; *see, e.g.*, *Brainware, Inc. v. Mahan*, 808 F.Supp.2d 820, 830 (E.D. Va. 2011) (dismissing tortious interference with business relationship claim only identifying a "prospective client" because "[s]uch bare allegations do not provide a sufficient basis to conclude that Defendant interfered with a 'reasonably certain' venture."). Similarly, DCL's failure to identify, beyond generalizations and the mere identification of "contractual relationships with … other third-party customers or clients," any specific contract that Frank allegedly interfered with is insufficient. FAVC ¶ 327; *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, 390–91, 394 (E.D. Va. 2002) ("tortious interference requires pleading and proof of a purpose to harm prospective economic opportunities").

DCL also does not sufficiently allege that Frank employed any "improper means" to cause the alleged interference. FAVC ¶¶ 316, 328; *E.I. Dupont*, 688 F.Supp.2d at 453. Improper means are methods that are illegal, independently tortious, or "violate an established standard of a trade or profession." *Duggin v. Adams*, 234 Va. 221, 226–27 (1987). While proof of a breach of the duty of loyalty satisfies the improper methods requirement, DCL has failed to prove such. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559 (2011); *see* Count 6, *supra*.

In Paragraphs 316 and 328 of the FAVC, many of the claims either do not apply to Frank or fail. Paragraphs 316 and 328 list numerous allegations that do not involve Frank at all. DCL does not allege Frank recruited or solicited DCL employees away from DCL to joined BSS or other employers; that Frank worked for BSS while still employed by DCL; caused LMCO to threaten to terminated or actually terminate DCL; solicited, diverted and/or served DCL's actual or prospective customers; failed to return to DCL all of its confidential and trade secret information or encouraged DCL to continue to employ Carpenter and Missimer for any period of time. Further, as explained above, the FAVC contains no allegations that Frank had any access to *or* misappropriated any of DCL's trade secrets and/or confidential/proprietary business information; used trade secrets for the benefit of a person or entity other than DCL; disclosed trade secrets to BSS, Haddock, and others; or used trade secrets to accomplish any of the actions mentioned in Paragraphs 316 or 328 of the FAVC. *See* FAVC ¶¶ 316, 328. Further, DCL admits that LMCO was leaving without Frank's involvement and because of mismanagement and treatment of Missimer and Carpenter. FAVC ¶¶ 129, 133, 147–49, 201–02.

To the extent that Count 10 is premised on the Agreement, it fails, as discussed above, because the Agreement is unenforceable, and Frank cannot interfere with his own contract. One cannot interfere with an invalid agreement, and as set forth in detail above, DCL cannot demonstrate the Agreement is enforceable. *See, e.g.*, *Commerce Funding, Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (applying Virginia law and requiring the existence of a valid contract for tortious interference claim). Frank also cannot interfere with his own contract because that would simply be a breach of contract claim, which fails as explained above. *Fox v. Deese*, 234 Va. 412, 427 (1987) ("A person cannot intentionally interfere with his own contract") Moreover, where, as here, the plaintiff alleges interference with an at-will contract, the defendant

must have used "improper means or methods" to interfere with the contract. *Duggin*, 234 Va. at 226–27. The only "improper means" that DCL alleges are the alleged misappropriation of DCL's trade secrets and breach of the fiduciary duty of loyalty. As discussed above, those claims are insufficiently pled, so DCL cannot rely on them to satisfy the improper means element of its tortious interference claim. Accordingly, Counts 9 and 10 should be dismissed with prejudice.

