UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **DARK CIRCUIT LABS, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **BLACK SAILS SECURITY, LLC**, *et al.*, <br><br> Defendants. | Case No.: 1:23-cv-326 (LMB/LRV) |
| **ERIC MISSIMER**, <br><br> Plaintiff, <br><br> vs. <br><br> **DARK CIRCUIT LABS, INC.**, <br><br> Defendant. | Case No.: 1:23-cv-476 (LMB/LRV) |

**PLAINTIFF DARK CIRCUIT LABS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15**

**PECKAR & ABRAMSON, P.C.**
2055 L Street, NW, Suite 750
Washington, DC 20036
Telephone:    202.293.8815
Facsimile:    202.293.7992
Email(s):     SWeber@pecklaw.com
              LDaniels@pecklaw.com
              GBegg@pecklaw.com
              LDavis@pecklaw.com
*Attorneys for Plaintiff, Dark Circuit Labs, Inc.*

STEVEN J. WEBER, (VSB No. 35573)
   *Of Counsel and on the Brief*
LUCAS T. DANIELS, (VSB No. 91557)
GREGORY R. BEGG, *Admitted Pro Hac Vice*
   *On the Brief*
LAUREN RAYNER DAVIS, *Admitted Pro Hac Vice*
*On the Brief*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................... i

PRELIMINARY STATEMENT .................................................................................................... i

STATEMENT OF FACTS ............................................................................................................. i

LEGAL ARGUMENT ................................................................................................................. vii

CONCLUSION ........................................................................................................................... viii

# **TABLE OF AUTHORITIES**

### **Cases**

*Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021) ............... vii

*Coral v. Gonse*, 330 F.3d 997, 998 (4th Cir. 1964) ...................................................................... vii

*Forman v. Davis*, 371 U.S. 178, 182 (1962) ................................................................................ vii

*Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) ................................................................. vii

*Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 447 (4th Cir. 2004) ................................................... vii

*Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986) ........................................... viii

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ................................................................... vii

*Parker v. Berryhill,* No. 4:17CV143, 2018 WL 5255233, at *1 (E.D. Va. Oct. 22, 2018) ......... viii

*Save Our Sound OBX, Inc., v. N Carolina Dep't of Transportation*, 914 F.3d 213, 228 (4th Cir. 2019) ............................................................................................................................................ viii

*Steinburg v. Chesterfield Cnty. Plan. Comm'n.*, 527 F.3d 377, 390 (4th Cir. 2008) .................... vii

*WardElec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) .................. vii

### **Rules**

Rule 15(a)(1)(A) ............................................................................................................................ vii

## PRELIMINARY STATEMENT

Plaintiff Dark Circuit Labs, Inc. ("Plaintiff" or "DCL"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Leave to Amend Plaintiff's First Verified Amended Complaint to add factual allegations, and to make other modifications, which further support Plaintiff's currently existing claims ("Motion").

## STATEMENT OF FACTS

DCL's own internal investigation prior to the filing of the First Amended Complaint has revealed an abundance of evidence to support DCL's claims, contrary to the arguments contained in Defendants' pending motions to dismiss.

The Defendants Missimer, Carpenter and Frank are all highly skilled computer technology experts who possess skills that enable them to surreptitiously access, utilize or delete data, leaving little to no trace, which has made it extremely difficult for DCL to fully determine the specifics of Defendants misappropriation of DCL data and other elements of the alleged conspiracy, particularly without the benefit of any discovery. DCL has served discovery upon all parties to which the Defendants have responded with, for the most part, improper objections which have yet to be resolved.

As alleged more fully within Plaintiff's proposed Second Amended Verified Complaint ("SAVC"), ongoing examination of DCL ESI devices both internally by DCL itself and by its forensic expert has revealed additional facts which further support the claims made by DCL in this litigation. Those additional newly discovered facts, or facts the prior significance of which became clearer as a result of newly discovered facts, are set forth in the proposed Second Amended Complaint submitted with this Motion. Plaintiff's internal and third-party forensic investigation to date reveals that Defendants took great pains to cover their tracks and destroy

evidence that they knew could be used against them in litigation which has complicated the forensic examination process. Plaintiff moves this Court to grant its Motion to permit the filing of the proposed Second Amended Verified Complaint which includes additional facts in support of its claims based upon internal and third-party forensic examination results to date, which are continuing. A summary of those additional fact is as follows.

I. **UNAUTHORIZED ACCESS AND USE DCL INFORMATION IMMEDIATELY PRIOR TO AND FOLLOWING THE FORMATION OF BSS.**

On November 9, 2022, while BSS was likely in the formative stages, Carpenter accessed one or more documents from DCL's servers using his Apple iPhone XSR smartphone, see SAVC ¶ 203, which contradicts his sworn statement provided in this litigation: "At the beginning of my DCL employment, DCL issued me a DCL laptop for use in accessing DCL's computer servers and data. I never accessed DCL's computer servers or data any other way." (ECF No. 41-1). At present, without the benefit of discovery, DCL has been unable to determine the substance of that data.