### I. DCL Fails to Plead Facts Sufficient to Support its Claim for Civil Conspiracy as to Defendant Frank.

Count 11, civil conspiracy, fails as a matter of law. Under Virginia common law, a conspiracy is (1) an agreement between two or more persons, (2) to accomplish some criminal or unlawful purpose not in itself criminal or unlawful, (3) by criminal and unlawful means, (4) which results in damage to plaintiff. *Taylor v. CNA Corp.*, 782 F.Supp.2d 182, 204–05 (E.D. Va. 2010); *Com. Bus. Sys., Inc. v. Bell S. Servs.*, 249 Va. 39, 48 (1995). Conclusory language is insufficient to plead conspiracy. *Gov't Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 706 (E.D. Va. 2004). DCL does not allege a conspiracy with particularity, as is required. *See, e.g.*, *TradeStaff & Co. v. Nogiec*, 77 Va. Cir. 77, 85 (City of Chesapeake 2008) ("conspiracy claims must be pleaded with particularity and with more than mere conclusory language."); *Bay Tobacco, LLC v. Bell Quality Tobacco Prods.*, LLC, 261 F.Supp.2d 483, 499 (E.D. Va. 2003) (plaintiff failed to sufficiently allege conspiracy where they failed to plead "the requisite concert of action and unity of purpose in more than 'mere conclusory language'"). DCL also does not allege or establish any facts suggesting that the "co-Defendants" entered into some sort of agreement. *See generally* FAVC.

Instead, DCL merely alleges, in conclusory fashion, that "Defendants committed overt acts in furtherance of an intentional common scheme, as described in this Complaint[,]" but it does not identify the overt acts *or* the common scheme. FAVC ¶ 338. DCL acknowledges its failure to provide specific allegations by basing this claim "[o]n information and belief." FAVC ¶ 92. These

conclusory allegations are insufficient to meet the heightened pleading standard of a conspiracy claim. If DCL relies on a sole email as the basis for its civil conspiracy claim against Frank, the email does not support a conspiracy between Frank and Haddock, or any Defendant. As explained above, there are no allegations Frank had access to *or* misappropriated trade secrets. Finally, if a common law civil conspiracy claim is entirely based on the trade secret misappropriation claim, the VUTSA preempts the common law claim, especially when the pleadings, as here, do not expressly indicate the common law claims are being pursued as alternative claims. Va. Code § 59.1-341; *see Smithfield Ham & Prods. Co., Inc. v. Portion Pac, Inc.*, 905 F.Supp. 346, 348 (E.D. Va. 1995). Accordingly, Count 11 should be dismissed with prejudice.

**J.   DCL Has Not Pled Facts to Support its Claim for Permanent Injunction.**

DCL's claim for preliminary injunction is moot, as the Court denied this requested relief on April 21, 2023 at the same time as it denied the TRO and expedited discovery requests. *See* ECF No. 52.

To obtain a permanent injunction, DCL must show (1) that it suffered an irreparable injury; (2) that the legal remedies available are inadequate compensation for that injury; (3) a remedy in equity is warranted after considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be harmed by a permanent injunction. *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

First, DCL cannot show that it has suffered irreparable harm as a result of Frank's alleged actions. Here, the only harm alleged by DCL is "further dissemination or use of Trade Secrets" and "interfere[nce] and/or diver[sion of] DCL's clients." FAVC ¶¶ 229, 344. However, DCL has yet to specifically identify, with particularity, what these alleged "trade secrets" are, DCL has yet to explain how it is at risk of losing its commercially competitive advantage, since it has already

lost the LMCO contract, and it has yet to identify anything showing any interference or diversion of DCL's clients. There are no allegations that Frank used or divulged any information or documents during or following his employment, let alone that he continues to do so, as DCL contends.

Second, DCL has failed to show that the legal remedies available are inadequate compensation for its alleged injuries. Irreparable injury will be found when "remedies available at law, such as monetary damages, are inadequate to compensate for that." *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020). Here, DCL asserts that the change in contract value is the measure of damages, whereby acknowledging that monetary damages are adequate, and thus there is no irreparable harm. FAVC ¶ 210(1).