In Carpenter's "personal" DCL drive he had two copies DCL's Weekly Labor Report for the Task Order for the week of December 5, 2022. (SAVC ¶ 204.) These reports not only show DCL's weekly invoices since the start of the relevant contract, but also breakdown DCL's rates by employee and include a separate breakout for DCL's "fee". (*Id.*) Such information is highly confidential and would be devastating to the company if other competitive sub-contractors were able to know this information.

After formation of BSS, Carpenter uploaded and viewed this information twice in his personal drive, first on December 12, 2022 a second time on January 8, 2023 both after he founded BSS on December 2, 2022. (SAVC ¶ 205.) Upon information and belief, prior to

December 12, 2022, Carpenter had never used his DCL personal drive to view or store DCL Weekly Labor Reports. January 8, 2023 was a Sunday and occurred while Carpenter was on vacation from DCL. (*Id.*) Additionally, no hours were recorded in DCL's time keeping system by Carpenter on this date. Upon information and belief, the January 8, 2023 date is falls within the timeline when Carpenter was onboarding with Lockheed Martin. (*Id.*)

At present, it appears that the Weekly Labor Report only appears in Carpenter's personal drive twice, with the second occurrence being an exact copy of the first. That Carpenter was accessing a Weekly Labor Report on January 8, 2023 provides further evidence that drive was not part of regular, legitimate, business use, but rather was used to divert DCL work to BSS or another entity. Such reports and information, to the extent they were known to LMCO, are subject to a non-disclosure agreement and/or was information that Haddock should not have utilized as part of Defendant's conspiracy to divert DCL work and employees. (SAVC ¶ 206.)

During DCL's interview of Carpenter and Missimer on January 30, 2023 (prior to termination of employment at DCL) Carpenter stated that he had submitted bid paperwork on behalf of BSS to LMCO and was waiting for approval. When DCL was waiting for its approval, DCL had already submitted pricing information to LMCO, thus allowing for the reasonable inference that BSS would have done the same and that Carpenter used DCL's rates from its Weekly Labor Reports and/or Business Plan as a reference to undercut DCL's competitive advantage, which is exactly what DCL was diligently trying to protect against by having it shareholders and employees execute confidentiality and restrictive covenant agreements. (SAVC ¶ 207.)

When DCL confronted Defendants regarding their conduct with respect to BSS, Defendants switched plans, -upon information and belief only temporarily- and obtained

iii

employment, with the assistance of Haddock and/or LMCO, at PLEX (a direct DCL competitor) performing identical work, or nearly so, as subcontractor employees to LMCO. (SAVC ¶ 188.)

## II. DELETION OF DCL INFORMATION AND DELETION OF EVIDENCE POTENTIALLY RELEVANT TO THIS CASE.

Defendants destroyed DCL information and took great pains to cover their tracks and destroy evidence that they knew could be used against them in litigation.

As part of this litigation, DCL demanded that Carpenter, Missimer, and Frank all defendants, including Missimer return all DCL devices. An Android smartphone utilized by Missimer for DCL business was returned to DCL and delivered to a computer forensic expert to examine. Missimer did not provide the passcode of the mobile phone to DCL. Shockingly, Missimer's passcode for the device was merely "1234" which the forensic examiner was quickly able to "crack." (SAVC ¶ 201.)

The examination revealed that the SIM cards had been removed, which is necessary for an appropriate examination and recovery of DCL information and other information relevant to this case. DCL had demanded that all DCL property and information be returned to Missimer, however, Missimer has yet to return the SIM cards. (*Id*.)

Further, the forensic examination revealed that Missimer twice performed a "wipe" or factory reset of his DCL issued Android smartphone, once on September 24, 2022 (when the phone was issued to him) and again on December 10, 2022 at 7:35:04 p.m. (SAVC ¶ 202.) Little to no information can now be recovered from the device. (*Id.*) However, there is evidence that the device was used to access cloud storage products and communication products which could have been utilized to improperly store or disseminate DCL information and which may have

iv

been used by Defendants to covertly communicate in furtherance of Defendants' conspiracy. (*Id.*)

Missimer's DCL email account shows that he searched for the term "Carpenter" on December 2, 2022 and then again searched for emails he could have sent to Carpenter's personal email address "jmc7d@virginia.edu" on December 5, 2022. (SAVC ¶ 191.) The terms "Mike Frank" and "Shareholders Agreement" were searched on December 3, 2022. (*Id.*)

On December 6, 2022, and then again on December 7, 2022, Missimer used his privileged administrative access to perform an email restoration for the time period of November 12, 2022 to December 6, 2022. (SAVC ¶ 192.) An email restoration is performed when an administrative account user wants to restore all deleted emails of a specific user email account; however, such a restoration will not restore emails that have been permanently deleted (meaning emails deleted from the "Trash" folder), it will only restore emails that have been deleted and are still in the email account's "Trash" folder within 55 days. (SAVC ¶ 193.)

The use of the email restoration function, which, to date, it appears was never used by Missimer prior to these occurrences, allows for a reasonable inference that from November 12, 2022 to December 6, 2022, Carpenter, Missimer, and Frank were using their DCL email accounts to communicate with each other and/or Haddock or other third parties regarding starting their competitive venture, BSS. (SAVC ¶ 194.)