Third, DCL has failed to show that the balance of the hardships weighs in its favor. DCL seeks relief that would cause Frank to suffer significant hardship, harm his abilities to seek new employment in the current job market and give DCL an unwarranted competitive advantage. According to the terms of the Agreement, Frank is not permitted to work in any capacity in the cyber security space or related in any way to cyber security for 1 year. *See* Ex. C ¶ 4(b). Moreover, Frank only worked for DCL for 7 months, and now DCL seeks to enforce a 2 year noncompete, which is significantly longer than the timeframe Frank even worked for DCL and a longer restriction than the Agreement, without justification. FAVC at 64–65. At the same time, DCL alleges it has already suffered a decrease in revenue related to the IDIQ Contract. *See id.* at ¶¶ 201–02. Frank would suffer extreme hardship if DCL were granted the relief it seeks via the FAVC, where DCL has allegedly already suffered harm and that harm can be remedied with an award of monetary damages.

Fourth, DCL has failed to show, because it cannot, that the public interest would not be harmed by its sought injunction. The public interest here favors not enjoining employees from conducting their business or from competition among industry participants on the basis of claims lacking any evidentiary support. *See Omniplex*, 270 Va. at 249 (non-competes must not unduly burden employees' abilities to earn livings); *Mod. Env'ts*, 263 Va. at 493. If the restraint is not justified by the employer's legitimate business needs, the restrictive covenant offends public policy. *Power Distrib., Inc. v. Emergency Power Eng'g, Inc.*, 569 F.Supp. 54, 58 n.8 (E.D. Va. 1983). "[M]erely subjecting the employee to an ambiguous restrictive covenant violates public policy." *Roto-Die*, 899 F.Supp. at 1522 (citation omitted); *see also Home Paramount Pest Control Cos. v. Shaffer*, 282 Va. 412, 415–19 (2011) (restrictive covenants not limited to prevent former employees from engaging in activity that competes with the company are blanket prohibitions against working in any capacity for a competitor that Virginia courts find overbroad and unenforceable as against public policy.).

Further, as the Supreme Court recognized in *Winter v. National Resource Defense Council, Inc.*, the public has an interest in national defense and security. 555 U.S. 7, 24 (2008) ("the injunction's consequent adverse impact on the public interest in national defense"). Because the injunction DCL seeks would restrain trade related to national cyber security, the Court must consider "the injunction's consequent adverse impact on the public interest in national defense" and "national security." *Winter*, 555 U.S. at 24, 26.

Accordingly, a permanent injunction is not in the public interest and DCL's claim for the same in Count 12 should be dismissed, with prejudice.

**K.  DCL's Accounting Claim Fails Because it Cannot Stand on its Own and DCL's Remaining Claims Will Not Survive Dismissal.**

Count 13, an accounting, is not applicable to this matter and fails as a matter of law. An accounting is an equitable claim and form of relief "which is available upon order of a court in equity providing for an accounting of funds among those with a partnership or other fiduciary relation inter se." *McClung v. Smith*, 870 F.Supp. 1384, 1400 (E.D. Va. 1994). Under Virginia law, an accounting is an action "in equity." Va. Code § 8.01-31. But "[a] claim for an accounting is not an independent cause of action, but rather an equitable remedy." *Walsh v. Bank of Am., NA*, No. 1:11-cv-1168 (AJT/JFA), 2012 U.S. Dist. LEXIS 190987, at *4 (E.D. Va. Feb. 15, 2012) (dismissing without prejudice plaintiff's count seeking an accounting as a remedy in connection with any claim that is not dismissed.). Therefore, and as stated above, since DCL's claims in Counts 1 through 12 are insufficiently pled and fail as a matter of law, Count 13 cannot survive.

## CONCLUSION

For the foregoing reasons, DCL has not sufficiently pled its claims. Accordingly, Frank respectfully requests that this Court dismiss DCL's FAVC in its entirety, with prejudice.

Dated: June 5, 2023                          Respectfully submitted,

                                             /s/ Roya Vasseghi
                                             Roya Vasseghi (VSB No. 85122)
                                             Erin N. Schiffman *(*admitted *pro hac vice)*
                                             VASSEGHI BUDD PLLC
                                             9663-A Main Street
                                             Fairfax, VA 22031
                                             (703) 215-9358 Tel.
                                             (703) 563-7401 Fax
                                             roya@vasseghibuddlaw.com
                                             erin@vasseghibuddlaw.com

                                             *Attorneys for Defendant Michael Frank*

29