Based on Missimer's search terms on December 2 and 3, 2022 of the other Defendants' names, searches for emails to and from Missimer's DCL email address and Defendants' personal email addresses, and the agreement containing Missimer's restrictive covenants, it is DCL's position that Missimer purposefully and knowingly permanently deleted all emails evidencing his conspiracy with the other Defendants and then performed the email restorations on December

v

6 and 7, 2022 to determine whether he had been successful in destroying such evidence. (SAVC ¶ 195.)

Missimer, as an owner of DCL, could perform the email restoration function on any DCL email account because of his administrative access to DCL's email accounts. (SAVC ¶ 196.) No other DCL employee besides Missimer, Ronald Pelkey, and Chase Bertke were supposed to have administrative access during this time. (*Id.*) Although the above-described email restoration was performed on Missimer's administrator account, the IP address associated with these actions originates from Alexandria, Virginia, the very same city which is listed as BSS' business address and which is Carpenter's residence. This finding further supports that Missimer had granted Carpenter unauthorized access to Missimer's administrative accounts or performed these actions in conjunction with Carpenter. (SAVC ¶ 197.)

The search term for "Mike Frank" from in Missimer's DCL email account also allows for the inference that Frank was implicated in Missimer and/or Carpenter's actions as of early December, which aligns exactly with Frank's own statement in his February 24, 2023 email to Haddock that he had been in a position to help them early on in their formation of BSS. (SAVC ¶ 200.) Moreover, Missimer also destroyed evidence when he wiped his DCL mobile phone on December 10, 2022 without authorization from DCL. (*Id.*)

In order to preserve potential evidence relevant to this case, particularly in light of Defendant's conduct with respect to unauthorized access and deletion to DCL information and Missimer's unauthorized physical retention of the server following a demand for its return by DCL, DCL was compelled to refrain from utilizing the existing server and instead, to rebuild its network, at significant cost to DCL, so that appropriate forensic examination may proceed.

## LEGAL ARGUMENT

Rule 15 of the Federal Rules of Civil Procedure addresses amended and supplemental pleadings before, during and after trial. Rule 15(a)(1)(A) provides that a party may amend a complaint within 21 days after serving it. Here, Plaintiff filed its first amended complaint under Rule 15(a)(1)(A) on March 23, 2023, within-21 days after serving the Verified Complaint.

The Court, however, may grant Plaintiff leave to amend the First Amended Verified Complaint pursuant to Rule 15(a)(2), which provides that the Court "should freely give leave when justice so requires." "It is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.3d 997, 998 (4th Cir. 1964)); See also *Steinburg v. Chesterfield Cnty. Plan. Comm'n.*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)) ("Of course the general rule is that leave to amend a complaint under the Federal Rule of Civil Procedure 15(a) should be freely given."); See *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."); See *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 447 (4th Cir. 2004) (citing *WardElec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987).

Under that liberal standard, a motion to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021). A proposed amendment is futile if it is "clearly insufficient or frivolous on its fact," *id*., or "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc., v. N Carolina Dep't of Transportation*, 914 F.3d 213, 228

(4th Cir. 2019). The sufficiency of the proposed amendment is assessed by the same standards as a motion to dismiss for failure to state a claim. *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986); *see Parker v. Berryhill,* No. 4:17CV143, 2018 WL 5255233, at *1 (E.D. Va. Oct. 22, 2018). Plaintiff's proposed amendments easily meet that standard.

Here, Plaintiff's Motion to Amend the Complaint to join additional facts and claim should be granted as it is brought in good faith, is timely, will not subject Defendants to undue prejudice, and seeks to avoid the potential that Plaintiff suffer significant injury. Further, granting Plaintiff's Motion is in keeping with both Rules 15 and 18 of the Federal Rules of Civil Procedure. Joinder is further appropriate as: (1) a right to relief is asserted by Plaintiff against each Defendants relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties is present in this action.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the accompanying Second Amended Complaint.

Dated: June 16, 2023                                    Respectfully submitted,

**PECKAR & ABRAMSON, P.C.**
*Attorneys for Plaintiff, Dark Circuit Labs, Inc.*

By: /s/ *Steven J. Weber*
　　　―――――――――――――――――
　　　STEVEN J. WEBER, VSB No. 35573

*/s/ Lucas T. Daniels*
―――――――――――――――――
LUCAS T. DANIELS, VSB No. 91557

/s/ *Gregory R. Begg*
―――――――――――――――――
GREGORY R. BEGG*

/s/ *Lauren Rayner Davis*
―――――――――――――――――
LAUREN RAYNER DAVIS*
*Admitted Pro Hac Vice*

ix

## CERTIFICATION OF SERVICE

I hereby certify that, on the 16th day of June 2023, I caused a true and accurate copy of the foregoing Motion for Leave to Amend Plaintiff's First Amended Complaint to be served on counsel of record via the CM/ECF system.

/s/ *Steven J. Weber*

_____

Steven J. Weber

x